**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | |
|---|---|
| In re:<br>Karen M. Thomas,<br>        Debtor. | Case No. 16-50612<br>Chapter 13 |
| In re:<br>Gary L. Brooks, Jr., and Mary M. Gillespie-Brooks,<br>        Debtors. | Case No. 16-50396<br>Chapter 13 |
| Karen M. Thomas, and Gary L. Brooks, Jr., and Mary M. Gillespie-Brooks, individually and on behalf of a class of similarly situated individuals,<br>        Plaintiffs,<br>v.<br>Midland Funding, LLC, and Midland Credit Management, Inc.,<br>        Defendants. | Case Nos. 17-AP-05009 & 17-AP-05010 |

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Timothy G. Moore, Esq. (VSB No. 41730)
James K. Donaldson, Esq. (VSB No. 80307)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:      (804) 697-2000
Facsimile:      (804) 697-2100
*Counsel to Midland Funding, LLC, and Midland Credit Management, Inc.*

1. "This case presents a mixed question of law and math." *DAGS II, LLC v. Huntington Nat'l Bank*, – F.3d –, No. 16-2332, 2017 WL 3184548, at *1 (6th Cir. July 27, 2017). Plaintiffs Karen Thomas, Gary Brooks, and Mary Gillespie-Brooks contend that Defendants violated the federal Fair Debt Collection Practices Act and Bankruptcy Rules by filing proofs of claim for their defaulted credit card debts that incorrectly indicated that the claims did not include interest or fees in addition to their principal amounts. On the other hand, Defendants Midland Funding, LLC, and Midland Credit Management, Inc., submit that, because they did not assess any interest charges after Midland Funding purchased and was assigned Plaintiffs' credit card accounts, each of the proofs of claim at issue correctly characterizes the entire claim amount as "unsecured principal."

2. This Court need not resolve the parties' disagreement over mathematical issues or accounting principles, however, in order to conclude that Plaintiffs have failed to state any claim upon which relief may be granted, and that their putative Class Action Complaint should be dismissed with prejudice. Plaintiffs have not plausibly alleged either that Midland violated the FDCPA (Count 1), or that they even can assert a legally cognizable claim for alleged "violations" of the Bankruptcy Rules (Count 2). Regardless of whether Midland's original proofs of claim correctly or incorrectly characterized the entire claim amounts as principal, "the difference between principal and interest is no more important to the Fair Debt Collection Practices Act than the color of the paper that [Midland] used." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). "A dollar due is a dollar due," *id.*, and Plaintiffs have not disputed the amount of any of Midland's claims; in fact, each of the claims was scheduled in a nearly-identical amount. And their purported claims for "violations" of the Bankruptcy Rules

1

fail as a matter of law for the simple reason that there is no private right of action for noncompliance with Rule 3001. Therefore, both claims should be dismissed with prejudice.

## Argument and Citations of Authority

I. **The Court should dismiss the FDCPA claim asserted in Count 1 because Plaintiffs do not plausibly allege that Midland's proofs of claim were false, deceptive, or misleading, or that Midland engaged in any unfair or unconscionable conduct.**

3.  Plaintiffs contend that Midland's proofs of claim run afoul of two provisions of the FDCPA. First, they allege that "the false assertion[s] that no interest or fees were included in the amount of each Proof of Claim, and that Defendants had a reasonable belief in the accuracy of the information [in each Proof of Claim]," constitutes a violation of 15 U.S.C. § 1692e, which prohibits debt collectors from "using false, deceptive, and/or misleading representations" in attempting to collect a debt. (Doc. 1, ¶ 67). Second, Plaintiffs also assert a claim under 15 U.S.C. § 1692f, based on their allegation that Midland's "standard practice of filing Proofs of Claim without complying with Federal Rule of Bankruptcy Procedure 3001(c)(2)(A) and without having the ability to comply with Federal Rule of Bankruptcy Procedure 3001(c)(3)(B)" amounts to "unfair and unconscionable" means of debt collection. (*Id.*, ¶ 68). Neither claim sustains scrutiny under Rule 12(b)(6), however.

4.  Plaintiffs fail to state a claim under § 1692e because they have not plausibly alleged that Midland's proofs of claim were materially false, deceptive, or misleading to their relevant recipients—here, a "party in interest" with the right to object to the proofs of claim under 11 U.S.C. § 502(b) and request their disallowance. And as for their claims under § 1692f, even assuming that Plaintiffs were correct that the itemization included with Midland's original proofs of claim did not comport with the requirements of Rule 3001(c)(2)(B) (a legal conclusion this Court need not accept as true), Plaintiffs fail to so much as allege how or why such a procedural misstep rises to the level of "unconscionable" or even "unfair" conduct.

