**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **Case No. 16-50612** |
| | : | |
| **KAREN M. THOMAS** | : | **Chapter 13** |
| Debtor(s) | : | |
| | : | **Judge Rebecca B. Connelly** |
| | : | |

_____

| | | |
|---|---|---|
| **IN RE:** | : | **Case No.  16-50396** |
| | : | |
| **GARY L. BROOKS, JR.** | : | **Chapter 13** |
| **MARY M. GILESPIE-BROOKS** | : | |
| Debtor(s) | : | **Judge Rebecca B. Connelly** |
| | : | |

_____

| | | |
|---|---|---|
| **KAREN M. THOMAS,** | : | **ADV. PRO. NOS.** |
| and | : | |
| **GARY L. BROOKS, JR.  and** | : | **17-AP-05009 and 17-AP-05010** |
| **MARY M. GILESPIE-BROOKS,** | : | |
| *individually and on behalf of a class* | : | |
| *of similarly situated individuals,* | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MIDLAND FUNDING LLC, and** | : | |
| **MIDLAND CREDIT** | : | |
| **MANAGEMENT, INC.,** | : | |
| Defendants. | : | |
| | : | |

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS
CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT**
_____

# I.

## INTRODUCTION

1.      This is an action for actual damages, statutory damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Federal Rule of Bankruptcy Procedure (each a "Rule" collectively "Rules") 3001.   This action was filed on June 14, 2017 (the "Complaint").   Defendants' responsive pleading was initially due July 17, 2017. On July 10, 2017, counsel for Defendants contacted Plaintiffs' counsel and requested a 21 day extension to respond.   Plaintiffs agreed to that request, and consistent with that agreement, on August 7, 2017, Defendants filed Defendants' Motion to Dismiss and Memorandum in Support ("Defendants' Motion" or "Motion to Dismiss")[Doc. 4] seeking to dismiss Plaintiff's claims.   As more fully set forth below, Plaintiffs request that Defendants' Motion be denied, or in the alternative that Plaintiffs be given the opportunity to amend their filing.

2.      At the time Plaintiffs investigated the underlying facts for their Complaint, the known information was that Defendants Midland Funding LLC and Midland Credit Management, Inc. (collectively "Midland") had not altered any of their procedures for filing proofs of claim in the Bankruptcy Court for the Western District of Virginia regarding open-end credit accounts originally due Synchrony Bank.   As set forth in Defendants' Motion, after being served with the Complaint, Midland filed amended proofs of claim in Plaintiffs' bankruptcy cases (the "Amended Proofs of Claims").   It filed those on July 14 and July 15, 2017.   The Amended Proofs of Claims prove that Midland knew that the statement that no interest and fees were embedded in the original proofs of claims was false.   Midland now asserts that all claims now filed by Midland in the Bankruptcy Court for the Western District of Virginia based on

Synchrony Bank accounts are in the form of the Amended Claims filed in the Plaintiffs' bankruptcy cases.

3.      If given the opportunity to amend the Complaint, Plaintiffs would be able to set forth these facts, and the claims that flow from these facts.  Plaintiffs could also include the specific date when the form of Midland's Synchrony-based claims was changed in the Western District of Virginia, if Midland will provide that date.  Regardless of events outside the facts alleged in the Complaint, Defendant's Motion must be focused on the facts alleged in the Complaint.

4.      Defendants' Motion should be denied because Plaintiff's Complaint properly alleges Midland's violations of the FDCPA and Rule 3001.

## II.

## STANDARD FOR MOTION TO DISMISS

5.      The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted).  A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

6.      A Federal Rule of Civil Procedure ("Federal Rule") 12(b)(6) motion "challenges the legal sufficiency of a complaint considered with the assumption that the facts are alleged to be true."  "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 192-93 (4th Cir. 2009).  The Federal Rule requires that the facts alleged by the Plaintiffs are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones*, No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd*, No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Thus, Federal Rule 12(b)(6) tests the sufficiency of the Complaint without resolving disputes of fact, the merits of claims, or the applicability of defenses. *Verrett v. Gen. Motors Auto. Grp.*, No. 3:15CV416-HEH, 2016 WL 4500865, at *1 (E.D. Va. Aug. 26, 2016).

7.      Federal Rule 8 demands only that a complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2).  This standard exists simply to provide the defendant with fair notice of what plaintiff's "claim is and the grounds upon which it rests." *Verrett*, 2016 WL 4500865, at *1 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The facts a plaintiff pleads must show a right to relief that is more than merely speculative; the plaintiff must plead a plausible claim for relief using facts that allow the court to reasonably infer that the defendant is liable for the alleged wrongdoing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts have described Federal Rule 8's standard as

4

"low" and "not onerous"—even after *Twombly* and *Iqbal*. *Alexander v. District Court of Md. for Charles Cty.*, No. DKC 2007-1647, 2008 WL 6124449, at *6 (D. Md. Mar. 20, 2008); *Ortiz-Diaz v. United States Dept. of Housing & Urban Dev.*, 961 F. Supp. 2d 104, 108 (D.D.C. 2013); *Claver v. Coldwell Banker Residential Brokerage Co.*, No. 08cv817–L(AJB), 2009 WL 801869, at *2 (S.D. Cal. Mar. 25, 2009).

**III.**

**THE COMPLAINT ALLEGES THAT MIDLAND FILED IMPROPER PROOFS OF CLAIM FOR AMOUNTS GREATER THAN THE SCHEDULED DEBT.**

8.      As set forth in the Complaint, each of the Plaintiffs filed for relief under Chapter 13 of Title 11 U.S. Code in the Bankruptcy Court for the Western District of Virginia.  Each of the Plaintiffs listed one or more debts to Synchrony Bank in their schedules filed as part of their bankruptcy.  After Synchrony Bank received notice of each of the Plaintiffs' bankruptcy filings, it transferred data about those debts to Midland pursuant to the terms of a written agreement.  For each of the debts that Plaintiffs had listed as due to Synchrony, Midland filed or caused to be filed proofs of claim that are attached as Exhibits to the Complaint (collectively the "Proofs of Claim" each a "Proof of Claim").

9.      Paragraph 2 of the Complaint asserts that the Plaintiffs are proceeding under "28 U.S.C. §§ 151, 157(b), and 1334, and 11 U.S.C. §§ 105 and 502, and Federal Rules of Bankruptcy Procedure 3001, 3007, and 7023."  Plaintiffs also assert that this is a core proceeding, but to the extent it is not, they consent to entry of final judgment by this Court.

