# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| In re:<br><br>Karen M. Thomas,<br><br>        Debtor. | Case No. 16-50612<br><br>Chapter 13 |
| In re:<br><br>Gary L. Brooks, Jr., and Mary M. Gillespie-Brooks,<br><br>        Debtors. | Case No. 16-50396<br><br>Chapter 13 |
| Karen M. Thomas, and Gary L. Brooks, Jr., and Mary M. Gillespie-Brooks, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>v.<br><br>Midland Funding, LLC, and Midland Credit Management, Inc.,<br><br>        Defendants. | Case Nos. 17-AP-05009 & 17-AP-05010 |

## DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT

Timothy G. Moore, Esq. (VSB No. 41730)
James K. Donaldson, Esq. (VSB No. 80307)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel to Midland Funding, LLC, and Midland Credit Management, Inc.*

## **TABLE OF CONTENTS**

Introduction ......................................................................................................................... 1

Argument and Citations of Authority ............................................................................... 3

I.     The Court should consider the Amended Proofs of Claim in determining whether Plaintiffs have plausibly alleged any FDCPA violations. ......................... 3

II.    In light of the Amended Proofs of Claim, Plaintiffs do not plausibly allege that Midland's proofs of claim were materially false, deceptive, or misleading, or that Midland engaged in any unfair or unconscionable conduct. .................................................................................................................... 5

A.    Plaintiffs fail to state a claim under § 1692e because any alleged misrepresentation that the claims do not include interest or fees is neither false nor materially deceptive or misleading to the relevant parties in interest. ...................................................................................... 5

1.    Plaintiffs cannot state any FDCPA claims based on the possibility that Midland's proofs of claim concealed post-petition interest charges because the Amended POCs show that none of the claims includes any post-petition interest charges. ...................................................................................... 8

2.    Plaintiffs cannot state any FDCPA claims based on the possibility that Midland's proofs of claim concealed pre-petition interest charges at the incorrect contractual or statutory rate ............................................................................... 9

B.    Plaintiffs fail to state a claim under § 1692f because they do not plausibly allege that Midland engaged in any unfair or unconscionable conduct. ........................................................................................ 13

1.    The Amended POCs demonstrate that Midland did not knowingly fail to itemize interest and fees on its proofs of claim. .................................................................................................. 13

2.    The Amended POCs demonstrate that Midland did not knowingly report an incorrect total principal amount because the entire claim amount is appropriately considered "principal" since Midland did not assess any post-petition interest. ..................................................................................... 17

3.    The Amended POCs and the allegations of the Amended Complaint both demonstrate that Midland not only is capable of satisfying debtors' requests for the "writing" (not contract) underlying its claims, but that it regularly does so. ...................... 19

4.    The Amended Complaint does not allege that Midland "intentionally acquired debt in bankruptcy cases but

knowingly ignored bankruptcy rules requiring that Midland itemize interest and principal." ......................................................24

III.  Count 2 remains procedurally and substantively deficient and should be dismissed with prejudice...................................................................25

    A.  Alleged violations of Rule 3001 cannot sustain an affirmative claim for relief. ................................................................................25

    B.  Plaintiffs' requests for claim disallowance and declaratory and injunctive relief under Rule 3001(c)(2)(D) are unavailable as a matter of law, and, in any event, are moot. .........................................................28

        1.  Neither declaratory and injunctive relief nor claim-disallowance is available as "other appropriate relief" under Rule 3001(c)(2)(D)(ii). ................................................................29

        2.  Plaintiffs' requested injunction is nothing more than an impermissibly vague "obey the law" injunction. ...........................33

        3.  Plaintiffs' request for declaratory and injunctive relief is moot in light of the Amended POCs, and they lack standing to request injunctive relief based on proofs of claim filed in other bankruptcy cases. .........................................................................34

    C.  Alternatively, Count 2 should be dismissed without prejudice to Plaintiffs' opportunity to assert a claim for sanctions under Rule 3001(c)(2)(D) as a contested matter. ......................................................37

Conclusion ...........................................................................................................................39

## **INTRODUCTION**

1.      This Court previously denied Midland's motion to dismiss Count 1 of Plaintiff's complaint, in which they assert that Midland violated the Fair Debt Collection Practices Act by filing proofs of claim that did not comply with Rule 3001, but granted the motion as to Count 2, in which Plaintiffs purport to assert an affirmative "claim" for relief based on Midland's alleged violations of Rule 3001. *See* (Doc. 13) ("MTD Opinion"). In denying the Motion to Dismiss as to Count 1, however, the Court did not consider the Amended Proofs of Claim ("Amended POCs") that Midland filed in each of the Plaintiffs' bankruptcy cases shortly after the original complaint was filed. *See* (Doc. 13, at 9 n. 4). Now, Plaintiffs have filed an Amended Complaint (Doc. 16), in which they claim that the Amended POCs also do not comply with Rule 3001, and they have attached the Amended POCs as Exhibits to their Amended Complaint. *See* (Doc. 16, Exs. 7, 8, & 9).

2.      Because Plaintiffs have attached the Amended POCs to their Amended Complaint, the Court may consider them in conjunction with Midland's Motion to Dismiss the Amended Complaint. As explained below, the Amended POCs demonstrate that Plaintiffs cannot plausibly allege that Midland's proofs of claim do not include an itemization of interest and principal charged by the original creditor, as they contend is required by Rule 3001(c)(2)(A), or that Midland is unwilling or unable to furnish a copy of the "writing" underlying its proofs of claim, as required by Rule 3001(c)(3)(B). To the contrary, the attachments to the Amended POCs provide a "Claim Breakdown" of the principal and finance charges comprising the total amount of each claim, as well as a copy of the "writing" upon which the claim is based; and each of the Amended POCs was filed well within 30 days of Plaintiffs' requests for a copy of the

1

"writing" underlying each claim. Therefore, Plaintiffs have not plausibly alleged any FDCPA claims, and so Count 1 should be dismissed with prejudice.

3.       The Court also should dismiss Count 2 with prejudice. Although the Amended Complaint includes additional allegations in support of Plaintiffs' request for declaratory and injunctive relief or, alternatively, claims-disallowance, their purported "claim" for alleged violations of Rule 3001 remains substantively and procedurally flawed. Count 2 is substantively deficient because Plaintiffs ask the Court to recognize a new free-standing cause of action for alleged violations of Rule 3001, even though every other court to consider the issue has refused to do so. Even to the extent it may be construed as a request for sanctions under Rule 3001(c)(2)(D), Count 2 also fails to state a claim either for declaratory and injunctive relief or claims-disallowance because neither remedy is allowed under Rule 3001(c)(2)(D). Lastly, to the extent Plaintiffs request an award of attorneys' fees, a form of relief that actually is provided for by Rule 3001(c)(2)(D), Count 2 should at the very least be dismissed without prejudice to Plaintiffs' assertion of such a claim in a separate contested matter in their respective bankruptcy cases. According to the plain language of Rule 3001(c)(2)(D)(ii), attorneys' fees may be awarded only to the extent they were "caused by the [creditor's] failure" to provide information required by Rule 3001. In their Amended Complaint, however, Plaintiffs make clear that they seek an award of attorneys' fees incurred "*in the future*," (Doc. 16, ¶ 101), notwithstanding that Midland promptly remedied any alleged violations of Rule 3001 by filing the Amended POCs.

4.       Alternatively, if the Court determines that Plaintiffs have stated a claim under either Count 1 or Count 2 of the Amended Complaint, Midland respectfully requests that the Court enter an order (1) either dismissing the remaining claim(s) without prejudice or staying further proceedings, and (2) compelling arbitration on an individual basis. As set forth separately

in Midland's contemporaneously filed Motion to Compel Arbitration and Strike Class Allegations, the applicable account agreement governing each of Plaintiffs' respective Synchrony Bank credit card accounts contains a substantively identical arbitration agreement and class-action waiver. Thus, to the extent any of Plaintiffs' claims survive dismissal, any such claims must be asserted only in arbitration, and only on an individual, non-representative basis.

5.     Accordingly, and for the reasons explained below, Midland respectfully requests that the Court dismiss Plaintiffs' Amended Class Action Complaint, or, alternatively, enter an order compelling Plaintiffs to submit their surviving claim(s) in arbitration on an individual basis.

<u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u>

**I.     The Court should consider the Amended Proofs of Claim in determining whether Plaintiffs have plausibly alleged any FDCPA violations.**

6.     The Court apparently did not consider the Amended POCs when determining whether Plaintiffs had alleged plausible violations of the FDCPA. *See* (Doc. 13, at 9 n. 4) ("Midland notes in its motion to dismiss that in response to the complaint, it amended the proofs of claim at issue. Because the Court is considering whether to dismiss the complaint for pleading insufficiency, the Court does not consider defenses to the merits of the complaint."). However, there are at least two reasons why the Court should evaluate the Plaintiffs' allegations in the Amended Complaint in light of the Amended POCs.

7.     First, "Courts have traditionally analogized a creditor's claim to a civil complaint, a[n] . . . objection to an answer, and an adversarial proceeding to a counterclaim." *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995); *see also In re Gorman*, 495 B.R. 823, 834 (Bankr. E.D. Tenn. 2013) ("If [creditors'] proofs of claim are analogized to complaints—as is commonly

3

done—then the debtors' objections are like motions to dismiss for failure to state a claim on which relief can be granted.").