2

    **A.**     **Plaintiffs fail to state a claim under § 1692e because any alleged misrepresentation on the proof of claim form that the claims do not include interest or fees is neither false nor materially deceptive or misleading to the relevant parties in interest.**

    5.     Although the FDCPA broadly prohibits debt collectors from using any "false, deceptive, or misleading" representation in attempting to collect a debt, its statutory ambit is constrained by the decisional gloss from the Fourth Circuit, which has joined other courts in interpreting § 1692e to include a materiality requirement. In other words, "false, deceptive, and misleading statements must be *material* to be actionable." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014) (citations omitted). This "materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'" *Id.* (citation omitted).

    6.     Here, any allegedly false, deceptive, or misleading representation was necessarily immaterial because whether or not the proof of claim disclosed the inclusion of interest and other charges would not have been "*important* to the consumer *in deciding how to respond* to efforts to collect the debt." *Id.* (defining materiality for purposes of § 1692e). As countless courts have recognized, § 502(b) provides the exclusive bases for lodging an objection to a creditor's claim. In other words, even assuming that Midland's proofs of claim included a "false assertion that no interest or fees were included in the amount" of each claim (or that the Midland representative who signed each proof of claim falsely proclaimed to "reasonably believe" as much), as Plaintiffs have alleged, neither allegation is a basis for the disallowance of Midland's claims.

    1.     <u>The supposedly false assertion that Midland's claims did not include interest or fees is not materially false, deceptive, or misleading because it would have no effect on the decisionmaking of any party in interest.</u>

    7.     Plaintiffs do not allege that Midland's proofs of claim revealed (or concealed) any basis for raising an objection, because none exists. To the contrary, the only conceivable

3

consequence for Midland's supposedly false or misleading assertion that its claims did not include interest is that its proofs of claim might not have enjoyed prima facie validity normally afforded proofs of claim filed in accordance with Rule 3001. *See* Fed. R. Bankr. P. 3001(f). But while the omission of information required by Rule 3001 "may cause a creditor to forfeit the evidentiary presumption of validity of the claim under Rule 3001(f) and potentially suffer sanctions under Rule 3001(c)(2)(D), such failure is a far cry from being misleading or deceptive under the FDCPA or otherwise." *In re Ellswick*, No. 15-41196-JJR13, 2016 WL 6902463, at *5 (Bankr. N.D. Ala. Nov. 23, 2016).

8.     Plaintiffs also fail to state a claim under § 1692e because, even putting aside the fact that the misrepresentations they've alleged are not the basis for objecting to Midland's claims, the assertion of whether or not Midland's proofs of claim includes interest, and if so, in what amount, is not materially deceptive or misleading to the relevant audience. The Fourth Circuit previously has analyzed whether an FDCPA-governed communication could be misleading from the perspective of the hypothetical "least sophisticated consumer," holding that "only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking are actionable." *Powell*, 782 F.3d at 126. Since the Fourth Circuit's decision in *Powell*, however, the Supreme Court has indicated that a different standard applies, at least with respect to FDCPA claims based on bankruptcy proofs of claim.

9.     In *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017), the debtor argued that Midland's conduct in filing a proof of claim for an out-of-statute debt was actionable under the FDCPA as a false, deceptive, or misleading means of attempting to collect a debt. According to *Johnson*, Midland's proof of claim implied that the debt was "enforceable," when in fact it was subject to a limitations defense. The Supreme Court held otherwise, noting that in order "to

4

determine whether a statement is misleading normally 'requires consideration of the legal sophistication of its audience.'" *Johnson*, 137 S. Ct. at 1409 (citation omitted). "The audience in Chapter 13 bankruptcy cases includes a trustee, 11 U.S.C. § 1302(a), who must examine proofs of claim and, where appropriate, pose an objection . . . . And that trustee is likely to understand that, as the Code says, a proof of claim is a statement by the creditor that he or she has a right to payment subject to disallowance (including disallowance based upon, and following, the trustee's objection for untimeliness)." *Id.* (citing 11 U.S.C. §§ 101(5)(A), 502(b), 704(a)(5), 1302(b)(1)). Thus, as in *Johnson*, the materiality of Midland's allegedly false assertion that its claims did not include interest should be judged not from the perspective of the least sophisticated consumer, but from the perspective of its audience—here, the debtor's bankruptcy attorney, the bankruptcy trustee, and/or the bankruptcy court.