10.     The Complaint specifies that Ms. Thomas scheduled a debt of $637.82 as owed to Synchrony Bank, and Midland filed a Proof of Claim for $689.34. Regarding Mr. Brooks and Ms. Gillespie-Brooks, it specifies they scheduled a debt of $3,646.44 as owed to Synchrony Bank and also a debt of $616.26 as owed to Synchrony Bank, and Midland filed a Proof of Claim

for $3,755.75 and $662.85, respectively.  As shown by the Exhibits to the Complaint, for each claim, Midland asserted under oath that the claim amount did not include interest or other charges.  Midland does not have a reasonable belief that the information in each Proof of Claim is true.

11.      The Complaint further alleges that, as part of a normal procedure, Synchrony Bank provided Midland information about such claims which show that interest is regularly included in the claim amount.  Then, as set forth in the Complaint, even though Midland knows the claim includes interest, it directs employees to file proofs of claim that falsely assert zero interest is included in the claim amount.  The Complaint similarly alleges that Midland is informed that fees are regularly included in the claim amount, and that despite that knowledge, directs employees to file such proofs of claim which assert that zero fees are included.

12.      The Complaint further alleges that, in September 2016, Midland was previously advised by the Bankruptcy Court for the Eastern District of Virginia that its practice of filing proofs of claim that falsely assert that zero interest and zero fees are included in the claim amount is unlawful in the case of *In re Rachel R. Maddux*, Case No. 15-33574-KRH, in the U.S. Bankruptcy Court for the Eastern District of Virginia ("*In re Maddux*").  It also alleges that despite that ruling, Midland continued to file false claims in the Western District of Virginia.

13.      The Complaint further alleges that, as part of the contract with Synchrony Bank, Midland knows it should to be ready to comply with a request from any interested party, whether a trustee, creditor, or debtor, for a copy of the writing underlying the claim.  The Complaint alleges that Midland's normal practice, when asked for such documentation, is not to provide the contract document setting forth what state law applies to the claim and what the agreed interest and fees were between the debtor and Synchrony Bank.  It also alleges, that as part of its contract

with Synchrony Bank, Midland is not prepared to provide the writing underlying Synchrony claims, as the term "the writing" is used in Rule 3001(c)(1).

14.     Finally, the Complaint alleges that Midland knew or reasonably should have known when it filed the proofs of claim that they contained false statements of material fact, and that Midland knew or reasonably should have known that it did not possess sufficient data to comply with the requirements of 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and the Rules.

**IV.**

**PLAINTIFFS' COMPLAINT PROPERLY ALLEGES
THAT MIDLAND VIOLATED THE FDCPA.**

15.     The first claim in this case is brought pursuant to the FDCPA, a remedial statute, the purpose of which is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.  The provisions of the FDCPA at issue in this case, sections 1692e and 1692f, were passed to prohibit debt collectors from specific improper conduct when seeking to collect alleged debts.  When the motion to dismiss is an attack on a consumer's FDCPA claims, the court should resolve any ambiguities in favor of the consumer. *See  Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (the FDCPA "should be construed liberally in favor of the consumer"); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002), we construe its language broadly, so as to effect its purpose.").  As set forth below, the Complaint sufficiently alleges violations of both sections 1692e and 1692f .

**A.    As a consumer protection statute, the FDCPA prohibits both misleading or deceptive tactics, and also unfair or unconscionable tactics**.

16.    "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *Yarney v. Ocwen Loan Serv*., LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (Moon, J.) (*citing United States v. Nat'l Fin. Servs., Inc*., 98 F.3d 131, 135 (4th Cir. 1996)).  The FDCPA prohibits "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e-1692f.  To state a claim for a violation of the FDCPA, a plaintiff must allege: (1) the plaintiff is a "consumer" within the meaning of the statute, (2) the defendant collecting the debt is a "debt collector" within the meaning of the statute, and (3) the defendant has violated a provision of the FDCPA by act or omission. *Creighton v. Emporia Credit Serv. Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997).  For an FDCPA claim, no plaintiff is required to satisfy the more rigorous pleading standard for fraud as Rule 9(b) otherwise requires. *See*, *e.g.*, *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1058 (C.D. Cal. 2009) (explaining that "[t]he FDCPA is not such a lengthy or complex statute as to render Defendants unable 'to prepare an adequate defense'" without more specific pleading detail").

17.    The FDCPA's principal definition of a "debt collector" states that: "The term "debt collector" means any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6).  In turn, a "debt" is defined as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household

purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).  The civil liability section of the FDCPA then provides for the private

relief that Plaintiffs now seek, stating that "any debt collector who fails to comply with any

provision of this subchapter with respect to any person is liable to such person". 15 U.S.C. §

1692k(a). Violations of the FDCPA subject the defendant to an award of actual damages,

statutory damages, and attorney's fees and costs. 15 U.S.C. § 1692k(a).

    18.    Section 1692e of the FDCPA prohibits any false, deceptive, or misleading

representation in an attempt to collect a debt.  The question is not whether the misrepresentation

or falsehood misleads a particular plaintiff or consumer, but instead whether it has the capacity to

mislead.

> A claim under § 1692e, however, differs substantially from a common law fraud
> claim. For example, a plaintiff asserting a claim under § 1692e **need not prove
> actual reliance** on a false representation. *United States v. Nat'l Fin. Servs., Inc.,*
> 98 F.3d 131, 139 (4th Cir.1996) (reasoning that "<u>evidence of actual
> deception is unnecessary</u>" to establish a claim under § 1692e(10)). In addition, a
> plaintiff **need not establish actual damages** to prevail under the FDCPA. *See* §
> 1692k(a)(2) (providing for statutory damages in addition to actual damages);
> *Morgan v. Credit Adjustment Bd., Inc.,* 999 F. Supp. 803, 808 (E.D.Va.1998)
> (awarding a plaintiff statutory damages and costs). Furthermore, a plaintiff does
> not have a burden to establish scienter under the FDCPA. *See* § 1692k(c)
> (explaining that to avoid liability under the Act, the *defendant* may show that a
> violation was not intentional).  In other words, establishing a violation of § 1692e
> is a substantially different matter than establishing common law fraud.

*Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 923-24 (E.D. Va. 2006) (emphasis

added).  And Judge Ellis more recently explained:

> The FDCPA provides a cause of action where a debt collector "use[s] any false,
> deceptive, or misleading representation or means in connection with the collection
> of any debt," and enumerates a nonexhaustive list of actionable conduct. 15
> U.S.C. § 1692e. Importantly, the Fourth Circuit has held that "the test is the
> capacity of the statement to mislead; evidence of actual deception is
> unnecessary." *Nat'l Fin. Servs., Inc.,* 98 F.3d at 139; *see also Neild v. Wolpoff &
> Abramson, LLP,* 453 F.Supp.2d 918, 923 (E.D.Va.2006) ("[A] plaintiff asserting a
> claim under § 1692e need not prove actual reliance on a false representation.").

*Vitullo v. Mancini*, 684 F. Supp. 2d 747, 757-58 (E.D. Va. 2010). Judge Spencer has also explained:

> Under this test, a statement is false or misleading if "it can be reasonably read to have two or more meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir.2006) (citation omitted). The test requires a court to consider a statement's "capacity ... to mislead," such that "evidence of actual deception is unnecessary." *Nat'l Fin. Servs.*, 98 F.3d at 139.

*Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011).

19.    Additionally, the FDCPA prohibits unfair and unconscionable business practices. Section 1692f of the FDCPA states a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." It provides a non-exhaustive list of examples and the "statute does not say" what is unfair or unconscionable. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007). Where a complaint alleges conduct that does not fit under other claims that have been successfully plead, a claim under 1692f is proper. *See Vanhuss v. Kohn Law Firm*, 127 F. Supp.3d 980, 990 (W.D. Wis. 2015).

**B.    Accepting the allegations of the Complaint as true, it adequately alleges both a Sec. 1692e claim and a Sec. 1692f claim.**

**1.    The Complaint adequately alleges a 1692e claim because of the false representation about the character of the debt and the amount of interest, fees or costs embedded in it.**

20.    The Complaint alleges that Midland violated section 1692e of the FDCPA by using false, deceptive, and/or misleading representations or means in connection with collection of a debt. 15 U.S.C. §1692e. It states these include, but are not limited to, the false assertion that no interest or fees were included in the amount of each Proof of Claim, and the false assertion that Midland had a reasonable belief in the accuracy of the information. As fully stated in the Complaint, the specific allegation is that Midland falsely represented that each Proof of Claim included no interest, fees or other costs in the claim, and that it had a reasonable belief in the

accuracy of the information in the Proof of Claim.  The Complaint also specifically alleges why

no such belief existed by asserting that Midland is always provided documents from Synchrony

Bank that show that interest and other charges are included in the claim amounts.  Most

conclusively, the Complaint details how last year Midland was sanctioned by the Bankruptcy

Court for the Eastern District of Virginia for exactly the same practice.

21.     Section 1692e of the FDCPA provides a general prohibition against using "any

false, deceptive, or misleading representation or means in connection with the collection of any

debt."  It then states the following:

> Without limiting the general application of the foregoing, the following
> conduct is a violation of this section:
> . . . .
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt;
>  . . .
> (10) The use of any false representation or deceptive means to collect or
> attempt to collect any debt or to obtain information concerning a consumer. . . .

*Id.*  Thus, Congress has already decided that misrepresenting the character of any debt is such a

material misrepresentation that it necessarily violates the FDCPA.  In addition, it added a general

subsection that requires debt collectors not to use any false representation or deception when

collecting debts.

22.     No dispute is raised that the Defendant is a debt collector and no dispute exists

that filing the Proofs of Claim was an attempt to collect a debt. *See Dubois v. Atlas Acquisitions,*

*LLC et al. (In re Dubois)*, 834 F.3d 522, 528 (4th Cir. 2016)(finding that filing a proof of claim is

debt collection activity).  As set forth in the cases discussed above, Plaintiffs do not need to

prove that anyone was actually misled by Midland's false representation.  Under Rule 3001(c),

Defendants were specifically mandated to identify any "fees, expenses, or charges" in addition to

principal if they wanted to file a claim in the Plaintiffs' bankruptcy cases.  Because compliance

with this Rule is the precondition for asserting a claim, each of these items is necessarily a material matter in any bankruptcy action.

23.      As stated in the December 1, 2016, ruling from *In re Maddux*, the Defendants' misrepresentations are neither justified nor harmless.

> The language of Bankruptcy Rule 3001(c)(2)(A) clearly requires holders of claims, including credit card claims, to provide an itemization of interest, fees, expenses, and other charges when the debtor is an individual. See Fed. R. Bankr. P. 3001(c)(2)(A). The supporting documents provided by Midland for each of the Midland Claims clearly indicated that there was an interest component in the claims. Representing on the proof of claim form that the claimed amount did not include interest was misleading

567 B.R. 489, 499-500 (E.D. Va. 2016).   The fact that Plaintiffs may be able to piece the information from other documents does not change the material harm caused by these misrepresentations. "The itemization of fees and interest must be in a form that does not require a certified public accountant to decipher. The resolution of claims in bankruptcy is designed to be a fair and inexpensive process. These Debtors were entitled to sufficient information to evaluate the validity of the Midland Claims without undue burden or expense." *Id.* at 500 (citing *In re DePugh*, 409 B.R. 125 (Bankr. S.D. Tex. 2009).   Falsely stating that the claim does not include interest or fees inhibits any interested party, whether the trustee, the debtor, or another creditor, from investigating or contesting the debt.   For instance, if an interested parties believes that interest or fees might be incorrect or unlawful on a specific account, but sees a proof of claim that avers under other that these are not being sought, a reasonable person would be deceived into not pursuing the issue.

24.      Because the bankruptcy process requires a specific itemization of interest, fees, and charges that are in addition to principal, the misrepresentation that none of these are included is inherently material.   Furthermore, accepting as true the allegation that Midland knew the

falsity of this representation, the sworn oath of a reasonable belief in the accuracy of this false statement is also material. Without such a sworn oath, none of the claims could even be pursued. As already found by another court about Midland's process for Synchrony-based claims, this was not just an oversight:

> Midland's contention that it could not comply with the dictates of Bankruptcy Rule 3001(c)(2) because it lacked access to information pertaining to the amount of interest embedded in the Midland Claims is disingenuous. Even assuming it was without the information, the assertion that the Midland Claims included no interest was simply incorrect.17 But in the case at bar, Midland possessed the information. The Seller Data Sheets prepared by Midland disclose the accrued interest figures. *Midland simply failed to report the information either on the proof of claim forms or on the attached account summaries that it filed.*

567 B.R. at 494 (emphasis added).

25.     Here the statement that no interest or fees are included is vital to understanding the claim. Each debtor had listed an amount of debt that was materially less than the amount of claim filed by Midland. For instance, Ms. Thomas scheduled a debt of $637.82 and Midland filed a Proof of Claim for at least $50.00 more. Regarding Mr. Brooks and Ms. Gillespie-Brooks, they scheduled debts of $3,646.44 and $616.26, Midland filed Proofs of Claim for over a hundred dollars more than the first, and almost fifty more than the second. Although Midland may be able to explain these differences, it cannot explain such a difference as all being attributable to principal as stated in the claim. Midland denied these Plaintiffs, and any other interested party, the ability to use the Proof of Claim to understand this difference. Because schedules frequently vary by hundreds of dollars or more from the amount of the actual claim, the bankruptcy process places reliance on the claims, which are sworn under oath, to be accurate.