8.      Here, Midland's filing of the Amended POCs "relates back" to the filing of the original POCs, making the Amended POCs the operative "complaint," by analogy, notwithstanding Plaintiffs' intervening "counterclaim" by way of their adversary complaint. *See In re Nussman*, 501 B.R. 297, 303 (Bankr. E.D.N.C. 2013) ("Although filed after the claims bar date . . ., the claim was not amended in substance; rather, Oak Harbor merely attached additional documentation in support of its claim (and in response to this objection). As such, the amendment is permitted and the amended claim relates back to the date of filing of the original proof of claim.") (citing *In re Brokers, Inc.*, 2007 WL 2156300 (Bankr. M.D.N.C. July 5, 2007) (holding that Federal Rule of Civil Procedure 15 applies to claims in bankruptcy court proceedings, and provides that leave to amend should be freely given, and that amendments relate back to the filing date of the original claim)). Therefore, the Amended POCs are properly before the Court and may be considered alongside Midland's motion to dismiss the Amended Complaint.

9.      Second, and more importantly, Plaintiffs attached the Amended POCs to their Amended Class Action Complaint and base their claims upon them. *See* (Doc. 16, Exs. 7, 8, & 9). Thus, the Amended POCs may properly be considered at the motion to dismiss stage without converting Midland's motion into one for summary judgment. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) ("A motion to dismiss tests the sufficiency of a complaint, and our evaluation is thus generally limited to a review of the allegations of the complaint itself. However, we also consider documents that are explicitly incorporated into

4

the complaint by reference, and those attached to the complaint as exhibits, *see* Fed. R. Civ. P. 10(c).") (citations and quotation omitted).

10.     As the Fifth Circuit long ago admonished, "[t]he litigant may be defeated by his own evidence, the pleader by his own exhibits;" and in this case, "the [Plaintiffs] [have] become enmeshed in [their] own prolixity." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940). Like *Simmons*, "[t]his is not a case where the plaintiff[s] [have] pleaded too little, but where [they have] pleaded too much and [have] refuted [their] own allegations by setting forth the evidence relied on to sustain them." *Id.* In attaching the Amended POCs, Plaintiffs "[make] it clear that there [is] no liability under [any] count." *Id.* As demonstrated below, the Amended POCs make clear that Plaintiffs have not plausibly alleged any FDCPA violations, even to the extent their Amended Complaint is based on Midland's original proofs of claim. And "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Id.*

11.     For these reasons, the Court should consider the Amended POCs in determining whether Plaintiffs have plausibly alleged any FDCPA violations; and for the reasons stated below, the Amended POCs demonstrate that they have not.

**II.     In light of the Amended Proofs of Claim, Plaintiffs do not plausibly allege that Midland's proofs of claim were materially false, deceptive, or misleading, or that Midland engaged in any unfair or unconscionable conduct.**

**A.     Plaintiffs fail to state a claim under § 1692e because any alleged misrepresentation that the claims do not include interest or fees is neither false nor materially deceptive or misleading to the relevant parties in interest.**

12.     In the MTD Opinion, "[t]he Court agree[d] with Midland that materiality is a necessary element for a FDCPA complaint." (Doc. 13, at 6). "On the other hand, the Court disagree[d] with Midland's conclusion that the plaintiffs have failed to plead material

misrepresentations," based on its conclusion that Midland's "definition for materiality . . . is overly narrow," because "Midland suggest[ed] that materiality is limited to facts which would affect a party's response in the context of a two-party dispute." (*Id.* at 7). By way of contrast, the Court noted that "[i]n the context of a bankruptcy case, . . . Midland's [allegedly] false misrepresentations may trigger action from a bankruptcy trustee or another creditor which impacts the debtor even if the false representations may not trigger a direct response from the debtor." (*Id.*).

13.    In its Motion to Dismiss, however, Midland argued that the allegedly false (implied) representation that no interest was included in its proofs of claim is necessarily immaterial "to their relevant recipients—here, a 'party in interest' with the right to object to the proofs of claim under 11 U.S.C. § 502(b) and request their disallowance." (Doc. 4, ¶ 4). As the Court is well-aware, § 502(b) provides the exclusive grounds for disallowance of claims, and the failure to accurately itemize interest as required by Rule 3001(c)(2)(A) (or noncompliance with any other requirements of Rule 3001) is not among them. Thus, no party in interest—the debtors, the trustee, or even other creditors—would have grounds to raise an objection to Midland's proofs of claim based on Midland's alleged failure to itemize the interest charged by the original creditor. And for that reason, Midland's alleged failure to itemize interest is necessarily immaterial, and cannot support an alleged FDCPA violation.[1]

_____

[1] Any allegedly false representation in Midland's proofs of claim also is necessarily immaterial to the debtors because they propose to pay only a fraction of the claims submitted by their unsecured creditors. Thus, debtors would pay the same amount to the trustee each month as part of their confirmed Chapter 13 plans, regardless of how many unsecured claims are allowed, or in what amount. Still, the Court noted in its MTD Opinion that by not itemizing the interest charged by the original creditors, Midland could possibly "obtain an advantage vis-à-vis other creditors." (Doc. 13, at 13). Not so, however, because the debtors' other creditors would have no grounds to object to Midland's original proofs of claim based on their alleged noncompliance with Rule 3001; nor would they have any basis to object to Midland's Amended POCs, because

6

14.     Nonetheless, the Court also found that Plaintiffs had adequately pleaded FDCPA claims, because Midland's alleged failure to itemize interest either could have potentially concealed the accrual of post-petition interest, or interest charged at greater than the applicable contractual or statutory rate, either of which *would have* conceivably given rise to a potential objection by a party in interest.[2] As demonstrated below, however, the suggestion that Midland's claims potentially could have concealed objectionable interest charges is not only conjectural, which standing alone would make Plaintiffs' allegations insufficient to state a claim upon which relief may be granted,[3] the Amended POCs conclusively show that Midland's claims not only do not include any post-petition interest charges, they don't include any *post charge-off* interest. In other words, it is undisputed that Midland's claims are for only the total amount of principal (the charges Plaintiffs incurred on their respective credit card accounts), plus the total amount of interest and fees charged not by Midland, but by Synchrony, while the accounts were still active. Therefore, Plaintiffs cannot plausibly allege that *any* party in interest could have been misled by

---

they conclusively demonstrate that Midland's claims do not include any post-petition (or even post-charge-off) interest. Therefore, any allegedly false representation in Midland's proofs of claim also is necessarily immaterial to other creditors, as well.

[2] *See,* (Doc. 13, at 8) ("If post-petition interest on the unsecured debt is claimed in the bankruptcy case, it may support a challenge. On the other hand, if post-petition interest is charged but not reported and instead mischaracterized as principal, it may appear as if no post-petition interest was charged even if it had been. In another way, if the proofs of claim had reported interest which accrued pre-petition, but which had been calculated using a rate greater than the contractual rate or exceeded an applicable statutory rate, and hence claimed a total amount for the claim greater than legally permissible, it could trigger a challenge from the debtor or the trustee. Without correctly reporting the interest, it is impossible to determine if the amount calculated was appropriate.").

[3] *See In re Larman*, No. 16-71624, 2017 WL 3575860, at *6 (Bankr. W.D. Va. Aug. 17, 2017) ("[U]nder Federal Rule of Civil Procedure 12(b)(6), a party may move a court to dismiss a complaint if the plaintiff has not alleged sufficient facts, taken as true, to show that the claim for relief is plausible at best. Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570–72 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). . . . Consequently, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Iqbal*, 556 U.S. at 679.").

7

the classification of Midland's original proofs of claim as consisting entirely of unsecured principal, because even if Midland had provided the very itemization of principal and interest charged by Synchrony—as Plaintiffs insist they should have, and as the Amended POCs so provide in the form of a "Claim Breakdown"—no objection would lie with respect to any of the claims. That makes Midland's alleged failure to itemize its claims in accordance with Rule 3001(c)(2)(A) immaterial, by definition.

        1.    <u>Plaintiffs cannot state any FDCPA claims based on the possibility that Midland's proofs of claim concealed post-petition interest charges because the Amended POCs show that none of the claims includes any post-petition interest charges.</u>

      15.    Tellingly, Plaintiffs do not allege in their Amended Complaint that Midland's proofs of claim concealed any post-petition interest charges. The Amended POCs show that they do not. As illustrated below, the final monthly account statement (or "charge-off statement") attached to each of the Amended POCs discloses the total amount of principal and interest charges at the time the accounts were charged-off by Synchrony:

| Description | Amount |
|---|---|
| CHARGE OFF ACCOUNT-PRINCIPALS | $254.84 CR |
| CHARGE OFF ACCOUNT *FINANCE CHARGES* | $434.50 CR |

*See, e.g.*, (Doc. 16, Ex. 7, at 5). The sum of those amounts—*i.e.,* the balance of the account at the time of charge-off—is identical to the total amount of Midland's claim, as shown by the included "Claim Breakdown":

## CLAIM BREAKDOWN:

| | |
|---|---|
| PRINCIPAL: | $ 254.84 |
| FINANCE CHARGES: | $ 434.50 |
| ADJUSTMENT: | $ 0.00 |
| TOTAL CLAIM AMOUNT: | $ 689.34 |

(Doc. 16, Ex. 7, at 4). The same is also true for both of Midland's Amended POCs for Gary and Mary Gillespie-Brooks's accounts. *See* (Doc. 16, Exs. 8 & 9, at 4–5).

16.     As shown by the Amended POCs, none of Midland's claims includes any post-charge-off interest, much less post-petition interest. Thus, Plaintiffs have not adequately alleged that Midland's proofs of claim were materially misleading to the extent that they could have conceivably concealed post-petition interest charges that might give rise to a claim objection or potential disallowance.