10. Applying the standard articulated in *Johnson*, Plaintiffs' FDCPA claims likewise fail as a matter of law because Midland's proof of claim objectively was neither confusing nor misleading to its intended audience. As the Court noted in *Johnson*, the trustee has a duty to "examine proofs of claim and, *where appropriate*, pose an objection." *Johnson*, 137 S. Ct. at 1409 (emphasis added). More specifically, the Code charges the trustee with objecting to proofs of claim only "*if a purpose would be served*." 11 U.S.C. § 704(a)(5) (emphasis added). And even then, a trustee is relieved of any duty to interpose an objection if "there will be no distributions to creditors" or the claim otherwise would have "no effect." 9 *Collier on Bankruptcy* ¶ 4002.05[2], at 4002-11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016). Here, the trustee apparently chose not to file an objection to any of Midland's claims on the grounds that Plaintiffs have asserted here (or on any other grounds, for that matter), because no purpose would be served, since both debtors' confirmed Chapter 13 plans do not propose to pay

5

100% of claims filed by their unsecured creditors.[1] Instead, the debtors are simply required to pay the same amount to the trustee every month; thus, regardless of how many unsecured claims are filed (or allowed) and regardless of their amount, the debtors are unaffected, and so no "purpose would be served" by filing an objection, since Midland's claims essentially would have "no effect" on the debtors' bankruptcy estates.

11.　　While it's clear that any alleged misrepresentation regarding the interest component of Midland's claim would not have been material to its intended audience, the trustee, Plaintiffs' § 1692e claims also fail even under the ordinary least sophisticated consumer standard that the Fourth Circuit has applied in the past. For example, the Court in *Powell* explained that, "[i]n assessing materiality, we are not concerned with mere technical falsehoods that mislead no one," citing as an example "a demand letter [that] misstates interest as principal but accurately states the total amount owed." *Powell*, 782 F.3d at 126 (quotation omitted). "[S]uch a technical error is not material," because it would not "objectively affect the least sophisticated consumer's decisionmaking." *Id.* (citation omitted). That is precisely the situation we have here. Just as a dunning letter is an assertion of a right to payment from the recipient, a proof of claim likewise is an assertion of a right to payment from the debtor's bankruptcy estate. *See Johnson*, 137 S. Ct. 1407, *slip op.* at 5 ("[A] proof of claim is a statement by the creditor that he or she has a right to payment subject to disallowance . . . ."). Even accepting Plaintiffs' allegations as true, it is undisputed that each of Midland's proofs of claim, like the hypothetical demand letter in *Powell*, merely "*misstates interest as principal but accurately states the total amount owed.*" *Powell*, 782 F.3d at 126 (emphasis added). "[S]uch a technical error is not

---

[1] The Brookses and Ms. Thomas expect that their unsecured creditors will receive pro rata distributions of 9% and 33% of their claims, respectively. *See* Case No. 16-50396, Doc. 2, at 3 (Brooks); Case No. 16-50612, Doc. 2, at 3 (Thomas).

material," and therefore not actionable, under any standard applicable to Plaintiffs' § 1692e claim.

> 2. <u>The certification by a Midland representative that he or she had a "reasonable belief" that the information contained in each proof of claim "is true and correct" also is not an actionable representation under § 1692e.</u>

12. Plaintiffs also attempt to state a claim under § 1692e based on "the false assertion . . . that Defendants had a reasonable belief in the accuracy of the information [in each Proof of Claim]." (Doc. 1, ¶ 67). They assert that "Midland does not have a reasonable belief that the information in each Proof of Claim is true" (*id.*, ¶ 24) for two reasons: (1) "[a]s part of its written contract with Synchrony Bank [the original creditor for the claims at issue], Midland is given information about such debts which shows that interest is regularly included in the claim amount"; (2) Midland was previously notified that its practice of filing Proofs of Claim that falsely assert that zero interest and zero fees are included in the claim amount is unlawful in the case of *In re Rachel R. Maddux*, Case No. 15-33574-KRH, in the U.S. Bankruptcy Court for the Eastern District of Virginia." (*Id.*, ¶¶ 25, 31).