26.     For these reasons, the 1692e claim properly alleges misrepresentations in connection with a debt.

**2.       The Complaint adequately alleges a 1692e claim because of the false representation about the character of the debt and the amount of interest, fees or costs embedded in it.**

27.       The Complaint also alleges that Defendants violated section  1692f of the FDCPA by using unfair and unconscionable means to collect a debt.  It alleges that this section is violated by a standard practice of filing proofs of claim without complying with Rule 3001(c)(2)(A) and without having the ability to comply with Rule 3001(c)(3)(B).

28.       Like section 1692e, section 1692f provides a general prohibition following a by a laundry list of possible "unfair or unconscionable means" that is preceded by the phrase "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section."  Thus, although having an institutionalized practice of filing claims in violation of the bankruptcy rules is not one of the eight listed subsections for section 1692f of the FDCPA, that list is not exhaustive.  When an FDCPA claim is based on different conduct more than the misrepresentation supporting the 1692e claim, a 1692f claim is proper. *See Vanhuss*, 127 F. Supp.3d at 990.

29.       In addition to the misrepresentation underlying the Sec. 1692e claim, Plaintiffs allege that Midland has a standard practice of violating the Rules when filing claims and a standard practice of pursuing claims when it cannot comply with the Rules.  Although the first is based on misrepresentations in violation of the Rules, it is more than that 1692e claim because it alleges an institutionalized practice.  The second is not based on a misrepresentation but on the absence or willingness to comply with requests for the writing underlying the claim.  Paragraph 44 of the Complaint directly alleges that "as part of its contract with Synchrony Bank, Midland is not prepared to provide the writing underlying its claim, as that term is used in Bankruptcy Rule 3001(c)(1)."

30.     Because of the deference shown to proofs of claim, which as evidence sworn under oath, establish presumptions on which the bankruptcy process relies, systemic abuse of its rules is unfair or unconscionable.  Therefore, the 1692f claim is properly alleged.

**C.     None of Defendants' arguments shield them from FDCPA liability for their misrepresentations.**

31.     The Defendants' Motion does not provide any reason to dismiss the FDCPA claim.  In *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 127 (4th Cir. 2014), a court filing that misstated an itemization of a debt was held to be material.  *Powell* did not consider the requirements of Rule 3001.  Furthermore, its statement in dicta that "where a demand letter misstates interest as principal but accurately states the total amount owed, such a technical error is not material" has no applicability to the Plaintiffs here because demand letters are not required by a federal rule to separately itemize interest and principal under oath.

32.     The decision from *In re Ellswick* is similarly unhelpful to Defendants because in that case the creditor filed a statement that itemized the interest included in the claim amount. The alleged FDCPA claim in that case was that the creditor complied with the requirements for an open-end credit transaction when it should have treated it as closed-end credit.  That court stated:

> The additional information furnished by Quantum, albeit only required for open-end or revolving transactions under Rule 3001(c)(3)(A), was not misleading; in fact it was informative beyond what Rule 3001 requires for closed-end obligations. And while the failure to file a copy of a credit agreement with a proof of claim as required by Rule 3001(b)(1) may cause a creditor to forfeit the evidentiary presumption of validity of the claim under Rule 3001(f)10 and potentially suffer sanctions under Rule 3001(c)(2)(D), such failure is a far cry from being misleading or deceptive under the FDCPA or otherwise, especially where, as was the case here, the debtor had a copy of the credit agreement in his own file or obtained one soon after the proof of claim was filed.

No. 15-41196-JJR13, 2016 WL 6902463 (Bankr. N.D. Ala. Nov. 23, 2016).   These facts are entirely dissimilar than a sworn statement that knowingly falsely asserts no interest or fees are included in a claim.

33.    Midland has no basis to claim that a trustee's failure to object to a claim insulates it from FDCPA liability.  The United States Supreme Court in *Midland v. Johnson* stated no such shield.   On the contrary, *Midland v. Johnson* explains why Proofs of Claim are so important. "The audience in Chapter 13 bankruptcy cases includes a trustee, 11 U. S. C. §1302(a), who must examine proofs of claim and, where appropriate, pose an objection, §§704(a)(5), 1302(b)(1) (including any timeliness objection, §§502(b)(1), 558)." 581 U.S.   ----, 137 S. Ct. 1407, 1413 (2017).  Given that a trustee "bears the burden of investigating claims" and determining when to object, *see id.* at 1414, trustees necessarily rely on the information in the sworn Proof of Claim to determine how to exercise those duties, and that information must necessarily be accurate.  For instance, a very large fee or interest itemization might be cause to investigate the legal basis for such fees or interest.  Similarly, for open end credit, the contract documents underlying the claim need to be available on request so that a trustee can determine whether fees or interest exceed the contract amount and what state law to use when making that legal determination.   Midland cannot file systemically false information under oath and then defend that process by stating no trustee challenged such false filings.

34.    Midland's assertion that its employees can file false oaths without violating the FDCPA is contradicted by cases such as *Vassalle v. Midland Funding LLC*, where "the district court issued a self-described 'landmark ruling,' holding that "robo-signing" affidavits in debt-collection actions violates the FDCPA. The court found the affidavit to be false and misleading under the FDCPA due to the false attestation of personal knowledge. As it turns out, Midland

employees had been signing between 200 and 400 computer-generated affidavits per day for use

in debt-collection actions, without personal knowledge of the accounts." 708 F.3d 747, 752 (6th

Cir. 2013)(see also *Midland Funding LLC v. Brent*, 644 F. Supp.2d 961, 967-69 (N.D. Ohio

2009) explaining in detail the process by which Midland systematically created hundreds of false

attestations of personal knowledge per day to be submitted in debt collection actions).  The Sixth

Circuit described the false attestation of personal knowledge as a "predatory practice" and stated

that the "unnamed class members' greatest interest is their ability to contest these allegedly

fraudulent judgments." 708 F.3d at 756 and 759.