2.     <u>Plaintiffs cannot state any FDCPA claims based on the possibility that Midland's proofs of claim concealed pre-petition interest charges at the incorrect contractual or statutory rate.</u>

17.     Plaintiffs likewise do not allege in their Amended Complaint that Midland's proofs of claim include any interest charges that were calculated at the incorrect contractual or statutory rate. As shown above, the attachments to Midland's Amended POCs demonstrate that each claim consists only of the principal and interest that made up the outstanding balance when the accounts were charged-off by Synchrony. Thus, there can be no suggestion that either Midland's original or amended proofs of claim potentially could have concealed any interest assessed at an incorrect statutory rate for the accrual of prejudgment interest, because none of the claims includes any post-charge-off interest at all.

9

18.    Moreover, the "Claim Breakdown" included with Midland's Amended POCs provides an itemization of the principal and interest included in each claim at the time the accounts were charged off by Synchrony. That is all that Rule 3001 requires. Rule 3001(c)(2)(A) provides that "[i]f . . . *a claim* includes interest, fees, expenses, or other charges," then a proof of claim should include an itemization of the principal and other charges included in the claim. Fed. R. Bankr. P. 3001(c)(2)(A) (emphasis added). Midland acquired its claims in these cases after they were charged off by Synchrony. Therefore, to the extent Midland is obligated under Rule 3001 to include an itemization of principal and interest included in its claims, any such obligation is limited only to providing an itemization of the principal and interest comprising the total amount of its claims—i.e., the outstanding balance of each account at the time it was charged off by Synchrony. Stated differently, Rule 3001(c)(2)(A) does not require a claimant to provide a historical accounting of the accrual of interest charges (or amounts credited thereto) over the entire life of the account that can be reverse engineered to determine the historical interest rate charged by the original creditor.

19.    Indeed, in order to affirmatively demonstrate that interest charges were assessed by Synchrony at the applicable contractual rate, Midland would have to attach every account statement to each of its proofs of claim (in many cases covering several years' worth of monthly statements). That is simply not what Rule 3001 requires. To the contrary, under the current version of Rule 3001, claims for credit card accounts need not even include a copy of the "writing" upon which the claim is based. Prior to the 2012 amendments to the Bankruptcy Rules, Rule 3001(c) required *all* proofs of claim for debts based on a "writing" to include either "the original or a duplicate" of the writing or "a statement of the circumstances of [its] loss or destruction." Fed. R. Bankr. P. 3001(c)(1) (2011). This Court previously has held that the

10

"writing" requirement could be satisfied by attaching a monthly account statement.[4] In 2012, the Rules were amended to *relax* the requirements for proofs of claim based on defaulted credit card accounts by relieving creditors from the obligation to attach a copy of the "writing" in the first instance when the proof of claim is filed.[5]

20.     Before the amended Rules went into effect, the Advisory Committee initially had proposed an amendment to Rule 3001(c) that "would have required the holder of a claim based on a [credit card account] to attach to its proof of claim *the last account statement sent to the debtor prior to the commencement of the bankruptcy case*." Report of the Advisory Committee on Bankruptcy Rules (May 27, 2010), at 17, *available at* http://www.uscourts.gov/sites/default/files/fr_import/BK05-2010.pdf (emphasis added). However, "[t]he Committee . . . voted to withdraw the proposal for the attachment of the last account statement and in its place to recommend for publication [the] new subdivision (c)(3)." *Id.*

21.     In other words, in order to streamline the claims-allowance process, the Advisory Committee not only amended Rule 3001 to remove the requirement for claimants to attach a copy of the underlying "writing" to each proof of claim for a credit card account, the Committee also rejected a proposal that would have required claimants for credit card debts to attach the last account statement to each proof of claim. In doing so, the Committee could not conceivably have

---

[4] *See In re Falwell*, 434 B.R. 779, 785, 786 (Bankr. W.D. Va. 2009) (holding that "documentation [that] supports the existence of a debtor-creditor relationship and supports the amount as asserted in the proof of claim … is sufficient to meet the requirement in Rule 3001," and that "[a] writing that includes a detailed transaction history over a reasonable period of time," which "may be as little as a single month," is "sufficient to support a proof of claim for an unsecured debt").

[5] *See* Fed. R. Bankr. P. 3001 Advisory Committee Note (2012) ("To the extent that paragraph (3) applies to a claim, paragraph (1) of subdivision (c) is not applicable.").

11

intended that creditors would be required to attach every single credit card account statement in order to demonstrate that interest charges were assessed by the original creditor only at the appropriate contractual rate.

22.     The absence of any requirement under Rule 3001 for a claimant to attach a complete history of account statements in order to demonstrate that interest was assessed by the original creditor at the appropriate contractual rate is further corroborated by other federal laws and regulations that require consumers to raise any disputes about alleged billing inaccuracies within 60 days of receiving a periodic account statement from the original creditor. Here, to the extent Plaintiffs had any reason to question or dispute whether Synchrony correctly assessed interest at the applicable contractual rate, each time they received a monthly account statement, they had a federally-mandated 60-day period to request additional documentation or information, or to dispute any alleged billing errors—including, among other things, "[a] reflection on a periodic statement of a computational or similar error of an accounting nature." 12 C.F.R. § 1026.13(a)(5), & (b)(1).

23.     Conversely, there is no basis in either law or logic to impose upon Midland the duty to prove a negative—that the interest charges imposed by the original creditor and embedded in its claim were *not* charged at an incorrect rate—in order to avoid making a false or misleading implied representation in its proofs of claim. Given that the Bankruptcy Rules impose no obligation on Midland to attach every single account statement from the original creditor in order to show otherwise, and that Plaintiffs do not actually allege in their Amended Complaint that either Midland's original or amended POCs concealed any improperly applied interest charges, Plaintiffs cannot sustain any FDCPA claims against Midland based merely on speculation that their original creditors "might" have charged interest at an incorrect rate.

12

Furthermore, the Amended POCs demonstrate that any such error would not have been revealed by an itemization of the principal and interest included in Midland's claims at the time the accounts were charged-off, which is all that is required by Rule 3001(c)(2)(A).

**B.     Plaintiffs fail to state a claim under § 1692f because they do not plausibly allege that Midland engaged in any unfair or unconscionable conduct.**

24.     The Court reasoned in its MTD Opinion that Plaintiffs had stated a claim under § 1692f, because "[a]t this stage, taking the facts as plead as true, the complaint does allege violations of Rule 3001, a practice of knowingly violating the Rule, and a practice of hindering a debtor's ability to readily obtain information regarding the claim." (Doc. 13, at 12). More specifically, the Court found that the "complaint alleges that Midland (1) knowingly failed to itemize interest and fees on a proof of claim; (2) knowingly reported a total principal which does not accurately reflect the total principal; (3) failed to provide access to a contract; (4) refused to respond timely to a request for the written contract; and (5) intentionally acquired debt in bankruptcy cases but knowingly ignored bankruptcy rules requiring that Midland itemize interest and principal when filing a claim amount for collection in a bankruptcy case." (*Id.* at 12–13).

25.     The five separate allegations that the Court identified as collectively amounting to potentially actionable "unfair" or "unconscionable" conduct either are not actually found in the Amended Complaint, are not plausibly alleged, or are belied by the Amended POCs. Therefore, the Court should also dismiss Plaintiffs' § 1692f claims.

1.     <u>The Amended POCs demonstrate that Midland did not knowingly fail to itemize interest and fees on its proofs of claim.</u>

26.     First, the Court found in the MTD Opinion that Plaintiffs had stated a claim under § 1692f because "the complaint alleges that Midland (1) knowingly failed to itemize interest and fees on a proof of claim." (Doc. 13, at 12–13). Likewise, in the Amended Complaint, Plaintiffs

allege that Midland "knowingly filed proofs of claim that failed to comply with Bankruptcy Rule 3001." (Doc. 16, ¶ 91).   Plaintiffs' allegation is implausible, however, considering that the *Maddux* decision is the only basis they assert in support of their allegation that Midland "knowingly" filed proofs of claim in violation of Rule 3001, *see* (*id.*, ¶ 34), and it is undisputed that two of the three proofs of claim at issue actually were filed *before* Judge Huennekens determined that Midland's proofs of claim for Synchrony Bank credit card accounts incorrectly characterized the entire claim amount as principal.[6]

27.     Midland originally filed Claims 10 and 12 in the Brookses' bankruptcy case on June 23, 2016,[7] whereas Judge Huennekens's initial written decision was not entered until September 21, 2016 (Doc. 16, ¶ 32, & Ex. 4). Midland's Claim No. 8 for Karen Thomas's account was filed just a week later, on September 28, 2016; however, even that claim was filed over two months before Judge Huennekens issued his written opinion on December 1, 2016, concluding that Midland's failure to itemize the interest charged by Synchrony was not substantially justified or harmless. *See* (Doc. 16, ¶ 33, & Ex. 5).

---

[6] This Court may take judicial notice of the *Maddux* decision. *See Skippy, Inc. v. Lipton Inv., Inc.*, 345 F. Supp. 2d 585, 587 (E.D. Va. 2002) ("In certain situations, the court may take judicial notice of public documents in related cases. The Court believes this is such a situation, especially where Plaintiff has represented in case number 02–1571 that it will seek consolidation of the two actions, and Plaintiff refers multiple times to the Complaint in 02–1571 in its own pleadings.") (citing *Ellis v. Cates*, 178 F.2d 791, 793 (4th Cir. 1949)).

Here, like the plaintiff in *Skippy*, Plaintiffs have made multiple references to the *Maddux* decision. In fact, Plaintiffs attached Judge Huennekens's rulings in *Maddux* as Exhibits 4 and 5 to their Amended Complaint. (Doc. 16, Exs. 4 & 5). Furthermore, one of the attorneys for the debtors in *Maddux* also represents the Plaintiffs in this case.