13. Though it's difficult to imagine how exactly one's profession of a reasonable belief can be considered a "false, deceptive, and/or misleading representation," even if it were, it's certainly not a material one. For example, suppose the Midland representative instead had professed a "reasonable belief" that the Earth is flat. Even if such a belief could hardly be deemed reasonable, which apparently would make the representation "false" in the same sense that Plaintiffs allege here, it is hard to imagine how (or why) the Plaintiffs would care about the Midland representative's beliefs about Earth's cosmography, or whether they are reasonably held. The same is true here. Whether or not Midland's bankruptcy specialist honestly swore under penalty of perjury that he or she had a "reasonable belief" in the truth and accuracy of the

7

proofs of claim could have no conceivable impact on the debtor or the estate. In reality, the certification that Plaintiffs contend was falsely attested to must be read in the context of the adjacent warning on the proof of claim form that "A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both." (citing 18 U.S.C. §§ 152, 157, and 3571).[2] But those are criminal statutes aimed at the prosecution and punishment of bankruptcy fraud; and there simply is no "authority providing that a private right of action arises under 18 U.S.C. § 152(4)." *Clayton v. Raleigh Fed. Sav. Bank*, 194 B.R. 793, 795 (M.D.N.C. 1996) *aff'd,* 107 F.3d 865 (4th Cir. 1997). In fact, a chorus of courts has declared in unison that the opposite is true.[3]

---

[2] *See* 18 U.S.C. § 152(4) (providing for potential criminal penalties against a person who "knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney.").

[3] *See Mays v. Citibank, N.A.*, No. 04-CV-20227, 2005 WL 6111610, at *11 (S.D. Fla. Apr. 1, 2005) *aff'd sub nom. Mays v. Chase Manhattan Mortgage Corp.*, 180 F. App'x 143 (11th Cir. 2006) ("Plaintiff attempts to state claims for bankruptcy fraud and other criminal conduct pursuant to 18 U.S.C. §§ 157 and 152. However, there is no private right of action for violation of these criminal laws."); *In re Martin*, 387 B.R. 307, 314 (Bankr. S.D. Ga. 2007) ("This is a criminal statute. It does not explicitly provide for a private right of suit for civil damages or injunctive relief. Furthermore, there are no cases suggesting that a private right to sue should be implied under this section."); *In re Finnimore*, No. 13-CV-744, 2014 WL 1315589, at *3 (D. Conn. Mar. 31, 2014) (noting "that 18 U.S.C. § 152 is criminal statute with no private right of action, and thus Appellant has no standing to seek relief from this Court or the Bankruptcy Court (or any court) on these grounds."); *Heavrin v. Boeing Capital Corp.*, 246 F. Supp. 2d 728, 731 (W.D. Ky. 2003) *aff'd sub nom. Heavrin v. Nelson*, 384 F.3d 199 (6th Cir. 2004) ("[T]here is no private cause of action under 18 U.S.C. § 152(4) for filing a false proof of claim in a bankruptcy proceeding."); *In re Stooksbury*, No. 07-33959, 2008 WL 2169452, at *4 (Bankr. E.D. Tenn. May 22, 2008) ("The Debtor also attempts to assert a claim for filing a false proof of claim, again asking the court to assess damages under § 105(a). As with violations of the discharge injunction, however, there is no private cause of action for filing a claim that is determined to be false."); *Clayton v. Raleigh Fed. Sav. Bank*, 194 B.R. 793, 796 (M.D.N.C. 1996) *aff'd,* 107 F.3d 865 (4th Cir. 1997) ("The Code creates extensive rights readily available to litigants, and there is no reason to believe that additional rights should be created where none are expressed or clearly implied. Thus, the teachings of *Cort v. Ash* do not support creation of a private right of action under 18 U.S.C. § 152(4).")

8

14. That leaves Plaintiffs with their allegation that Midland's representatives intentionally and falsely profess a reasonable belief in the truth and accuracy of its proofs of claim because it "was previously notified that its practice . . . is unlawful" (Doc. 1, ¶ 31) in the *Maddux* case, in which one of the Plaintiffs' attorneys also appeared on behalf of the debtors. *See In re Maddux*, No. 15-33574, Doc. 56. It should be noted, however, that two of the three proofs of claim Plaintiffs challenge in this case actually were filed *before* Judge Huennekens determined that Midland's proofs of claim for Synchrony Bank credit card accounts incorrectly characterized the entire claim amount as principal. As Plaintiffs themselves have noted, that decision was delivered from the bench on September 13, 2016 (Doc. 1, ¶ 32), whereas Claim Nos. 10 and 12 were filed in the Brookses' bankruptcy case on June 23, 2016.