35.     The assertions that Defendants find it "difficult to imagine how exactly one's

profession of a reasonable belief can be considered 'false, deceptive, and/or misleading'"

demonstrates a lack of institutional memory.  Back in 2009, Midland was cautioned that even if

the information in an affidavit is accurate, the false attestation that the signer has knowledge the

information is correct is a serious legal violation.

> In finding assertions in the affidavit to be false and misleading, this Court is not concluding that all the information in the affidavit is incorrect. Brent has provided no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false. As discussed *infra,* the actual account information is probably either correct or likely thought correct in good faith by Midland and MCM (and likely a *bona fide* error if so).

> However, this Court finds that the affidavit as a whole is both false and misleading for the aforementioned reasons and notwithstanding the fact that some of the data in it are correct. It is unclear to this Court why such a patently false affidavit would be the standard form used at a business that specialized in the legal ramifications of debt collection. Midland, MCM, or JBR could easily prepare a form affidavit that achieved the same goals without being misleading by reflecting the truth, plain and simple. Rather than basing the affidavit on false personal knowledge, they could base it on the accuracy of the records kept and the accuracy of the data.

*Midland Funding LLC v. Brent*, 644 F. Supp. at 969.  Similarly, in 2015 the Consumer

Financial Protection Bureau took action against Midland because of its practices in

violation of basic legal principles, including using false affidavits.  (See Consent Order in

Consumer Financial Protection Bureau Administrative Proceeding, File No. 2015-CFPB-

0022, specifically Paragraph 19 through 99 describing the entire context in which false

affidavits had routinely been used by Midland in collection actions in state courts)(attached

here as Exhibit A).

36.    The decision from *In re Falwell*, 434 B.R. 779 (W.D. Va. 2009) predates the

current version of Rule 3001, and also does not pertain to false statements on a proof of claim.

To the extent that Defendants seek to apply to amended claims not yet before this Court in this

proceeding and which were filed after this Complaint, such consideration should await either

Defendants' answer or an amended complaint and then proceedings based upon those new facts.

37.    Finally, the decision in *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324

(6th Cir. 2006) provides no protection to Defendants.  In that case, the Court of Appeals refused

to rule upon facts which were presented for the first time on appeal.  It stated:

> On appeal, Harvey argues that she can prove that Seneca and Javitch routinely file
> unsubstantiated debt-collection suits in the hope of obtaining default judgments.
> She also contends that, in the event that a debtor contests Seneca and Javitch's
> debt-collection action, they will dismiss the suit based on a cost-benefit
> calculation, which weighs the cost of obtaining proof of their claim against the
> expected judgment.
>
> These factual allegations first presented by Harvey on appeal are
> significantly different than those contained in Harvey's complaint. These new
> allegations assert the elements of (1) improper motive, (2) pattern and practice,
> and (3) inadequate investigation of the debt before filing the lawsuit. None of the
> new factual allegations are even vaguely alluded to in Harvey's complaint.
>
> . . .
>
> Harvey did not seek to amend her complaint to include the factual scenario she
> now presents on appeal. Because she was represented by counsel, she is not
> entitled to the less stringent pleading standard that applies to pro se litigants. See
> Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir.2003) (holding that
> a "pro se complaint must be held to less stringent standards than formal pleadings
> drafted by lawyers") (quotation marks omitted).

> We will therefore disregard the new set of facts alleged for the first time on appeal that Harvey argues she can prove at trial.

*Id.* at 328-29.  The type of allegations by Plaintiffs about Midland's standard business practice are exactly the type of facts that court did not consider.  To ensure its opinion was not stretched to include systemic corrupt practices, it concluded " [w]e wish to reiterate that we are not passing on the viability of the facts alleged by Harvey for the first time on appeal. We are limited by law to reviewing only the sufficiency of Harvey's complaint." *Id.* at 333.

38.     Plaintiff does ask this Court to decide two of the legal issues regarding compliance with Rule 3001 differently than did the *Maddux* court, that court did not have the benefit of the *Midland v. Johnson* decision.  Based on the United States Supreme Court's reasoning in *Midland v. Johnson*, "the writing" as used in Rule 3001(c)(1) must necessarily include the contract documents that set forth the state law that applies to any claim; that information is necessary for a trustee to determine which statute of limitations applies. Therefore, none of the arguments raised by Defendants bar either FDCPA claim.

## V.

## <u>PLAINTIFFS' COMPLAINT PROPERLY SEEKS RELIEF FOR MIDLAND'S VIOLATION OF RULE 3001</u>

39.     Midland asserts that Rule 3001(c) does not provide Plaintiffs with an independent claim that can be pursued in this Court.  In making this assertion, Midland confuses the potential validity of its claim with the violation of Rule 3001 that appears on the face of its claim.  This adversary proceeding is not an objection to claim under Rule 3007.  Instead, as a proceeding to recover money or property under Rule 7001(1) and to obtain declaratory judgment under Rule 7001(9), it contains a request for appropriate relief to be ordered against Midland under Rule 3001(c)(2)(D).  Whether or not violating Rule 3001 is independent grounds for disallowing

Midland's claim is not a matter at issue on a motion to dismiss. The question of the scope of the "appropriate relief" is entirely different than whether this Court has jurisdiction to grant Plaintiffs relief under Rule 3001 regarding Midland's facially noncompliant Proofs of Claim.

**A.     Accepting the allegations of the Complaint as true, Midland violated Rule 3001(c) because its claims falsely asserted that no interest or fees were in the claim amount even though Midland knew interest and fees were included.**

40.     Rule 3001(a) states, "[a] proof of claim shall conform substantially to the appropriate Official Form."  Additionally, "[i]f, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim."  Fed.R.Bankr.P. 3001(c)(2)(A).  Consequently, any claim must meet the above requirements or the claim violates Rule 3001 on its face.

41.     The Defendants' Proofs of Claim attached to the Complaint all state no interest or fees are included in the claim amounts.  The Complaint alleges that Defendants' knew these representations were false.  This specific allegation must be accepted as true for a motion to dismiss.  Therefore the Court should find that Plaintiffs have alleged that all these claims violated Rule 3001.