[7] The Court also may take judicial notice of the original proofs of claim filed in the Plaintiffs' respective bankruptcy cases. *See In re Creative Goldsmiths of Washington, D.C.*, 178 B.R. 87, 94–95 (Bankr. D. Md. 1995) ("The Court takes judicial notice of this proof of claim, which stands as prima facie proof of Defendant's claim.").

14

28.     Furthermore, Judge Huennekens refused to find that Midland had acted in bad faith, or that it knowingly attempted to conceal the fact that its claims included interest or other charges. To the contrary, Judge Huennekens recognized in his written opinion that Midland ***did not*** knowingly file proofs of claim that did not properly itemize interest and fees charged by Synchrony. As he explained in his opinion in *Maddux*, "[w]hen Midland filed its Original Proofs of Claim in these Bankruptcy Cases, Midland believed it was not proper to check the box stating that the claim contained interest," because Midland "understood the Original Midland Claims to accurately represent the interest and fees that had accrued on the account prior to the charge-off date as capitalized into principal." (Doc. 16, Ex. 5, at 14).

29.     More importantly, Plaintiffs' FDCPA claims in the Amended Complaint are based on the Amended POCs, which demonstrate that not only did Midland *not* knowingly file claims that failed to itemize the principal and interest charged by the original creditor, Midland filed claims that *actually do* itemize the principal and interest charged by the original creditor. In addition to concluding that Midland reasonably believed that its prior practice was correct, Judge Huennekens also noted in *Maddux* "that Midland ***immediately*** changed its policy in this regard in response to the entry of the Court's Summary Judgment Order." (Doc. 16, Ex. 5, at 14) (emphasis added). In particular, Midland amended each of the proofs of claim at issue in that case to attach, among other things, a "Charge-off Statement" that "disclosed the amounts of interest and fees charged year to date and the amount of charged-off interest on the account." (*Id.*) The same is true here. In response to Plaintiffs' complaint, Midland amended each of the proofs of claim at issue to include the exact same information as the amended claims in *Maddux*. In fact, Judge Huennekens also expressly approved the inclusion of the very same "Claim

15

Breakdown" that is found on the Account Summary attached to each of the Amended POCs in this case.[8]

30.     Plaintiffs allege that the "Claim Breakdown" included with the Amended POCs is still insufficient because "[a]s used by Defendants, the term 'FINANCE CHARGES' includes charges that are not considered 'Finance Charges' by the federal Truth in Lending Act." (Doc. 16, ¶ 54). Plaintiffs apparently take issue that the "Finance Charges" listed in the "Claim Breakdown" include both interest and fees charged by Synchrony. Plaintiffs go on to state that "[i]f Synchrony Bank were to file its own claims, Synchrony Bank would be able to itemize the interest that is included in the claim amount separate from the fees that are included in the claim amount." (*Id.*, ¶ 55); *see also* (*id.*, ¶ 79) ("From the information in Exhibit A and B to the attachments to Exhibit 7, 8, and 9, an interested party who requests the writing underlying these claims could not readily determine the amount of the 'Finance Charges' on the Amended Proof of Claim that is attributable to interest and the amount attributable to fees.").

31.     Plaintiffs fail to allege in their Amended Complaint the relevance of how "Finance Charges" are defined for purposes of the Truth in Lending Act. As the Court has recognized, the itemization requirement of Rule 3001(c)(2)(A) is intended to allow the debtor and other parties in interest the opportunity to examine whether the claim includes impermissible or miscalculated charges "in addition to its principal amount." Fed. R. Bankr. P. 3001(c)(2)(A).

---

[8] *See In re Maddux*, No. 15-33574, Trans. of H'rg on Mot. of Midland Credit Management to Amend, Clarify, and/or Make Add'l Findings Pursuant to Bankr. R. 7052 ("Maddux Transcript"), Doc. 151, at 56:1–4 (Bankr. E.D. Va. Jan. 25, 2017) ; *see also In re Maddux*, No. 15-33574, Order Granting Mot. of Midland Funding, LLC, to Amend, Clarify, and/or Make Add'l Findings ("Maddux Clarification Order"), Doc. 153, at 3–4 ¶ C ("The Court indicated that an appropriate itemization that satisfies Bankruptcy Rule 3001(c)(2)(A) should be presented by providing a claim breakdown similar to the form of proof of claim No. 12-1 filed by Midland in the case of *In re Britt*, Case No. 16-32732 . . . . Acceptable forms of such itemizations are attached hereto as Exhibit A, Exhibit B, and Exhibit C.").

And two other bankruptcy judges in this Circuit have held that the Claim Breakdown included with the Amended POCs does just that. *See supra*, n.8; *In re Jowers*, No. 16-80101, Order Supplementing Judgment, Doc. 63 at 2 (Bankr. D.S.C. 2017) ("Accordingly, the Court's May 24, 2017 order is supplemented to provide that the breakdown proposed by Defendants in their motion is sufficient, for the purposes of Ms. Jowers' bankruptcy case, to comply with Federal Rule of Bankruptcy Procedure 3001(c)(2)(A)."). Moreover, Plaintiffs also acknowledge in the Amended Complaint that the charge-off statement attached to each of the Amended POCs "includ[es] ***the exact breakdown of the fees and interest charged on the account in that calendar year***." (Doc. 16, ¶ 78) (emphasis added). Thus, Plaintiffs have not stated a claim under § 1692f based on their implausible allegation that Midland "knowingly failed to itemize interest and fees on a proof of claim."

2.  <u>The Amended POCs demonstrate that Midland did not knowingly report an incorrect total principal amount because the entire claim amount is appropriately considered "principal" since Midland did not assess any post-petition interest.</u>

32.     Second, the Court found in the MTD Opinion that Plaintiffs had stated a claim under § 1692f because "the complaint alleges that Midland . . . (2) knowingly reported a total principal which does not accurately reflect the total principal." (Doc. 13, at 13). In theor Amended Complaint, however, Plaintiffs expressly acknowledge that each of the Amended POCs includes an attached "itemization that separates the claimed amount between 'Principal' and 'Finance Charges' . . . ." (Doc. 16, ¶ 53).

33.     Regardless, to the extent Plaintiffs' Amended Complaint can be read to allege that Midland knowingly mischaracterized the amount of principal for its proofs of claim, any such allegation likewise is belied by Judge Huennekens's opinion in *Maddux*. As he explained, "because Midland did not charge any interest or fees on any of the post-bankruptcy accounts that

17

it purchased[,] [i]t was Midland's policy to treat the entire amount of a purchased claim as principal." (Doc. 16, Ex. 5, at 14). This was because Midland "understood the Original Midland Claims to accurately represent the interest and fees that had accrued on the account prior to the charge-off date as capitalized into principal." (*Id.*) Thus, the total claim amount for Midland's original POCs—which was equal to the sum of the principal and interest when the accounts were charged-off by Synchrony, as reflected by the charge-off statements attached to the Amended POCs[9]—was characterized as "unsecured principal."

34.    But that doesn't make Plaintiffs' supposed allegation that Midland "knowingly" reported the wrong amount of principal any more plausible. As Judge Huennekens also noted, "Strickland [a certified public accountant] corroborated [Bedoya's] testimony [about Midland's policy of treating the total charge-off balance as being capitalized as principal], explaining that it was the common practice throughout the credit card industry to capitalize accrued interest and fees as principal." (*Id.*).

35.    Furthermore, the "Claim Breakdown" included with the Amended POCs expressly breaks out the "Principal" amount of the claim from the additional interest and fees charged by Synchrony. Thus, Plaintiffs have not stated a claim under § 1692f based on their allegation that Midland "knowingly reported a total principal which does not accurately reflect the total principal."

---

[9] *See* (Doc. 16, Ex. 5, at 13 n.22) ("The charge-off Account Statement shows that amount of principal charged-off was $1,917.23 and the amount of accrued interest that was charged-off was $160.08. The sum of these two charged-off amounts is $2,077.31, the Claimed Amount set forth in Midland's First Amended Claim 14-2.").

3.     The Amended POCs and the allegations of the Amended Complaint both demonstrate that Midland not only is capable of satisfying debtors' requests for the "writing" (not contract) underlying its claims, but that it regularly does so.

36.     The third and fourth reasons underlying the Court's conclusion that Plaintiffs had stated a claim under § 1692f were based on allegations in the original complaint "that Midland . . . (3) failed to provide access to a contract; [and] (4) refused to respond timely to a request for the written contract." (Doc. 13, at 13). Prior to listing Midland's alleged failure to "provide access to a contract" as a basis for denying Midland's motion to dismiss Plaintiff's § 1692f claims, however, the Court explained that its reasoning was based on its conclusion that, "taking the facts as plead as true, the complaint does allege *violations of Rule 3001*, a practice of knowingly violating the Rule, and a practice of hindering a debtor's ability to readily obtain *information regarding the claim*." (*Id.* at 12) (emphases added). Yet, nothing in Rule 3001 requires creditors to "provide access to a contract"; and it is undisputed that the "information regarding the claim[s]" that Midland has provided to Plaintiffs is above and beyond the requirements of Rule 3001.

37.     Plaintiffs' allegations in the Amended Complaint confirm that Midland not only has a policy of supplying debtors with information and documentation in accordance with the requirements of Rule 3001(c)(3)(B), but that it actually did so in response to Plaintiffs' requests in this case:

> 47. In their original Complaint [filed on June 15, 2017], each of the Plaintiffs made a formal written request for the writings upon which the claims were based. . . .
>
> 50. . . . [O]n July 14, 2017, Midland filed Amended Proofs of Claims in Plaintiffs' cases. . . .

58. Each Amended Proof of Claim form in Exhibit 7, 8, and 9, includes as exhibits **the Defendants' response to the written request by Plaintiffs for the documents underlying each claim**.