15. Second, while Plaintiffs attempt to paint Midland as having acting with impunity by continuing to file similar proofs of claim in this district "[d]espite the rulings in *In re Maddux*," (Doc. 1, ¶ 34), Judge Huennekens thought otherwise. As he explained in his opinion in the *Maddux* case:

> When Midland filed its Original Proofs of Claim in these Bankruptcy Cases, Midland believed it was not proper to check the box stating that the claim contained interest. This was because Midland did not charge any interest or fees on any of the post-bankruptcy accounts that it purchased. It was Midland's policy to treat the entire amount of a purchased claim as principal. Bedoya understood the Original Midland Claims to accurately represent the interest and fees that had accrued on the account prior to the charge-off date as capitalized into principal. Strickland corroborated this testimony explaining that it was the common practice throughout the credit card industry to capitalize accrued interest and fees as principal.

*Maddux v. Midland Credit Mgmt., Inc. for Midland Funding, LLC*, 567 B.R. 489, 498 (Bankr. E.D. Va. 2016). In other words, Judge Huennekens had no trouble concluding that Midland reasonably believed that its practice was correct. He went on to note "that Midland *immediately* changed its policy in this regard in response to the entry of the Court's Summary Judgment

9

Order." *Id.* (emphasis added). In particular, Midland amended each of the proofs of claim at issue in that case to, among other things, attach a "Charge-off Statement" that "disclosed the amounts of interest and fees charged year to date and the amount of charged-off interest on the account." *Id.* The same is true here. In response to Plaintiffs' complaint, Midland amended each of the proofs of claim at issue to include the exact same information as the amended claims in *Maddux*. In fact, Judge Huennekens also expressly approved the inclusion of the very same "Claim Breakdown" that is found on the Account Summary attached to each of the amended claims in this case.[4] Moreover, though not necessary for purposes of this motion to dismiss, the undersigned respectfully represents that Midland is presently using the same format for filing all of its proofs of claim for credit card accounts in the Eastern and Western Districts of Virginia.

16.     In any event, for the reasons described above, Plaintiffs cannot state a claim under § 1692e based on the supposedly false expression of a "reasonable belief" in the truth and accuracy of Midland's proofs of claim.

### B.     Plaintiffs' § 1692f claim fails as a matter of law.

17.     Also in Count 1, Plaintiffs purport to state a claim under § 1692f based on Midland's supposed practice of filing proofs of claim without the ability to produce the underlying writing pursuant to a request under Rule 3001(c)(3)(B). "When a claim is based on an open-end or revolving consumer credit agreement," such as with Plaintiffs' defaulted credit card

---

[4] *See In re Maddux*, No. 15-33574, Trans. of H'rg on Mot. of Midland Credit Management to Amend, Clarify, and/or Make Add'l Findings Pursuant to Bankr. R. 7052 ("Maddux Transcript"), Doc. 151, at 56:1–4 (Bankr. E.D. Va. Jan. 25, 2017) ; *see also In re Maddux*, No. 15-33574, Order Granting Mot. of Midland Funding, LLC, to Amend, Clarify, and/or Make Add'l Findings ("Maddux Clarification Order"), Doc. 153, at 3–4 ¶ C ("The Court indicated that an appropriate itemization that satisfies Bankruptcy Rule 3001(c)(2)(A) should be presented by providing a claim breakdown similar to the form of proof of claim No. 12-1 filed by Midland in the case of *In re Britt*, Case No. 16-32732 . . . . Acceptable forms of such itemizations are attached hereto as Exhibit A, Exhibit B, and Exhibit C.").

debt, Rule 3001 requires only that "a statement shall be filed with the proof of claim, including" the identity of the original creditor and the creditor's assignor, the date of the debtor's last payment and the creditor's last transaction, and the date the account was charged-off. Fed. R. Bankr. P. 3001(c)(3)(A). And here, it is undisputed that Midland's proofs of claim in this case included the information required by Rule 3001(c)(3)(A).