**B.     Based on the several violations of Rule 3001(c) the Complaint alleges sufficient facts for Plaintiffs to pursue a remedy directly under Rule 3001(c)(2)(D) and also under Bankruptcy Code section 105.**

**1.     Rule 3001(c)(2)(D) provides this Court jurisdiction to determine an appropriate remedy after notice and hearing within an adversary proceeding.**

42.     When the alleged holder of a claim fails to provide any information required by Rule 3001(c), Rule 3001(c)(2)(D) allows this Court to order appropriate relief, after notice and hearing.  As explained in *Maddux v. Midland Credit Management, Inc.*, 567 B.R. 489 (Bankr.

E.D.Va. 2016), —where, as here, a creditor files its claim in non-compliance with Rule 3001 and

deprives a debtor of "sufficient information to evaluate the validity of [the claims] without undue

burden or expense"—a debtor is both harmed by the violations of Rule 3001 and may obtain

relief in this Court. *Maddux*, 567 B.R. at 500.

43.     Plaintiffs are asking the Court to impose an award of the appropriate remedy for

Midland's violations of  Rule 3001(c)(1), as determined by this Court.  The extent of that remedy

is at the Court's discretion.  Requesting relief within an adversary proceeding is one way to have

this Court order such relief after notice and hearing, and does not equate to asserting a general

private right of action for money damages which could be pursued in a federal district court.

44.     Accepting Midland's central argument would improperly deprive this Court of the

very power granted by the Rules.  It asserts that Count II of the Complaint should be dismissed

"because there is such thing as private cause of action for alleged 'violation' of Rule 3001."

Defendant's Motion, pg. 13.  In support of this argument, it cites *In re Critten*, 528 B.R. 835

(Bankr. M.D.Ala. 2015), where the debtor sought "money damages" for the creditor's alleged

violation of Rule 3001. *Critten*, 528 B.R. at 839.  The court in *Critten* noted that "Critten does

not allege any facts which show that the Proof of Claim filed by Quantum in this case fails to

comply with Rule 3001" *Id*. at 838.  The court also pointed out that "Critten does not discuss

Rule 3001(c)(2)(D), and that Critten presented creditor misconduct cases without alleging any

such misconduct by the Defendant. *Id*. at 841.  Given such pleadings and lack of attention by the

plaintiff, the court then found no "private right of action for damages" for violations of Rule

3001. *Id*. at 842.  To reach that decision, the *Critten* court added into the text of Rule 3001 the

restriction that its remedy was limited to "a proceeding involving the validity of a claim." *Id.* at

840.  The court did not say that a bankruptcy court has no power to order appropriate relief for

such violations, and was not presented with a simple request for the appropriate remedy under Rule 3001(c)(2)(D).  Given that Critten did not even ask the court to proceed under that Rule nor ask for the appropriate remedy, the court's analysis of the issue before it ended with the decision that claim for actual damages could not be asserted; the remainder is dicta without the benefit of briefing or argument.  Accordingly, Plaintiffs assert *Critten* and its progeny should not be followed here.

45.     The holdings in *Critten* and *In re Sims*, that no general private right of action exists to obtain damages for a violation of Rule 3001, does not mean that Plaintiffs have no right to petition this Court to impose sanctions pursuant to Rule 3001(c)(2)(D).  Rule 3001 does not specify the procedure by which the court may impose the sanctions mentioned in Rule 3001(c)(2)(D), nor does the text of the rule deny a debtor the right to request sanctions in an adversary proceeding.  The only condition the Rule specifies is that, before thecourt may impose sanctions for violations of Rule 3001, "notice and a hearing" must take place. See Fed.R.Bankr.P. 3001(c)(2)(D).  No basis exists to read into that Rule the limitation that "such notice and hearing can only occur within a proceeding designated as an Objection to the Claim."

46.     Based on the plain reading of Rule 3001, it follows that any party with standing to object to a claim also has standing to petition the court to impose sanctions under Rule 3001(c)(2)(D) by providing notice of the alleged violation and the request for sanctions, and scheduling a hearing.  section 502(a) of the Bankruptcy Code specifies an objection to claim may be brought by "a party in interest", and a debtor is plainly a party in interest with standing to object to a claim, a debtor must also have standing to seek the remedies provided under Rule 3001.

47.     Plaintiffs have not sued Midland for damages, as the debtor in *Critten* did, and, unlike that debtor, Plaintiffs have specifically asked only for the remedy provided for in Rule 3001.  Also, they have stated facts which, when viewed in the light most favorable to Plaintiffs, conclusively prove Midland's serious misconduct.  Plaintiffs are simply requesting the Court impose sanctions under Rule 3001(c)(2)(D), and have provided notice and opportunity for a hearing.  Thus, Plaintiffs have properly requested that the Court apply its discretion and award "the appropriate remedy".

48.     Of course to determine that remedy, this Court will probably want more facts about the reason these violations occurred.  As shown in *Maddux* and in *In re Goeller*, Ch. 13 Case No. 12-17123-RGM, 2013 WL 3064594 (Bankr.E.D.Va. 2013), that evidence of substantial justification, harmlessness, and willfulness are important in determining whether sanctions should be imposed and what sanctions are appropriate.  See *Maddux* at 499-500 and *Goeller* at *2.  Such evidence can only be obtained and provided to the Court if the Court denies Count II of Midland's Motion to Dismiss, and allows for a hearing on the merits of this issue.

49.     Accepting the allegations of the Complaint as true, and as demonstrated by Midland's lack of compliance with Rule 3001 shown in Exhibit 1, pursuant to the plain meaning of the remedy in Rule 3001(c)(2)(D), Plaintiffs have standing to pursue the Rule 3001 violation after notice and hearing.  Therefore, Plaintiffs have properly alleged a claim that this Court should impose the relief it deems appropriate under Rule 3001(c)(2)(D).