59. These responses have the following pertinent common characteristics:

-an Exhibit A which is a charge-off document; and

-an Exhibit B which is eight pages, including a Bill of Sale, Purchase Price Reconciliation/Funding Instructions, Affidavit of Sale, Blanket Certificate of Conformity, a three page credit card statement document, and a data printout.

(Doc. 16, ¶¶ 47, 50, 58–59) (emphasis added).

38.     Plaintiffs cannot state a claim under § 1692f for Midland's "allege[d] *violations of Rule 3001*," (Doc. 13, at 12), based on their allegations that Midland supposedly "failed to provide access to *a contract*," (*id.* at 13), when Rule 3001 itself requires only that a claimant for a credit card debt must supply a party in interest with a copy of the "writing" that substantiates its proof of claim—not a copy of a "contract." *See* Fed. R. Bankr. P. 3001(c)(3)(B) ("On written request by a party in interest, the holder of a claim based on an open-end or revolving consumer credit agreement shall, within 30 days after the request is sent, provide the requesting party a copy of the writing specified in paragraph (1) of this subdivision."); *id.* at Rule 3001(c)(1) ("*Claim Based on a Writing.* Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.").

39.     This Court previously has held that "[a] *writing* that includes a detailed transaction history over a reasonable period of time," which "may be as little as a single month," is "sufficient to support a proof of claim for an unsecured debt." *In re Falwell*, 434 B.R. 779, 785

20

(Bankr. W.D. Va. 2009) (emphasis added).[10] Similarly, as Plaintiffs acknowledge in their Amended Complaint, "[a]s part of the resolution of *In re Maddux*, that Court ruled that **the writing underlying a claim, as defined in Bankruptcy Rule 3001(c)(1), refers to the account statement on which Midland is basing its claim.**" (Doc. 16, ¶ 43) (emphasis added). Plaintiffs also acknowledge in their Amended Complaint that Midland has provided just that, by attaching the charge-off statements and other documentation to the Amended POCs. (*Id.*, ¶ 59). Plaintiffs have not identified any reason for this Court to disagree with Judge Huennekens's decision in *Maddux* that when Midland files a proof of claim for a credit card account, the writing upon which its claim is based is the charge-off statement, which they acknowledge was attached to each of the Amended POCs. *In re Maddux*, No. 15-33574, Doc. 151, at 58:10–19 (Bankr. E.D. Va. Jan. 25, 2017).[11]

40.     To the extent the Amended Complaint includes additional allegations not included in the original complaint challenging whether the attachments to the Amended POCs are sufficient to show that Midland is entitled to collect on the credit card accounts that Plaintiffs originally owed to Synchrony,[12] Judge Huennekens ruled against the debtors in *Maddux* on that issue, as well:

---

[10] In its MTD Opinion, the Court cited *Falwell* for two other propositions, but did not discuss its holding regarding what constitutes a "writing" for purposes of Rule 3001(c)(1) and (c)(3)(B). *See* (Doc. 13, at 6 n.6, & 7 n.7).

[11] *See also id.* at 9:11–15 (Judge Huennekens adopts Midland's suggestion that the "writing" its claims are based on refers to "the most recent statement that provides all the information that a debtor would need to evaluate the claim for the purposes of whether or not the claim satisfies and is entitled to the presumption [of validity]"); *In re Maddux*, No. 15-33574, Doc. 153, at 3 ¶ A ("The Court finds that providing applicable Account Statements satisfied Midland's obligation [under Rule 3001(c)(3)(B)] to provide the writing specified in Bankruptcy Rule 3001(c)(1).").

[12] *See* (Doc. 16, ¶¶ 76–77) ("76. The attachments to Exhibit 7, 8, and 9 do not have any document prepared by or signed by Synchrony Bank that connects the data shown on page 8 of

> The testimony of Rodrigo Bedoya ("Bedoya"), Midland's Director of Bankruptcy Operations, was **uncontroverted**. Bedoya explained the process under which Midland acquired the Debtors' accounts from Synchrony Bank. Midland purchased pools of charged-off accounts from Synchrony Bank. The charged-off accounts were bundled by date. Synchrony Bank effected the assignment of each pool through a bill of sale. **Ownership of a specific account within a pool can be verified by matching the account numbers on the account statements with the charge-off statements that Midland received from Synchrony Bank.** Bedoya was able to demonstrate in this manner that each of the Debtors' accounts had been assigned from Synchrony Bank to Midland. **The Court is satisfied that Midland is the owner of the Debtors' credit card accounts in these Consolidated Contested Matters.**

(Doc. 16, Ex. 5, at 9–10) (emphases added); (*id.* at 15 n.25) ("In this case, Midland has satisfied its burden on the ownership of the credit card accounts."). As in *Maddux*, the attachments to the Amended POCs "demonstrate . . . that each of the Debtors' accounts had been assigned from Synchrony Bank to Midland." (*Id.* at 9–10). And as in *Falwell*, "[t]he documentation supports the existence of a debtor-creditor relationship and supports the amount as asserted in the proof of claim." *In re Falwell*, 434 B.R. at 786. "This documentation is sufficient to meet the [writing] requirement in Rule 3001." *Id.*

41.     Plaintiffs' claim under § 1692f also fails to the extent it is based on their allegation that Midland "refused to respond timely to a request for the written contract." (Doc. 13, at 13). That allegation, too, is refuted by other allegations of the Amended Complaint itself, and by the Amended POCs. For example, Plaintiffs allege that "Ms. Thomas has requested the writing underlying Proof of Claim 8 filed by Midland, but has received no response." (Doc. 16, ¶ 42 & Ex. 6). Not so. Thomas's request, attached as Exhibit 6 to the Amended Complaint, is dated December 5, 2016. (Doc. 16, Ex. 6). Midland amended Claim No. 8 just eleven days later,

---

Exhibit B to any sale of accounts by Synchrony Bank to Defendants. 77. When asked for the writing underlying Synchrony Bank open-end credit claims, Defendants never provide any document prepared by or signed by Synchrony Bank that connects the data shown on page 8 of Exhibit B to any sale of accounts by Synchrony Bank to Defendants.").

on December 16, 2016. *See* (Case No. 16-50612, Claim No. 8-2). The attachments to Claim No.

8-2 correspond exactly with the exhibits Plaintiffs acknowledge in their Amended Complaint

constitute "**the Defendants' response to the written request by Plaintiffs for the documents**

**underlying each claim**." (Doc. 16, ¶ 58).

42.     Lastly, though irrelevant to their claims, Plaintiffs apparently dispute that the

charge-off statements attached to the Amended POCs were actually ever sent to the debtors. *See*

(Doc. 16, ¶ 78). Specifically, they allege that while each attached charge-off statement "appears

to be a copy of a credit card periodic statement sent to a debtor in the ordinary course of

business," it "is not a periodic statement sent to a debtor." (*Id.*). Rather, Plaintiffs allege that "the

document was intentionally prepared to appear at first glance to be a copy of a statement sent to a

debtor," but was not, because "the demand for payment and the 'Late Payment Warning' that

late fees may be applied if that payment is not received is necessarily either a false statement or a

violation of the automatic stay because each document is prepared after the debtor filed for

bankruptcy protection." (*Id.*)

43.     Plaintiffs' additional allegations regarding the charge-off statements attached to

the Amended POCs are not sufficient to sustain their FDCPA claims. As Plaintiffs acknowledge

in the very same paragraph, the charge-off statement attached to each of the Amended POCs

"includ[es] *the exact breakdown of the fees and interest charged on the account in that*

*calendar year*." (Doc. 16, ¶ 78) (emphasis added). Even if Synchrony did not mail each of the

Plaintiffs a copy of the charge-off statement (which it did), Plaintiffs' FDCPA claims are based

on their allegations that Midland's Amended POCs did not appropriately itemize the interest and

fees included in its proofs of claim, yet they acknowledge that the charge-off statement attached

to the POCs provided them "the exact breakdown of the fees and interest charged on the account in that calendar year."[13]

44.     In sum, Plaintiffs have not plausibly alleged that Midland has not or cannot respond timely to debtors' request for the "writing" underlying its proofs of claim. Indeed, the Amended Complaint and the Amended POCs show that it is undisputed that Midland responded to each of Plaintiffs' requests for the "writing" supporting its proofs of claim by attaching such documentation to the Amended POCs well within the 30 days allowed under Rule 3001(c)(3)(B). Therefore, Plaintiffs have not stated a claim under § 1692f based on their allegations that Midland either "failed to provide access to a contract," or "refused to respond timely to a request for the written contract."

> 4.    <u>The Amended Complaint does not allege that Midland "intentionally acquired debt in bankruptcy cases but knowingly ignored bankruptcy rules requiring that Midland itemize interest and principal."</u>

45.     Fifth, and finally, the Court found in the MTD Opinion that Plaintiffs had stated a claim under § 1692f because "the complaint alleges that Midland . . . (5) intentionally acquired debt in bankruptcy cases but knowingly ignored bankruptcy rules requiring that Midland itemize interest and principal when filing a claim amount for collection in a bankruptcy case." (Doc. 13, at 13). But neither the original nor Amended Complaint contains any allegations regarding

---

[13] Plaintiffs' unsupported allegations about the charge-off statements attached to the Amended POCs also are irrelevant to any of the claims asserted in this case. Plaintiffs have not asserted any claims against Midland (or Synchrony) for alleged violations of the automatic stay; thus, whether the charge-off statements were mailed to the Plaintiffs after they filed bankruptcy is of no consequence. In any event, the charge-off statements would not have violated the automatic stay because they did not put any pressure on Plaintiffs to pay their defaulted credit card accounts. Rather, Plaintiffs' credit card accounts where charged-off by Synchrony *because of* their bankruptcy filings, and the charge-off statements sent to them (as required by law) notify the debtors that their outstanding balance is "$0.00" because the outstanding balance was charged-off. A statement indicating a zero balance cannot plausibly be construed as exerting any pressure to pay.

whether Midland "intentionally acquired debt in bankruptcy cases." Nor would any such allegation be material, even if it had been pleaded. Furthermore, and more importantly, Plaintiffs have not plausibly alleged that Midland "knowingly ignored bankruptcy rules requiring that Midland itemize interest and principal." Even if Plaintiffs were correct in contending that Midland's original POCs should have included an itemization of the interest charged by Synchrony, the Amended Complaint is devoid of any plausible allegations that Midland "knowingly ignored bankruptcy rules," for all of the reasons stated above. Accordingly, the Court should dismiss Plaintiffs' FDCPA claims with prejudice.