18.     Moreover, Plaintiffs' allegation is belied by the amended versions of the very proofs of claim at issue in this case, which as noted above include the last account statement from the original creditor (or "charge-off statement"). In addition to approving Midland's proposal to include the same "Claim Breakdown" attached to the amended claims in this case, Judge Huennekens also determined in *Maddux* that when Midland files a proof of claim for a credit card account, the writing upon which its claim is based is the charge-off statement. *Maddux* Transcript, Doc. 151, at 58:10–19.[5] In an attempt to have their cake and eat it, too, Plaintiffs rely on *Maddux* for their contention that Midland should know better than to attest to the truth and accuracy of proofs of claim characterized entirely as principal, but they eschew Judge Huennekens's determination that the charge-off statement constitutes the "writing" underlying Midland's claims. *See* (Doc. 1, ¶¶ 43–44).

19.     Regardless of what Plaintiffs believe, this Court previously has held that "[a] writing that includes a detailed transaction history over a reasonable period of time," which "may be as little as a single month," is "sufficient to support a proof of claim for an unsecured debt."

---

[5] *See also id.* at 9:11–15 (Judge Huennekens adopts Midland's suggestion that the "writing" its claims are based on refers to "the most recent statement that provides all the information that a debtor would need to evaluate the claim for the purposes of whether or not the claim satisfies and is entitled to the presumption [of validity]"); *Maddux* Clarification Order, Doc. 153, at 3 ¶ A ("The Court finds that providing applicable Account Statements satisfied Midland's obligation [under Rule 3001(c)(3)(B)] to provide the writing specified in Bankruptcy Rule 3001(c)(1).").

*In re Falwell*, 434 B.R. 779, 785 (Bankr. W.D. Va. 2009). Here, Midland has provided just that by attaching the charge-off statements to the amended proofs of claim. As in *Falwell*, "[t]he documentation supports the existence of a debtor-creditor relationship and supports the amount as asserted in the proof of claim. This documentation is sufficient to meet the requirement in Rule 3001." *Id.* at 786. Therefore, Plaintiffs have not plausibly alleged that Midland does not have the ability to comply with a Rule 3001(c)(3)(B) request for the writing underlying its proofs of claim, much less that such a practice would be "unfair or unconscionable."

20. Indeed, courts have held that "the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330–31 (6th Cir. 2006). As the Fourth Circuit has observed in a similar context, a proof of claim is very different from a state court collection suit;[6] but even despite those differences, filing a lawsuit "without *having on hand at the time of filing* the means to prove the complaint," *id.* at 327–28, and filing a proof of claim without the present ability "to comply with a request to provide the writing on which the claim is based," (Doc. 1, ¶ 46), both "are a far cry" from what courts have held to be actionable under the FDCPA. *Harvey*, 453 F.3d at 331 (citation omitted).

21. Nor have Plaintiffs stated a claim under § 1692f based on Midland's alleged practice of filing claims without the itemization required by Rule 3001(c)(2)(A). First, each of Midland's proofs of claim actually *does* include an itemization; that itemization characterizes the entire claim amount as unsecured principal because at the time the proofs of claim were filed, Midland (rightly or wrongly) considered the entire balance of each account to be principal, since

---

[6] *In re Dubois*, 834 F.3d 522, 532 (4th Cir. 2016), *cert. denied sub nom. Dubois v. Atlas Acquisitions, LLC*, 137 S. Ct. 2158 (2017) (affirming dismissal of FDCPA claims based on out-of-statute proofs of claim).

12

it had not assessed any interest or fees after the accounts were charged-off by the original creditor. Even assuming that the Court were to agree that Midland's itemization should have included the interest charged by the original creditor prior to the accounts being charged-off, Plaintiffs have not plausibly alleged that Midland's failure to do so somehow rises to the level of "unfair" or "unconscionable" conduct. As the Eleventh Circuit has noted, because "[t]he [FDCPA] does not supply definitions for 'unfair' or 'unconscionable,'" it is appropriate to "turn to the common usage of the words to determine their meaning":

> "Unfair" is defined as "marked by injustice, partiality, or deception." Merriam Webster's Collegiate Dictionary 1290 (10th ed.1996). A step beyond unfair, "unconscionable" is defined as "shockingly unfair or unjust." Merriam Webster's Collegiate Dictionary 1286; *see* Black's Law Dictionary 1757 (10th ed.2014) ("having no conscience; unscrupulous ... showing no regard for conscience; affronting the sense of justice, decency, or reasonableness").

*Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1308 (11th Cir. 2015).

22.     "As defined, neither of these terms describes [Midland's] conduct here." *Id.* Indeed, "[Midland's] conduct, as alleged, is a 'far cry' from the types of behavior proscribed by § 1692f." *Id.* at 1309 (citing *Watkins v. Peterson Enters.*, 57 F. Supp. 2d 1102, 1108–09 (E.D. Wash. 1999) (holding that serving writs of garnishment that overstated the debt was not an abusive practice because the types of behavior described in the statute "are a far cry from that at issue")) (other citations omitted). Plaintiffs therefore also have not plausibly alleged a violation of § 1692f, and so Count 1 should be dismissed with prejudice.