**2. The Complaint alleges sufficient facts for Plaintiffs to pursue a remedy under Bankruptcy Code section 105 in an adversary proceeding.**

50.     The Complaint states that this Court has jurisdiction over the claims before under section 105 of the Bankruptcy Code and ask for this Court to use its equitable power to sanction Midland for its violations of Rule 3001.  The allegations of knowingly false statements by

Midland, considered in the light most favorable to Plaintiffs, implicates section 105, and ". . . §105 may be used to sanction the filing of a proof of claim violative of the Bankruptcy Code and abusive of the bankruptcy process, that is, as the federal criminal code aptly describes, a claim that is false or fraudulent." *In re Varona*, 388 B.R. 705, 717 (Bankr.E.D.Va. 2008); *see also In re Tate*, 253 B.R. 653 (Bankr.W.D.N.C. 2000). In *Tate*, debtors filed a complaint seeking to initiate a class action proceeding against mortgage servicer NationsBanc and, among other causes of action, alleged section 105 of the Bankruptcy Code gave the court the authority to order the creditor to pay restitution to the debtors –and similarly situated debtors –for attorney fees that NationsBanc had improperly charged in violation of section 506(b) and Rule 2016. *Tate*, 253 B.R. at 666-667. NationsBanc argued the court was required to dismiss the Complaint because there was no private right of action under section 506(b). "This," the court said, "is patent nonsense." *Tate* at 668.

51.     As the *Tate* court explained, although section 506(b) of the Bankruptcy Code allowed NationsBanc to obtain payment of fees, Rule 2016 placed affirmative obligations on it to accurately identify the fees charged to the debtors as attorney fees subject to the court's determination of reasonableness. *Id.* Because NationsBanc did not abide by the requirements of the Rule—and because the fees improperly charged were paid by the debtors' post-petition income, an asset of the estate—the court could employ section 105 of the Bankruptcy Code to craft the appropriate remedy. *Id.* As the court said,

> The Court will not allow the Defendant to turn the Bankruptcy Code upon itself in this fashion. Without determining the existence of an express or implied cause of action, the Court recognizes that § 506(b) and Rule 2016 create rights *and* duties for creditors in bankruptcy cases. A creditor may be entitled to payment of professional fees under its contract with a debtor, but before those funds will be paid from the bankruptcy estate, the creditor must affirmatively demonstrate their reasonableness to the court after notice. If a creditor elects to ignore the law to

obtain such fees, it is well within the Court's authority under § 105 to rectify that error.

Furthermore, the relief sought by the Plaintiffs—restitution of fees actually paid to NationsBanc by the class members—is nothing more than an equitable remedy necessary to preserve the benefits and burdens established in § 506 and Rule 2016. Under § 105, this Court has the power to grant restitution to effectuate those sections when, as here, a creditor has collected money from the estate on improperly filed claims.

[    ].

In summary, § 105 authorizes the Court to take whatever action is necessary to enforce the Code's provisions. The bankruptcy court is entitled to exercise its powers under the Code to restrain a creditor from overreaching. To do otherwise would allow NationsBanc to perpetrate a fraud on the Court and other parties in interest. In the present case, the Attorney Fee claimed by NationsBanc has been found unreasonable under § 506 and violative of Bankruptcy Rule 2016. Therefore, the Court finds the equitable remedy of restitution appropriate and grants summary judgment for the Plaintiffs on this issue.

*Id*. at 668-669.

52.    Just as NationsBanc abused its right to charge fees under section 506(b) of the Bankruptcy Code without complying with Rule 2016 in *Tate*, Midland has abused the rights afforded it under section 502 to file claims without also meeting the obligations of Rule 3001. Also like the *Tate* case, the debtor in this case filed their Complaint to restrain Midland from perpetrating a fraud on the court.  They assert that section 105 of the Bankruptcy Code gives the court the power to fashion an appropriate remedy under the circumstances, including using the remedies set forth in Rule 3001.  Whether those remedies should include disallowance of Midland's claims is not relevant to whether the instant adversary proceeding can proceed forward.

53.    Similar to the issue at bar, courts have used section 105 of the Bankruptcy Code to fashion remedies for debtors injured by a creditor's willful violation of the discharge injunction of section 524 of the Bankruptcy Code, even though section 524 does not provide

debtors a private right of action. *See, e.g.*, *Erhart v. Fina*, Case No. 1:12-cv-660, 2012 WL 12870343, E.D.Va. 2012, *aff'd*, *In re Fina*, 550 Fed.Appx. 150 (4th Cir. 2014) (unpublished). This Court has similarly recognized that section 105 of the Bankruptcy Code gives it the power to enforce the discharge injunction of section 524 of the Bankruptcy Code by holding a creditor violating § 524 in civil contempt. See *In re Minor*, Ch. 7 Case No. 10-30161-KLP, Adv. No. 13-03152-KLP, 2015 WL 1540969 at FN 4 (Bankr.E.D.Va. 2015). As the First Circuit Court of Appeals explained in *Bessette v. Avco Fin. Servs.*, "§ 105 does not itself create a private right of action, but a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code,' so long as the court acts consistent with the Code and does not alter the Code's distribution or other substantive rights." 230 F.3d 439, 444-445 (1st Cir. 2000), *quoting Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir.1997).

54. Like *Minor*, courts routinely use their contempt powers under section 105 of the Bankruptcy Code to fashion remedies for debtors harmed by a creditor's violation of the discharge injunction, despite section 524 of the Bankruptcy Code having no self-executing verbiage conferring a private right of action to debtors. In the same way, this Court may use its contempt power under section 105 of the Bankruptcy Code, as Judge St. John stated in *Varona*, to sanction an abuse of process in filing false claims. As another bankruptcy court stated in drawing a parallel between its authority to use section 105 of the Bankruptcy Code to hold a creditor in contempt for violating the discharge injunction and for filing false proof of claims, "[i]t would be illogical to, on one hand, recognize the right of a debtor to bring a contempt action for violation of the discharge injunction, and then, on the other, dismiss a contempt cause of action brought by the debtor to remedy a creditor's allegedly false or fraudulent proof of claim

that abuses §§ 501 and 502 of the Bankruptcy Code and Rule 3001(f)." *In re Watson*, Ch. 7 Case

No. 10-1292, Adv. No. 10-109, 2010 WL 4496837 at *4 (Bankr. N.D.W.V. 2010).

55.     Just as Plaintiffs are not seeking civil damages against Midland for its violations

of Rule 3001, neither are Plaintiffs asserting that section 105 of the Bankruptcy Code gives them

the right to seek actual damages, either for themselves or the class they seek to represent.

Midland's "no private right of action" argument is a red herring because any absence of a private

right of action for actual damages does not preclude the court from using its equitable powers

under § 105 to craft an appropriate sanction.  Midland's pattern of filing false claims throughout

the Western District of Virginia is "violative of the Bankruptcy Code and abusive of the

bankruptcy process" and is precisely the kind of misconduct against which *Varona* says the

court's section 105 of the Bankruptcy Code powers may properly be employed.