### III.    Count 2 remains procedurally and substantively deficient and should be dismissed with prejudice.

46.    The Court previously dismissed Count 2, Plaintiffs' purported "claim" for "Violations of Federal Rule Bankruptcy Procedure 3001," because "the complaint does not provide sufficient details of the grounds for an injunction," or "sufficient notice of the extent of the 'attorney's fees' 'caused by the [alleged] failure' to comply with Rule 3001 or 'litigation costs.'" (Doc. 13, at 16). Rather than dismiss the claim with prejudice, however, the Court instead allowed "plaintiff[s] to amend the complaint to describe what if any appropriate relief is permitted or required." (*Id.* at 17).

47.    For the reasons explained below, the additional allegations of the Amended Complaint have not remedied Count 2's procedural and substantive infirmities. Therefore, Count 2 should be dismissed with prejudice.

### A.    Alleged violations of Rule 3001 cannot sustain an affirmative claim for relief.

48.    Although the Court previously dismissed Count 2, the MTD Opinion did not address Midland's principal argument in support of its dismissal: namely, that alleged violations of the Bankruptcy Rules in general, or Rule 3001 specifically, are not sufficient to sustain any

25

affirmative claims for relief. In fact, Midland is not aware of a single case in which a court has recognized a free-standing cause of action for alleged violations of Rule 3001. On the other hand, there is overwhelming authority to the contrary. *See, e.g.*, *In re Critten*, 528 B.R. 835, 839 (Bankr. M.D. Ala. 2015) ("Count II—which seeks money damages for an alleged violation of Rule 3001—should be dismissed because ***a violation of Rule 3001 does not give rise to an independent cause of action***. Critten has cited no cases, and the Court has found no cases, which stand for the proposition that the failure to comply with Rule 3001 gives rise to an independent cause of action.") (emphasis added); *id.* at 841 ("All of this is to say that there is a considerable body of case law on the books concerning the question of what results when a Proof of Claim fails to comply with the technical requirements of Rule 3001. ***None of the cases . . . which the Court has found by conducting its own research support the proposition that a debtor may sue a creditor and recover damages for the failure to comply with Rule 3001***.") (emphasis added); *id.* at 840 ("Though *Reynolds* did not consider the question of whether Rule 3001 creates an independent cause of action, if the remedy for noncompliance is not disallowance of the claim, it necessarily follows that the much greater remedy of an independent cause of action is likewise not allowed.") (citing *In re Reynolds*, 470 B.R. 138 (Bankr. D. Colo. 2012)); *In re Turner*, No. 09-15230, 2011 WL 4352158, at *6 (Bankr. E.D. Tenn. Sept. 16, 2011) ("***[N]o private right of action exists for a failure to comply with Fed. R. Bankr. P. 3001(c)***.") (emphasis added).

49.     First, to the extent Count 2 is based on Midland's alleged failure to check the box on the proof of claim form indicating that its claims include interest, or its attestation to the accuracy of the information contained in the proof of claim form, the reasoning behind courts' refusal to recognize a judicially-created private right of action under Rule 3001 applies with even more force to the novel suggestion that a plaintiff may assert a claim for the "violation" of a

procedural form. Indeed, "the rules and instructions upon which [Count 2] relies acknowledge some variance from [their] stringent reading of select language." *In re Dove-Nation*, 318 B.R. 147, 151 (B.A.P. 8th Cir. 2004). "For example, Rule 3001(a) acknowledges that a proof of claim need only conform substantially to the appropriate official form," and that "[i]t need not conform exactly." *Id.* Indeed, there is "nothing to suggest that the official forms have the force and effect of the Bankruptcy Code or Rules." *In re Sims*, 278 B.R. 457, 468 (Bankr. E.D. Tenn. 2002). Thus, courts have had no trouble concluding that "Official Form 10 is not an order of the court and that therefore the failure to comply with the form is not contemptuous." *Id.* at 468. As the court in *Sims* explained, quoting a popular bankruptcy treatise: "'Unlike the Rules, the Official Forms do not require approval either by the Supreme Court or by Congress, and while they should be observed and should be used, they do not have the force of law.'" *Id.* at 469–70 (quoting Norton Bankr. Rules Pamphlet 1997–98 Edition, p. 3). If courts have declined to find a creditor's failure to comply with Rule 3001 to be contemptuous because "the use of the Official Forms has generally been held subject to a 'rule of substantial compliance,'" and "[t]he flexibility permitted by this rule is inconsistent with the clarity required of a court order with the potential to subject a violator to contempt," then it's hard to imagine how an alleged "violation" of Rule 3001 could subject a creditor to a civil claim for money damages. *In re Sims*, 278 at 469 (quoting Fed. R. Bankr. P. 9009, Advisory Comm. Notes).

50.     Second, to the extent Count 2 is based on Midland's alleged failure to comply with the requirements of Rule 3001(c)—such as, by failing to itemize the interest charged by Synchrony, in accordance with Rule 3001(c)(2)(A), or by failing to timely respond to requests for the underlying "writing," pursuant to Rule 3001(c)(3)(B)—the remedies available to Plaintiffs are specified in Rule 3001(c)(2)(D), not any heretofore unrecognized cause of action

27

under Rule 3001. *See* Fed. R. Bankr. P. 3001(c)(2)(D) ("If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions: (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."). The fact that Rule 3001 provides its own form of sanctions if a creditor "[f]ails to provide any information required by [Rule 3001(c)]" further counsels against judicial recognition of a new independent cause of action, as Plaintiffs would have this Court do.

51.     Thus, even assuming as true Plaintiffs' allegations that Midland's proofs of claim violated Rule 3001(a) by supposedly "failing to file a proof of claim that conformed substantially to the Official Form," (Doc. 16, ¶¶ 98–99), or that it violated Rule 3001(c)(2)(A) by failing to include an itemization of the interest charged by the original creditor as an attachment to its original proofs of claim, Count 2 fails as a matter of law to state any claim against Midland upon which relief may be granted. Therefore, Count 2 should be dismissed with prejudice.

**B.      Plaintiffs' requests for claim disallowance and declaratory and injunctive relief under Rule 3001(c)(2)(D) are unavailable as a matter of law, and, in any event, are moot.**

52.     As the Court recognized in its MTD Opinion, "Rule 3001 provides for sanctions for failure to comply with Rule 3001(c)(2)," as Plaintiffs allege here. (Doc. 13, at 15). More specifically, "[a]fter notice and a hearing, the Rule permits the Court to take one or both of two explicit actions. First, the Court may 'preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless.'

Second, the Court may 'award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.'" (*Id.*) (quoting Fed. R. Bankr. P. 3001(c)(2)(D)(i)–(ii)).

53.    Plaintiffs previously have conceded that "no general private right of action exists to obtain damages for a violation of Rule 3001" (Doc. 6, ¶ 45), and have disclaimed any request for "'money damages' for [Midland's] alleged violation of Rule 3001." (*id.*, ¶ 44); *see also* (*id.*, ¶ 47) ("Plaintiffs have not sued Midland for damages, as the debtor in *Critten* did"). Instead, Plaintiffs contend that the "appropriate remedy" is that "Defendants be required to comply with Rule 3001 or [that] the Synchrony-based claims be disallowed." (Doc. 16, ¶ 102).

54.    Neither declaratory and injunctive relief nor claim-disallowance is available as "other appropriate relief" under Rule 3001(c)(2)(D)(ii). Nor are Plaintiffs entitled to the impermissibly vague "obey the law" injunction that they request. *See* (Doc. 16, ¶ 102) ("The appropriate remedy that Plaintiffs seek is that Defendants be required to comply with Rule 3001 . . . ."). Furthermore, in addition to being unavailable as a matter of law, Plaintiffs' request for declaratory and injunctive relief also is moot in light of the Amended POCs. Therefore, in addition to the fact that Plaintiffs cannot assert any "claim" against Midland for alleged violations of Rule 3001, Count 2 also should be dismissed because the Court lacks the authority to grant Plaintiffs' requested relief.

       1.     <u>Neither declaratory and injunctive relief nor claim-disallowance is available as "other appropriate relief" under Rule 3001(c)(2)(D)(ii).</u>

55.    Although Plaintiffs have alternatively requested that Midland's "Synchrony-based claims be disallowed," (Doc. 16, ¶ 102), "[n]either Rule 3001(c)(2)(D)(i) nor (ii) include disallowance of the claim as a permissible remedy." *In re Reynolds*, 470 B.R. 138, 144 (Bankr. D. Colo. 2012). In addition to the conspicuous absence of claim-disallowance as a specified remedy under Rule 3001(c)(2)(D), courts unanimously have held that it also is not available as

"other appropriate relief" under Rule 3001(c)(2)(D)(ii). "Under customary rules of construction, 'other appropriate relief' is construed to allow a remedy of the same character as the specifically enumerated example of 'reasonable expenses and attorney's fees caused by the failure.'" *In re Casamatta*, 2017 WL 3841739, at *16 (citing *In re Reynolds,* 470 B.R. 138, 144 (Bankr. D. Colo. 2012)). "For that reason, courts have refused to grant relief outside that category." *Id.*

56.     As other courts have rightly reasoned, "[c]laim disallowance falls far outside the ambit of any permissible interpretation of the scope of a court's discretion under Rule 3001(c)(2)(D)(ii)." *In re Reynolds*, 470 B.R. at 144. Indeed, "[i]t is well-established that 'other appropriate relief' does not include the disallowance of a claim." *Casamata*, 2017 WL 3841739, at *16. "The Advisory Committee Note could not be more clear: 'Failure to provide the required information does not itself constitute a ground for disallowance of a claim.'" *Id.* (quoting Fed. R. Bankr. P. 3001 Advisory Committee Note (2011)).