## II.     Count 2 should be dismissed because there is no such thing as a claim for "violation" of Rule 3001.

23.     In Count 2 of their complaint, Plaintiffs purport to assert a "claim" for "Violations of Federal Rule Bankruptcy Procedure 3001." (Doc. 1, at 13). Count 2 fails to state a claim upon which relief may be granted, however, because there is no such thing as a private cause of action for an alleged "violation" of Rule 3001. *See In re Critten*, 528 B.R. 835, 841 (Bankr. M.D. Ala.

2015) ("All of this is to say that there is a considerable body of case law on the books concerning the question of what results when a Proof of Claim fails to comply with the technical requirements of Rule 3001. None of the cases . . . support the proposition that a debtor may sue a creditor and recover damages for the failure to comply with Rule 3001.") (collecting cases).[7] Thus, even assuming as true Plaintiffs' allegations that Midland's proofs of claim "violated" Rule 3001(a) by supposedly "failing to file a proof of claim that conformed substantially to the Official Form," or that its failure to include an itemization of the interest charged by the original creditor as an attachment to its original proofs of claim "violated" Rule 3001(c)(2), Plaintiffs still cannot as a matter of law assert a claim for relief based on any such "violations." (Doc. 1, ¶¶ 71–72).[8]

24.     Indeed, as Plaintiffs tacitly acknowledge in their complaint, "the rules and instructions upon which [Count 2] relies acknowledge some variance from [their] stringent reading of select language." *In re Dove-Nation*, 318 B.R. 147, 151 (B.A.P. 8th Cir. 2004). "For

---

[7] *See also In re Turner*, No. 09-15230, 2011 WL 4352158, at *6 (Bankr. E.D. Tenn. Sept. 16, 2011) ("[N]o private right of action exists for a failure to comply with Fed. R. Bankr. P. 3001(c)."). Moreover, the fact that Rule 3001 provides its own form of sanctions if a creditor "[f]ails to provide any information required by [Rule 3001(c)]" further counsels against judicial recognition of a new independent cause of action, as Plaintiffs would have this Court do. Fed. R. Bank. P. 3001(c)(2)(D).

[8] To the extent Count 2 might be charitably construed as an objection to Midland's proofs of claim, it should be overruled as to each proof of claim at issue. The procedural objections Plaintiffs raise in Count 2 regarding whether Midland's proofs of claim "substantially complied" with the official form or included the requisite itemization of finance charges do not implicate any of the exclusive grounds set forth in 11 U.S.C. § 502(b) for disallowance of claims. At best, even if Midland's claims failed to comply with Rule 3001 in the manner Plaintiffs have alleged, the only consequence would be the deprivation of the prima facie validity afforded Rule-compliant proofs of claim. *See* Fed. R. Bankr. P. 3001(f). Because the Plaintiffs have not so much as alleged any substantive basis for disallowance of Midland's claims, however, they necessarily cannot satisfy their dual burdens of production and persuasion necessary to overcome the evidentiary value of the proofs of claim themselves. To the contrary, they have sworn under penalty of perjury to owing each of the debts at issue, in amounts substantially similar to the amounts claimed. Therefore, Count 2 also should be dismissed to the extent the Court considers it an objection to Midland's claims.

example, Rule 3001(a) acknowledges that a proof of claim need only conform substantially to the appropriate official form," and that "[i]t need not conform exactly." *Id.* And the reasoning behind courts' refusal to recognize a judicially-created private right of action under Rule 3001 applies with even more force to the novel suggestion that a plaintiff may assert a claim for the "violation" of a procedural form. Indeed, there is "nothing to suggest that the official forms have the force and effect of the Bankruptcy Code or Rules." *In re Sims*, 278 B.R. 457, 468 (Bankr. E.D. Tenn. 2002). Thus, courts have had no trouble concluding that "Official Form 10 is not an order of the court and that therefore the failure to comply with the form is not contemptuous." *Id.* at 468. As the court in *Sims* explained, quoting a popular bankruptcy treatise: "'Unlike the Rules, the Official Forms do not require approval either by the Supreme Court or by Congress, and while they should be observed and should be used, they do not have the force of law.'" *Id.* at 469–70 (quoting Norton Bankr. Rules Pamphlet 1997–98 Edition, p. 3). If courts have declined to find a creditor's failure to comply with Rule 3001 to be contumacious because "'the use of the Official Forms has generally been held subject to a 'rule of substantial compliance,'" and "[t]he flexibility permitted by this rule is inconsistent with the clarity required of a court order with the potential to subject a violator to contempt," then it's hard to imagine how an alleged "violation" of Rule 3001 could subject a creditor to a civil claim for money damages. *In re Sims*, 278 at 469 (quoting Fed. R. Bankr. P. 9009, Advisory Comm. Notes).