**C.     The Amended Claims subsequently filed by Midland do not divest this Court
of jurisdiction to award appropriate relief for prior violations of Rule 3001.**

56.     Midland roots part of its argument in the faulty assertion that because it has filed

Amended Proofs of Claim that comply with Rule 3001, its prior violations are now forgiven.   In

filing its Proofs of Claim, Midland knowingly made false statements regarding the interest, fees,

and other costs in this case and in the cases of similarly-situated debtors, and it deliberately

failed to comply with applicable requirements of Rule 3001.  This willful noncompliance, rising

to the level of abuse of the claims process governed by section 502 of the Bankruptcy Code and

Rule 3001, makes appropriate the court's use of its inherent powers to sanction, in conjunction

with section 105 of the Bankruptcy Code and Rule 3001(c)(2)(D), to impose sanctions on

Midland, including disallowing its claims if the court so chooses.

57.     This Court has the power, in the appropriate circumstances, to disallow claims on

the grounds of not being properly filed. See *In re Commonwealth Biotechnologies, Inc.*, Ch. 11

Case No. 11-30381-KRH, Adv. No. 12-03038-KRH, 2012 WL 5385632 at *6 (Bankr.E.D.Va.

2012).  Just as in this case, the claim at issue in *Commonwealth Biotechnologies* was filed in

non-compliance with Rule 3001.  *Id.*  Likewise in *Goeller*, the court recognized disallowance as

a potential remedy—depending on evidence of "culpability, harm and materiality"—for Rule

3001 violations. *Goeller* at *2. Commenting on the potential range of remedies under Rule

3001(c)(2)(D), the *Goeller* court explained,

> While not expressly stated, the list should be taken as inclusive and not exclusive
> of the sanctions and remedies available. The remedies listed are permissive. The
> rule provides that "the court **may**" take certain actions. (emphasis added.)
> Disallowing the proof of claim is not the mandated sanction or remedy.
> Precluding the holder of claim from presenting the omitted evidence in a
> contested matter or an adversary proceeding may have that result but that is a
> permissive, not a mandatory sanction. Disallowance of the claim should not be the
> automatic result of failure to comply. Other factors such as culpability, harm and
> materiality should be considered.

*Id*.

58.     In addition to their power under section 105 of the Bankruptcy Code to impose

sanctions for civil contempt, bankruptcy courts may impose sanctions "pursuant to a court's

inherent authority to punish and/or deter offending conduct." *In re Gravel*, 556 B.R. 561, 574

(Bankr.D.Vt. 2016).  "While these inherent powers must be exercised with restraint and

discretion, a court may 'safely rely on its inherent power' to impose sanctions where, 'in the

informed discretion of the court, neither the Statute nor the Rules are up to the task,' as long as

that action is not prohibited by the Bankruptcy Code."  *Gravel*, 556 B.R. at 575, *quoting*

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), and *citing Law v. Siegel*, --- U.S. ----,  134

S.Ct. 1188, 1191 (2014).

59.     In *Gravel*, the bankruptcy court found that section 105 of the Bankruptcy Code,

and the court's inherent power to impose sanctions, allowed the court to impose a $375,000.00

sanction against a mortgage servicer that, after having been previous warned by the court,

violated Rule 3002.1 and a court order by sending debtors notices of postpetition fees that had

previously been disallowed. *Gravel* at 580 and FN10.  The *Gravel* court imposed sanctions using

its inherent power and section 105 of the Bankruptcy Code, despite the availability of the

specific sanctions listed in Rule 3002.1.  The court noted that bankruptcy courts are able to

fashion a remedy depending on the circumstances of the case.

> Bankruptcy courts have extensive discretion under § 105 to determine what
> amount of sanctions is appropriate and reasonable. [  ]. Courts must give
> individualized consideration to the particular circumstances of the case, balance a
> myriad of factors, and very intentionally calculate the amount of the sanction to
> ensure it is no more than is reasonably necessary to deter the culpable conduct.

*Id*. at 576.

60.     This Court has numerous options available for remedying the problems caused by

the creditor in this case, and the Court should categorically reject Midland's arguments that a

subsequent amended claim by its very nature moots any issue with its prior violations of Rule

3001.  Furthermore, Plaintiffs do not agree with the unsupported assertion that the amended

claims, which are not yet before this Court, comply with Rule 3001.  If given a chance to amend

the Complaint, Plaintiffs will detail why those claims do not comply with Rule 3001.

### CONCLUSION

Plaintiffs therefore request on behalf of themselves, and the proposed Rule 3001 Class,

that the Court deny Midland's Motion to Dismiss and award such other and further relief as the

Court deems appropriate.  If the Court grants any part of the Motion to Dismiss, or if the Court

would like Plaintiffs to amend the Complaint to address Midland's new filings, Plaintiffs seek

leave to amend the Complaint.  The extent to which the itemization in those new filings violate

Rule 3001 is not at issue in the Motion to Dismiss which looks only to the Complaint.

Respectfully submitted,
**KAREN M. THOMAS**
**and**
**GARY L. BROOKS, JR.  and MARY M.**
**GILESPIE-BROOKS**
*individually and on behalf of a class of*
*similarly situated individuals*


/s/Hannah W. Hutman
**HOOVER PENROD, PLC**
Grant D. Penrod (VSB No. 65818)
gpenrod@hooverpenrod.com
Hannah W. Hutman  (VSB No. 79635)
hhutman@hooverpenrod.com
Beth C. Driver (VSB No. 83838)
bdriver@hooverpenrod.com
342 S. Main Street
Harrisonburg, VA  22801
540-433-2444
*Co-Counsel for the Plaintiffs*

and

Thomas D. Domonoske (VSB No. 35434)
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone (540) 442-7706
tom@clalegal.com
*Co-Counsel for the Plaintiffs*

and

Timothy E. Cupp (VSB No. 23017)
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Ave.
PO Box 589
Harrisonburg, Virginia 22803
(540) 432-9988 (telephone)
cupp@scs-work.com
*Co-Counsel for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a true copy of the *Plaintiffs' Response In Opposition To Motion To Dismiss Class Action Complaint And Memorandum In Support* was electronically served through the Court's ECF system on all those parties registered to received notices and by first class mail to the parties listed below:

Timothy G. Moore, Esq.
James K. Donaldson, Esq.
Spotts Fain PC
411 East Franklin Street
Suite 600
Richmond, VA 23219


this 1st  day of September, 2017

                               /s/Hannah W. Hutman    _____
                               Hannah W. Hutman, Counsel