57.     The *Maddux* court reached the same conclusion. *See* (Doc. 16, Ex. 5, at 15) ("The Court will not disallow the Midland Claims under § 105 of the Bankruptcy Code. *See In re Goeller,* No. 12-17123-RGM, 2013 WL 3064594, at *3 (Bankr. E.D. Va. June 19, 2013) ("Mere non-compliance with the informational requirements of Rule 3001 such as attachment of documentation or providing specific information should not be, in and of itself, grounds to disallow the claim.")).[14]

---

[14] Aside from the specific sanctions available under Rule 3001(c)(2)(D), the law is clear that the "appropriate remedy" for non-compliance with Rule 3001 is simply to determine that a non-compliant proof of claim lacks prima facie validity under Rule 3001(f). *See Casamatta,* 2017 WL 3841739, at *8 ("The courts have consistently held that the proper remedy for failure to comply is that the claim loses its prima facie validity.") (citing, among other cases, *In re Varona,* 388 B.R. 705 (Bankr. E.D. Va. 2008)); *see also In re Sears*, 863 F.3d 973, 979 (8th Cir. 2017) ("But a failure to itemize interest in accordance with the rules means only that the proof of claim is not prima facie evidence of the claim's validity and amount.").

58.     If Midland's claims are not disallowed, Plaintiffs alternatively request that the Court enter an injunction requiring Midland "to comply with Rule 3001." (Doc. 16, ¶ 102). But like claims-disallowance, injunctive relief is neither specifically available as a sanction under Rule 3001(c)(2)(D), nor is it "a remedy of the same character as the specifically enumerated example of 'reasonable expenses and attorney's fees caused by the failure.'" *Casamatta*, 2017 WL 3841739, at *16. Tacitly recognizing as much, Plaintiffs previously have insisted that injunctive relief nevertheless is available under § 105. *See* (Doc. 6, at 23–27). Yet, "[t]he Supreme Court has made it clear that bankruptcy courts cannot rely upon equitable powers to reach results not consistent with the provisions of the Code." *In re TMST, Inc.*, 518 B.R. 329, 357 (Bankr. D. Md. 2014), *vacated in part on other grounds*, No. 09-17787-DK, 2014 WL 6390312 (Bankr. D. Md. Nov. 14, 2014) (citing *Law v. Siegel*, – U.S. –, 134 S. Ct. 1188 (2014)). As other courts have recognized, "[g]iven that section 501(a) authorizes every creditor holding a claim to file a proof of claim, even if that claim is later disallowed under section 502(b), section 105(a) does not state a cause of action to sanction such a filing." *In re Keeler*, 440 B.R. 354, 366–67 (Bankr. E.D. Pa. 2009) ("To the extent that section 105(a)—the bankruptcy version of the All Writs Act—can be applicable to entities that file a proof of claim, it cannot be applied in a manner that conflicts with a specific Code provision. Given that section 501(a) authorizes every creditor holding a claim to file a proof of claim, even if that claim is later disallowed under section 502(b), section 105(a) does not state a cause of action to sanction such a filing.").

59.     In fact, while "[o]ne of the primary functions of § 105(a) is to prevent an abuse of process," other courts have observed that "[i]t would be highly difficult, perhaps impossible, to consistently abuse the claims process in a Chapter 13 bankruptcy given the scrutiny of the claims process by the debtor, the Chapter 13 Trustee and the bankruptcy court." *In re Robinson*, No. 15-

30223, 2016 WL 4069395, at *11 (Bankr. W.D. La. July 28, 2016); *see also id.* ("In addition, the claim process, including claims disallowance in Chapter 13 cases, cannot be an abuse of process because the process itself is highly regulated and court controlled. One must only read the Bankruptcy Code and Rules to reach such a conclusion . . . .").

60.     Lastly, injunctive relief under § 105 would be a particularly inappropriate remedy in this case because "[a] court's authority under § 105 only allows a court to impose civil sanctions which are compensatory or designed to coerce compliance." *Casamatta*, 2017 WL 3841739, at *9. As noted above, however, Plaintiffs have expressly disclaimed any request for compensatory money damages. And in light of Midland's filing of the Amended POCs, there is no basis for the Court to enter an injunction under § 105 to "coerce compliance." There can be no serious dispute that the Amended POCs fully comply with Rule 3001. Still, Plaintiffs insist that "as to Plaintiffs **and the Class Members they seek to represent**," the Court should enjoin Midland to "file amended Proofs of Claim that itemize interest separate from fees that are included in the claim." (Doc. 16, ¶ 104) (emphasis added).

61.     In other words, Plaintiffs "attempt to obtain sanctions in this case based on alleged wrongs in other unrelated bankruptcy cases." *In re Ruth*, 473 B.R. 152, 166 (Bankr. S.D. Tex. 2012). "This, they cannot do." *Id.* Like the debtors in *In re Ruth*, the Plaintiffs here "lack standing to seek sanctions based on allegedly inadequate proofs of claim filed in other debtors' bankruptcy cases." *Id.* Indeed, even taking as true the allegation that "[o]ther than the named Plaintiffs in this case, Defendants have not filed such Amended Proofs of Claim in other cases pending in the Western District of Virginia where Defendants first filed a Proof of Claim form that falsely stated that no interest or fees were included," (Doc. 16, ¶ 57), Plaintiffs still "do not have standing to argue a pattern of behavior by [Midland] in cases other than their own." *Id.* at

165–66; *id.* at 166 ("In the context of standing, there is a 'general prohibition on a litigant's raising another person's legal rights.'") (quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984)). "Without standing, this Court does not have jurisdiction to determine this issue; and accordingly, this Court [should] refuse[] to impose sanctions" based on Midland's alleged conduct in cases other than this one. *Id.*

> 2.   <u>Plaintiffs' requested injunction is nothing more than an impermissibly vague "obey the law" injunction.</u>

62.   As noted above, if Midland's claims are not disallowed (a remedy which is unavailable as a matter of law for the reasons stated above), Plaintiffs alternatively request that the Court enter an injunction requiring Midland "to comply with Rule 3001." (Doc. 16, ¶ 102). In addition to also being unavailable as a matter of law, an order enjoining Midland "to comply with Rule 3001" also would constitute an impermissibly vague "obey the law" injunction.

*63.*   All preliminary or permanent injunction orders must comport with Federal Rule of Civil Procedure 65. So, every order granting an injunction must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Rule 65's specificity requirement is "designed to protect those who are enjoined by informing them of what they are called upon to do or refrain from doing in order to comply with the injunction or restraining order." 11A Wright, Miller & Mary Kay Kane, Federal Practice And Procedure: Civil 2d § 2955 (3d ed.). "[O]rders simply requiring defendants to 'obey the law' uniformly are found to violate the specificity requirement." *Id.*

64.   Plaintiffs' requested injunctive relief would violate Rule 65's specificity requirement. Requiring Midland to "comply with Rule 3001" is the archetypical and unenforceable "obey the law" injunction. *See Int'l Longshoremen's Ass'n, Local 1291 v.*

*Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 69 (1967) (reversing decree that ordered party "to comply with [an arbitration award]").

65.     Plaintiffs also specifically request that the Court require that "Defendants file amended Proofs of Claim that itemize interest separate from fees that are included in the claim, and Defendants demonstrate that, if asked for the writing on which the claim is based, Defendants will provide the agreement between original creditor and the debtor and the contract documents showing that Synchrony Bank properly assigned the rights in that agreement to Defendants." (Doc. 16, ¶ 104). But Plaintiffs' more specific requests cannot save the requested injunction. "[A]n injunction based upon an erroneous conclusion of law is invalid." *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (citing *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 n.21 (11th Cir. 1983) ("Obviously, where a preliminary injunction has been *granted* based on an error of law even as to only *one* of the four prerequisites, the injunction must fall because the movant has not met his burden of persuasion on all four counts.")). Here, Plaintiffs cannot show that they are likely to succeed on the merits of their claim to the extent they argue that Rule 3001 requires a claimant to "provide the agreement between original creditor and the debtor and the contract documents showing that Synchrony Bank properly assigned the rights in that agreement to Defendants." For the reasons stated above, Rule 3001 imposes no such requirements. *See supra*, at I.B.3.

3.     <u>Plaintiffs' request for declaratory and injunctive relief is moot in light of the Amended POCs, and they lack standing to request injunctive relief based on proofs of claim filed in other bankruptcy cases.</u>

66.     In any event, even if Plaintiffs otherwise could request injunctive relief pursuant to some cognizable claim for alleged violations of Rule 3001, Plaintiffs' request for declaratory

and injunctive relief should be dismissed as moot because the Amended POCs comply with both aspects of Rule 3001 that Plaintiffs purport to challenge in Count 2.