25.  In any event, even if Plaintiffs otherwise could assert a cognizable claim for alleged violations of Rule 3001 (or even if the Court were inclined to construe Count 2 as an objection to the contested claims), any such claim or objection should be dismissed as moot because the amended proofs of claim most certainly comply with both aspects of Rule 3001 that Plaintiffs purport to challenge in Count 2. First, the box on the official proof of claim form

15

indicating whether the claim includes interest or other charges is checked "yes" for each amended proof of claim, which Plaintiffs contend is required for Midland to have "substantially complied" with Rule 3001(a). Next, the "Account Summary" attached to each amended proof of claim includes a "Claim Breakdown," which provides the itemization of finance charges that Plaintiffs insist is required by Rule 3001(c)(2). Therefore, regardless of whether Midland's original proofs of claim substantially complied with Rule 3001(a) or Rule 3001(c)(2)(A), the amended claims definitely do, and so Count 2 should at the very least be dismissed as moot.

## Conclusion

26.   Midland Funding, LLC and Midland Credit Management, Inc. reserve all rights under applicable law to assert and allege any additional defenses as such defense may become known during later proceedings or discovery related to the above-captioned bankruptcy cases and adversary proceedings.  Nothing herein shall be construed to be a waiver of any of Midland Funding, LLC's and Midland Credit Management, Inc.'s defenses, rights, or claims related to Plaintiff's complaint and bankruptcy cases.

**WHEREFORE**, Defendants Midland Funding, LLC and Midland Credit Management, Inc. request that the Court enter an Order that dismisses with prejudice the complaints in the above-captioned adversary proceedings; that Plaintiffs receive no award for damages, costs, or fees, of any sort, in connection with the complaints, and that the Court award to Midland Funding, LLC and Midland Credit Management, Inc. any other relief that is proper.

DATED: August 7, 2017    MIDLAND FUNDING, LLC, AND
                         MIDLAND CREDIT MANAGEMENT, INC.

                         /s/ James Donaldson
                         Timothy G. Moore, Esq. (VSB No. 31698)
                         James K. Donaldson, Esq. (VSB No. 80307)
                         SPOTTS FAIN PC
                         411 East Franklin Street, Suite 600
                         Richmond, Virginia 23219
                         Telephone:    (804) 697-2000
                         Facsimile:    (804) 697-2100

                         *Counsel for Midland Funding, LLC, and Midland Credit Management, Inc.*

## CERTIFICATE OF SERVICE

        I hereby certify that on August 7, 2017, I caused to be served a true and accurate copy of the foregoing, via CM/ECF, U.S. Mail, and / or via e-mail on the following parties, as well as all other parties that receive CM/ECF notification:

Beth C. Driver, Esquire
Hannah White Hutman, Esquire
Grant D. Penrod , Esquire
Hoover Penrod PLC
342 S. Main Street
Harrisonburg, VA 22801
*Counsel for Karen M. Thomas, Gary Lyne Brooks, Jr., and Mary Margaret Gillespie-Brooks*

Timothy E. Cupp , Esquire
Shelley Cupp Schulte, PC
1951 Evelyn Byrd Ave., Ste. D
P O Box 589
Harrisonburg, VA 22803
*Counsel for Karen M. Thomas, Gary Lyne Brooks, Jr., and Mary Margaret Gillespie-Brooks*

Herbert L Beskin, Esquire
PO Box 2103
Charlottesville, VA 22902
*Trustee for Chapter 13 Bankruptcy*

Thomas D. Domonoske, Esquire
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd
Suite 1A
Newport News, VA 23601
*Counsel for Karen M. Thomas, Gary Lyne Brooks, Jr., and Mary Margaret Gillespie-Brooks*

Office of the United States Trustee
210 First Street, Suite 505
Roanoke, VA 24011

                                              /s/ James Donaldson