67.     There can be no dispute that the Amended POCs are in a form that has been approved by at least two bankruptcy judges in this circuit.[15] First, as Plaintiffs acknowledge in the Amended Complaint, the box on the official proof of claim form indicating whether the claim includes interest or other charges is checked "yes" for each amended proof of claim, which Plaintiffs contend is required for Midland to have "substantially complied" with Rule 3001(a). *See* (Doc. 16, ¶ 53). Second, the "Account Summary" attached to each Amended POC includes a "Claim Breakdown," which provides the itemization of finance charges that Plaintiffs insist is required by Rule 3001(c)(2). Therefore, regardless of whether Midland's original proofs of claim substantially complied with Rule 3001(a) or Rule 3001(c)(2)(A), the Amended POCs definitely do, and so Count 2 should be dismissed as moot.

68.     To the extent Plaintiffs insist that they are entitled to injunctive relief, notwithstanding Midland's amendment of the POCs in conformity with Rule 3001, they apparently confuse the concepts of injunctive and declaratory relief, which protect against future harm, with liability and damages, which compensate individuals who were harmed in the past. To obtain injunctive relief, Plaintiffs must show "a substantial likelihood that [they] will suffer injury **in the future**." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346

---

[15] *See In re Maddux*, No. 15-33574, Order Granting Mot. of Midland Funding, LLC, to Amend, Clarify, and/or Make Add'l Findings, Doc. 153, at 3–4 ¶ C (Bankr. E.D. Va. 2017) ("The Court indicated that an appropriate itemization that satisfies Bankruptcy Rule 3001(c)(2)(A) should be presented by providing a claim breakdown similar to the form of proof of claim No. 12-1 filed by Midland in the case of In re Britt, Case No. 16-32732 . . . . Acceptable forms of such itemizations are attached hereto as Exhibit A, Exhibit B, and Exhibit C."); *In re Jowers*, No. 16-80101, Order Supplementing Judgment, Doc. 63 at 2 (Bankr. D.S.C. 2017) ("Accordingly, the Court's May 24, 2017 order is supplemented to provide that the breakdown proposed by Defendants in their motion is sufficient, for the purposes of Ms. Jowers' bankruptcy case, to comply with Federal Rule of Bankruptcy Procedure 3001(c)(2)(A).")

(11th Cir. 1999) (emphasis added). Plaintiffs have made no allegations that they are in any danger of future harm. Rather, they simply recast their damages claims as injunctive claims, making conclusory allegations that they "will continue to be subject to Defendants' conduct." (Doc. 16, ¶ 91). Plaintiffs do not make any plausible allegations in support of their claim that they "will continue to be subject to Defendants' conduct," however, particularly given that Midland has filed the Amended POCs which comply with Rule 3001 in all respects. Nor may they assert any claim for injunctive relief based on Midland's alleged past failure to comply with Rule 3001. It is well-settled that "[p]ast exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985).

69.     Likewise, a demand for declaratory relief "requires an assessment . . . of whether the plaintiff has sufficiently shown a real and immediate threat of future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). Specifically, "the purpose of the Declaratory Judgment Act is to clarify legal relations at issue and to settle controversies ***prior to a legal breach of duty***." *In Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009) (emphasis added) (citing *Public Affairs Assocs. V. Rickover*, 369 U.S. 111 (1962)). Because Midland already has filed the Amended POCs, and because Plaintiffs have failed to establish any risk of future harm, they have not alleged any justiciable case or controversy "prior to" any alleged breach of duty by Midland, and so their request for declaratory relief also is moot. *See In re Richter*, 478 B.R. 30, 38 (Bankr. D. Colo. 2012) (taking judicial notice of debt buyer's amendment of claim and accepting argument that "[t]he amendments made to the proof of claim render all of the debtor's objections to the claim moot").

**C.    Alternatively, Count 2 should be dismissed without prejudice to Plaintiffs' opportunity to assert a claim for sanctions under Rule 3001(c)(2)(D) as a contested matter.**

70.    If the Court does not dismiss Count 2 with prejudice for the reasons stated above, Count 2 alternatively should be dismissed without prejudice to Plaintiffs' opportunity to request sanctions under Rule 3001(c)(2)(D) in a contested matter.

71.    The Court previously dismissed Count 2 without prejudice in part because the Complaint did not provide "sufficient notice of the extent of the 'attorney's fees' 'caused by the [alleged] failure' to comply with Rule 3001 or 'litigation costs.'" (Doc. 13, at 16). Plaintiffs have attempted to remedy that failure by including additional allegations in the Amended Complaint in support of their request for attorneys' fees.

72.    As the Court noted in the MTD Opinion, however, to the extent attorneys' fees may be awarded as "other appropriate relief" under Rule 3001(c)(2)(D)(ii), they are available only to the extent such fees were "'caused by the [alleged] failure' to comply with Rule 3001." (*Id.*) "The award of money damages requires that the court find a causation nexus between the creditor's failure to adequately document its claim and the fees incurred." *Casamatta*, 2017 WL 3841739, at *17 (citing *In re Dunlap*, 2013 WL 5497047 *2 (Bankr. D. Colo. Oct. 3, 2013)). *See id.* ("Resurgent correctly observes that the UST has failed to allege that any fees or expenses were incurred by debtors or trustees in their determination of whether to object to Resurgent's proofs of claims, other than those typically incurred in their review process, in the thousands of cases for which the UST seeks relief. Therefore, those fees were not caused by the failure to comply and recovery of those fees is not authorized by the rule.").

73.    Yet, the attorneys' fees request in Plaintiffs' Amended Complaint goes well beyond any fees or litigation costs reasonably incurred *because of* Midland's alleged failure to

specify the interest previously charged by Synchrony. For example, Plaintiffs' counsel request that the Court award attorneys' fees for "their time incurred in the case for the identification, investigation, and prosecution of the Rule 3001 claim, which will necessarily include the time which will be spent *in the future* responding to Defendants' arguments and obtaining the appropriate remedy." (Doc. 16, ¶ 101) (emphasis added). But that is not the remedy that the Rule provides. Plaintiffs already achieved the only obtainable result that may be arguably attributed to Midland's alleged violations of Rule 3001: the amendment of the POCs in conformity with the requirements of the Rule. As such, Plaintiffs' request for attorneys' fees should be cut off as of the date that Midland amended each of the POCs at issue—July 14, 2017. Any fees incurred after that date cannot be said to have been reasonably incurred *because of* Midland's alleged violations of Rule 3001, as opposed to Plaintiffs' continued pursuit of their FDCPA claims based on Midland's filing of the original POCs.

74.     Plaintiffs' counsel seek a windfall akin to the fee award in *Maddux*, not an award of attorneys' fees under Rule 3001(c)(2)(D)(ii) for fees and expenses incurred *because of* Midland's alleged violations of Rule 3001. *See In re Maddux*, No. 15-33574, Doc. 151 (Bankr. E.D. Va. Jan. 27, 2017) (awarding debtors' counsel attorneys' fees in the amount of $219,986.00). Midland should not be put to the expense of allowing Plaintiffs' counsel to continue to run up fees "*in the future*" in this adversary proceeding, considering that Midland promptly amended the POCs at issue to address Plaintiffs' alleged violations of Rule 3001. Instead, to the extent Count 2 is not dismissed with prejudice, it should be dismissed without prejudice to Plaintiffs' opportunity to seek attorneys' fees actually attributable to Midland's alleged violations of Rule 3001 in a contested matter.

## CONCLUSION

**WHEREFORE**, Defendants Midland Funding, LLC and Midland Credit Management, Inc. request that the Court enter an Order that dismisses with prejudice the complaints in the above-captioned adversary proceedings, and that Plaintiffs receive no award for damages, costs, or fees, of any sort, in connection with the complaints; or, Defendants alternatively request that the Court enter an order compelling Plaintiffs to submit their surviving claim(s) in arbitration on an individual basis; and that the Court award to Midland Funding, LLC and Midland Credit Management, Inc. any other relief that is proper.

DATED: February 1, 2018        MIDLAND FUNDING, LLC, AND
                                MIDLAND CREDIT MANAGEMENT, INC.

                                /s/ Timothy G. Moore
                                Timothy G. Moore, Esq. (VSB No. 41730)
                                James K. Donaldson, Esq. (VSB No. 80307)
                                SPOTTS FAIN PC
                                411 East Franklin Street, Suite 600
                                Richmond, Virginia 23219
                                Telephone:    (804) 697-2000
                                Facsimile:    (804) 697-2100

                                *Counsel for Midland Funding, LLC, and Midland Credit Management, Inc.*

39

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2018, I caused to be served a true and accurate copy of the foregoing, via CM/ECF, U.S. Mail, and/or via e-mail on the following parties, as well as all other parties that receive CM/ECF notification:

Beth C. Driver, Esquire
Hannah White Hutman, Esquire
Grant D. Penrod , Esquire
Hoover Penrod PLC
342 S. Main Street
Harrisonburg, VA 22801
*Counsel for Karen M. Thomas, Gary Lyne Brooks, Jr., and Mary Margaret Gillespie-Brooks*

Timothy E. Cupp , Esquire
Shelley Cupp Schulte, PC
1951 Evelyn Byrd Ave., Ste. D
P O Box 589
Harrisonburg, VA 22803
*Counsel for Karen M. Thomas, Gary Lyne Brooks, Jr., and Mary Margaret Gillespie-Brooks*

Herbert L Beskin, Esquire
PO Box 2103
Charlottesville, VA 22902
*Trustee for Chapter 13 Bankruptcy*

Thomas D. Domonoske, Esquire
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd
Suite 1A
Newport News, VA 23601
*Counsel for Karen M. Thomas, Gary Lyne Brooks, Jr., and Mary Margaret Gillespie-Brooks*

Office of the United States Trustee
210 First Street, Suite 505
Roanoke, VA 24011

/s/ Timothy G. Moore

40