**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **Case No. 16-50612** |
| | : | |
| **KAREN M. THOMAS** | : | **Chapter 13** |
| Debtor(s) | : | |
| | : | **Judge Rebecca B. Connelly** |
| | : | |

_____

| | | |
|---|---|---|
| **IN RE:** | : | **Case No. 16-50396** |
| | : | |
| **GARY L. BROOKS, JR.** | : | **Chapter 13** |
| **MARY M. GILESPIE-BROOKS** | : | |
| Debtor(s) | : | **Judge Rebecca B. Connelly** |
| | : | |

_____

| | | |
|---|---|---|
| **KAREN M. THOMAS,** | : | **ADV. PRO. NOS.** |
| and | : | |
| **GARY L. BROOKS, JR.  and** | : | **17-05010**[1] |
| **MARY M. GILESPIE-BROOKS,** | : | |
| *individually and on behalf of a class* | : | |
| *of similarly situated individuals,* | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MIDLAND FUNDING LLC, and** | : | |
| **MIDLAND CREDIT** | : | |
| **MANAGEMENT, INC.,** | : | |
| Defendants. | : | |
| | : | |

_____

[1] Pursuant to the Order for Consolidation of Adversary Proceedings, entered herein on September 28, 2017 [Doc #10], Adversary Case Nos. 17-50510 and 17-05009 have been consolidated to proceed in a single adversary proceeding 17-05010.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS
CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT**
_____

## I.

## <u>INTRODUCTION</u>

1.      This is an action for actual damages, statutory damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and Federal Rule of Bankruptcy Procedure (each a "Rule" collectively "Rules") 3001.  This action was filed on June 14, 2017 (the "Complaint") and Plaintiffs asked to have each claim certified as a class claim brought on behalf of similarly situated people.

2.      Defendants filed their first Motion to Dismiss and Memorandum in Support ("Defendants' First Motion" or "Motion to Dismiss")[Doc. 4] seeking to dismiss Plaintiff's claims. This First Motion to Dismiss asked the Court to rule in Defendant's favor on the following six legal issues:

-that a false assertion regarding no interest and fees was not a material violation of the FDCPA because it would have no effect on the any decision making;

-that a false sworn declaration by a Midland representative regarding a reasonable belief in the accuracy of the information is not actionable under the FDCPA;

-that Plaintiff's § 1692f claim failed as a matter of law because the amended claims showed that a "charge off statement" from the original creditor would be provided by Midland when asked for the writing underlying the claim which complied with Rule 3001(c)(3)(B);

-that Plaintiff's § 1692f claim failed as a matter of law because the original Proofs of Claim did include an itemization pursuant to Midland's normal process, which even it was wrong, was not actionable as an unfair or unconscionable practice;

-that the claim for a violation of Rule 3001 failed because no claim is allowed to be stated for such a violation; and

-that the claim for a violation of Rule 3001 failed because an amended claim was filed that allegedly did comply.

3.      Defendant's First Motion to Dismiss was fully briefed and on September 27, 2017, proceeded to oral argument.   On November 30, 2017, this Court decided the issues presented by Defendants and issued its Memorandum Opinion. (Doc. 13).

4.      Regarding the FDCPA claims, the Court specifically found that Plaintiffs had properly plead a material misrepresentation in violation of § 1692e.  The Court also specifically ruled that, accepting the allegations of the Complaint as true, the Complaint "does allege violations of Rule 3001, a practice knowingly violating the Rule, and practice of hindering a debtor's ability to readily obtain information regarding the claim." (Memorandum Opinion, Doc. 13, pg 12).  The Court then specifically found that the Complaint also properly plead a violation of § 1692f of the FDCPA.

5.      Regarding the Rule 3001 claim, the Court held that despite the Complaint pleading a violation of Rule 3001, additional facts were necessary to allege the relief requested and the basis for that relief.  The Court overruled Midland's request that no leave to amend be granted and allowed Plaintiffs leave to amend the Complaint to set forth in more particular the relief requested and the basis for that relief.   Plaintiffs then filed an Amended Complaint pursuant to the Court's Order.

6.      After asking for and receiving two continuances, on February 1, 2018, Defendants filed a Motion to Dismiss the Amended Complaint (Doc. 20) and raised many of the same arguments already decided by this Court.

7.      Defendants' Motion should be denied because Plaintiff's Amended Complaint properly alleges Midland's violations of the FDCPA and Rule 3001.

## II.

## STANDARD FOR MOTION TO DISMISS

8.      The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted).  A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

9.      A Federal Rule of Civil Procedure ("Federal Rule") 12(b)(6) motion "challenges the legal sufficiency of a complaint considered with the assumption that the facts are alleged to be true."  "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 192-93 (4th Cir.

2009).  The Federal Rule requires that the facts alleged by the Plaintiffs are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones*, No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). Thus, Federal Rule 12(b)(6) tests the sufficiency of the Complaint without resolving disputes of fact, the merits of claims, or the applicability of defenses. *Verrett v. Gen. Motors Auto. Grp.*, No. 3:15CV416-HEH, 2016 WL 4500865, at *1 (E.D. Va. Aug. 26, 2016).

10. Federal Rule 8 demands only that a complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). This standard exists simply to provide the defendant with fair notice of what plaintiff's "claim is and the grounds upon which it rests." *Verrett*, 2016 WL 4500865, at *1 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The facts a plaintiff pleads must show a right to relief that is more than merely speculative; the plaintiff must plead a plausible claim for relief using facts that allow the court to reasonably infer that the defendant is liable for the alleged wrongdoing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts have described Federal Rule 8's standard as "low" and "not onerous"—even after *Twombly* and *Iqbal*. *Alexander v. District Court of Md. for Charles Cty.*, No. DKC 2007-1647, 2008 WL 6124449, at *6 (D. Md. Mar. 20, 2008); *Ortiz-Diaz v. United States Dept. of Housing & Urban Dev.*, 961 F. Supp. 2d 104, 108 (D.D.C. 2013); *Claver v. Coldwell Banker Residential Brokerage Co.*, No. 08cv817–L(AJB), 2009 WL 801869, at *2 (S.D. Cal. Mar. 25, 2009).

### III.

### THE COMPLAINT ALLEGES THAT MIDLAND FILED IMPROPER PROOFS OF CLAIM FOR AMOUNTS GREATER THAN THE SCHEDULED DEBT.

11.     As set forth in the Amended Complaint, each of the Plaintiffs filed for relief under Chapter 13 of Title 11 U.S. Code in the Bankruptcy Court for the Western District of Virginia. Each of the Plaintiffs listed one or more debts to Synchrony Bank in their schedules filed as part of their bankruptcy.  After Synchrony Bank received notice of each of the Plaintiffs' bankruptcy filings, it transferred data about those debts to Midland pursuant to the terms of a written agreement.  For each of the debts that Plaintiffs had listed as due to Synchrony, Midland filed or caused to be filed proofs of claim that are attached as Exhibits to the Complaint (collectively the "Proofs of Claim" each a "Proof of Claim").

12.     Paragraph 2 of the Amended Complaint asserts that the Plaintiffs are proceeding under "28 U.S.C. §§ 151, 157(b), and 1334, and 11 U.S.C. §§ 105 and 502, and Federal Rules of Bankruptcy Procedure 3001, 3007, and 7023."   Plaintiffs also assert that this is a core proceeding, but to the extent it is not, they consent to entry of final judgment by this Court.

13.     The Amended Complaint specifies that Ms. Thomas scheduled a debt of $637.82 as owed to Synchrony Bank, and Midland filed a Proof of Claim for $689.34. Regarding Mr. Brooks and Ms. Gillespie-Brooks, it specifies they scheduled a debt of $3,646.44 as owed to Synchrony Bank and also a debt of $616.26 as owed to Synchrony Bank, and Midland filed a Proof of Claim for $3,755.75 and $662.85, respectively.  As shown by the Exhibits to the Amended Complaint, for each claim, Midland asserted under oath that the claim amount did not include interest or other charges.  Midland does not have a reasonable belief that the information in each Proof of Claim is true.

14.     The Amended Complaint further alleges that, as part of a normal procedure, Synchrony Bank provided Midland information about such claims which show that interest is

regularly included in the claim amount.  Then, as set forth in the Amended Complaint, even though Midland knows the claim includes interest, it directs employees to file proofs of claim that falsely assert zero interest is included in the claim amount.  The Amended Complaint similarly alleges that Midland is informed that fees are regularly included in the claim amount, and that despite that knowledge, directs employees to file such proofs of claim which assert that zero fees are included.

15.      The Amended Complaint further alleges that, in September 2016, Midland was previously notified that its practice of filing proofs of claim that falsely assert that zero interest and zero fees are included in the claim amount is unlawful in the case of *In re Rachel R. Maddux*, Case No. 15-33574-KRH, in the U.S. Bankruptcy Court for the Eastern District of Virginia ("*In re Maddux*").  It also alleges that despite that ruling, Midland continued to file false claims in the Western District of Virginia.

16.      The Amended Complaint further alleges that, as part of the contract with Synchrony Bank, Midland knows it should to be ready to comply with a request from any interested party, whether a trustee, creditor, or debtor, for a copy of the writing underlying the claim.  The Amended Complaint alleges that Midland's normal practice, when asked for such documentation, is not to provide the contract document setting forth what state law applies to the claim and what the agreed interest and fees were between the debtor and Synchrony Bank.  It also alleges, that as part of its contract with Synchrony Bank, Midland is not prepared to provide the writing underlying the Synchrony claims, as the term "the writing" is used in Rule 3001(c)(1).

17.      The Amended Complaint also attaches the Amended Proofs of Claim that Midland filed in each case.  These Amended Proofs of Claim reveal that Midland knew that

interest and fees were included in the claims when Midland prepared the Proofs of Claim that state no interest or fees were included.  These Amended Proofs of Claim do not separately itemize the interest from the fees.  Instead, Midland has grouped both types of charges under the heading "Finance Charges."  The Amended Complaint asserts that Midland has put charges that are not considered "Finance Charges" by the Truth in Lending Act under this heading.

18.      The Amended Complaint alleges that the Amended Proofs of Claim include the exhibits that are Midland's response to Plaintiffs' written requests for the documents underlying each claim.[2]  Pursuant to Midland's normal practice, these documents do not include the written contract between Synchrony Bank and the debtors.  The Amended Complaint alleges that Midland's normal practice is never to provide these contracts even though it successfully argued to the United States Supreme Court that because it did provide these contracts on request, trustees and other interested parties could use that information to identify and raise objections to claims.  The Amended Complaint further alleges that Midland has already argued in this Court that Rule 3001(c) does not require it to provide the underlying credit contract in response to a request for the writings underlying the claim.

19.      The Amended Complaint further alleges that the documents that were provided by Midland do not show any proof that Midland bought any rights to the debts in issue.  Instead, each document set includes a document that was intentionally prepared at first glance to be a

---

[2] Regarding the Thomas Amended Claim 8-2, Plaintiffs' counsel did not realize that Midland filed its response to the request for a writing as an Amended Proof of Claim because counsel expected the documents to simply be mailed to Hoover Penrod, PLC  in response to its request and outside of the claims filing process.  Counsel apologizes for this oversight, and but for this oversight, both the original Complaint and the Amended Complaint would have addressed these documents.  These documents fully support Plaintiffs' position that fees and interest are included in the claim, and that Defendants do not provide the underlying credit card agreement when asked for the documents underlying the claim.

copy of a statement sent to the debtor, but is actually a document prepared after the debtor's

bankruptcy filing from information Synchrony Bank shared with Midland.  Although this

document itemizes the fees and interest charged on the account in the past year, the Amended

Complaint alleges that without the underlying credit card agreement an interested party cannot

determine whether those fees and interest were in a lawful and contracted amount.

20.     The Amended Complaint alleges that Midland knew or reasonably should have

known when it filed the proofs of claim that they contained false statements of material fact, and

that Midland knew or reasonably should have known that it did not possess sufficient data to

comply with the requirements of 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and the

Rules.

21.     The Amended Complaint asks that Midland be required to file Proofs of Claim

that comply with Rule 3001 by separately itemizing the fees and the interest included in the

claims.  Plaintiffs further ask that Midland demonstrate that it will, when asked for the writing on

which such claims are based, provide the contract documents showing the terms of debtors'

agreement with Synchrony and the contract documents showing that Synchrony Bank assigned

rights in that agreement to Midland.

### IV.

### PLAINTIFFS' AMENDED COMPLAINT PROPERLY ALLEGES THAT MIDLAND VIOLATED THE FDCPA.

22.      The first claim in this case is brought pursuant to the FDCPA, a remedial statute,

the purpose of which is to "eliminate abusive debt collection practices by debt collectors, to

insure that those debt collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect consumers against

debt collection abuses." 15 U.S.C. § 1692e.  The provisions of the FDCPA at issue in this case, sections 1692e and 1692f, were passed to prohibit debt collectors from specific improper conduct when seeking to collect alleged debts.  When the motion to dismiss is an attack on a consumer's FDCPA claims, the court should resolve any ambiguities in favor of the consumer. *See  Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (the FDCPA "should be construed liberally in favor of the consumer"); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002), we construe its language broadly, so as to effect its purpose.").  As set forth below, the Amended Complaint sufficiently alleges violations of both sections 1692e and 1692f.

## A. As a consumer protection statute, the FDCPA prohibits both misleading or deceptive tactics, and also unfair or unconscionable tactics.

23.     "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *Yarney v. Ocwen Loan Serv*., LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (Moon, J.) (*citing United States v. Nat'l Fin. Servs., Inc*., 98 F.3d 131, 135 (4th Cir. 1996)).  The FDCPA prohibits "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e-1692f.  To state a claim for a violation of the FDCPA, a plaintiff must allege: (1) the plaintiff is a "consumer" within the meaning of the statute, (2) the defendant collecting the debt is a "debt collector" within the meaning of the statute, and (3) the defendant has violated a provision of the FDCPA by act or omission. *Creighton v. Emporia Credit Serv. Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997).  For an FDCPA claim, no plaintiff is required to satisfy the more rigorous pleading standard for fraud as Rule 9(b) otherwise requires. *See*, *e.g.*, *Robinson v. Managed Accounts Receivables Corp.*, 654 F.

Supp. 2d 1051, 1058 (C.D. Cal. 2009) (explaining that "[t]he FDCPA is not such a lengthy or complex statute as to render Defendants unable 'to prepare an adequate defense'" without more specific pleading detail").

24.      The FDCPA's principal definition of a "debt collector" states that: "The term "debt collector" means any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6). Defendants do not dispute that they are debt collectors under the statute that were seeking to collect a debt.  The civil liability section of the FDCPA then provides for the private relief that Plaintiffs now seek, stating that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person". 15 U.S.C. § 1692k(a). Violations of the FDCPA subject the defendant to an award of actual damages, statutory damages, and attorney's fees and costs. 15 U.S.C. § 1692k(a).

25.      Section 1692e of the FDCPA prohibits any false, deceptive, or misleading representation in an attempt to collect a debt.  The question is not whether the misrepresentation or falsehood misleads a particular plaintiff or consumer, but instead whether it has the capacity to mislead. *See e.g. Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 923-24 (E.D. Va. 2006); *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 757-58 (E.D. Va. 2010); *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011).

26.      Additionally, the FDCPA prohibits unfair and unconscionable business practices.  Section 1692f of the FDCPA states a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  It provides a non-exhaustive list of examples and the "statute does not say" what is unfair or unconscionable. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007).  Where a complaint

11

alleges conduct that does not fit under other claims that have been successfully plead, a claim under 1692f is proper. *See Vanhuss v. Kohn Law Firm*, 127 F. Supp.3d 980, 990 (W.D. Wis. 2015).

**B.    Accepting the allegations of the Amended Complaint as true, it adequately alleges both a Sec. 1692e claim and a Sec. 1692f claim.**

27.    This Court already found that the allegations regarding the original Proofs of Claim properly set forth a violation of both Section 1692e and 1692f of the FDCPA.  The Court set forth a detailed analysis of each section and applied that section to the allegations regarding the original Proofs of Claim.  Midland now claims that because it filed Amended Proofs of Claim that purportedly comply with Rule 3001, no FDCPA claim can be stated about its original Proofs of Claim.  Midland's position is both substantively and procedurally incorrect.  As more fully set forth below, nothing in the Amended Proofs of Claim moots the FDCPA claims based on the original Proofs of Claim.

28.    First, the Amended Proofs of Claim do not comply with Rule 3001(c) because they do not separately itemize interest from fees.  Rule 3001(c) requires that interest be separately itemized from fees.  In Paragraph 15 of their Motion to Dismiss, Midland argues that each of the Amended Proofs of Claims "discloses the total amount of principal and interest charges at the time the accounts were charged-off by Synchrony." (Doc. 20).  Midland asserts the same in Paragraph 17 where it wrote "each claim consists only of the principal and interest that made up the outstanding balance" and then again in Paragraph 18 where it asserts each Amended Proof of Claim "provides an itemization of the principal and interest." *Id.*  This assertion is not true because Midland has included both interest and fees under the heading "Finance Charges." On the example referenced by Midland, the document that was deceptively created by someone to appear to be a periodic statement sent to a customer (Doc. 16, Ex 7, at 5), also discloses that in

2016 total fees of $222.00 were charged and total interest of $102.40.  Midland never explains

how much of the $434.50 is interest and how much fees.  Consequently, Midland's Amended

Proofs of Claim violates Rule 3001(c).

29.      Additionally, Midland's use of the word "Finance Charges" as the heading would

lead many people to falsely conclude that items such a late fees or over-the-limit fees are not

included in it.  Pursuant to 12 C.F.R. § 1026.4(c)(2) of the Truth in Lending Act, such items are

specifically excluded from the definition of "Finance Charges" for open-end credit.  In this way,

the assertion that $434.50 of "Finance Charges" are included in the claim amount is an assertion

that the $434.50 does not include late fees or the over-the-limit fees.  This assertion is

demonstrably false by the other documents which Midland provided.  The periodic statement

with a closing date of February 7, 2016, shows that as of the last payment on the account, the

"Total Fees Charged in 2016" were $74.00.  Therefore, by the end of June 2016 when the "Total

Fees Charged in 2016" were $222.00, with no further payments made, at least $118.00 of fees

are improperly lumped with the interest.

30.      Even if Midland were to file new Amended Proofs of Claim that properly itemize

the interest and fees embedded in the claim amounts, such a filing does not moot Plaintiffs'

FDCPA claims from the original false filing.  The Amended Proofs of Claim conclusively

demonstrate that Midland's original Proofs of Claim falsely state that no interest or fees are

included in the claim amount.  For instance, in the example above, Midland now has shown that

at least 63% of the claim amount of $689.34 was interest and fees.  Given that Midland would

not provide the underlying credit contract agreement when requested, whether this large amount

of interest and fees was authorized by the credit contract could not be determined from the

documents provided.  As already determined by this Court, the allegations regarding the original

13

Proofs of Claim state a claim for relief under the FDCPA, and that Midland later might file truthful and legally compliant documents is not a defense to the violation that occurred. The FDCPA statutory scheme provides a debt collector with a defense in 15 U.S.C. § 1692(c) but subsequent compliant debt collection efforts is not a defense provided by the statute. Midland has no basis to claim that future compliance with the FDCPA moots past non-compliance.

31.     Midland fundamentally misunderstands that the Amended Complaint raises the exact same FDCPA claims as the original Complaint. Although Midland asserts that the Plaintiffs' FDCPA claims are based on the Amended Proof of Claims (see e.g. Para 19 of Defendant's Motion to Dismiss, Doc. 20), Plaintiffs FDCPA claims are based on the original Proofs of Claim that falsely state no interest or fees are included in the claim, and the business practice at that time. The class that Plaintiffs seek to represent are those debtors against whom Midland filed a Proof of Claim that stated "no interest, fees, or other charges are included in the claim amount." In this way, the FDCPA claims are not rooted in the Amended Proofs of Claim even though those Amended Proofs of Claim are powerful evidence regarding the violations of the FDCPA that occurred with the original Proofs of Claim. Although Midlands wants to use those Amended Proofs of Claim as a defense, that futile defense does not change the basis of Plaintiffs' claims.

32.     As shown by the Amended Proofs of Claims, the contents of the documents that Midland provides when asked for the writing underlying a claim also fail to provide a defense to the FDCPA violation regarding its business practice. Even though Midland successfully argued to the United States Supreme Court that it provides the contract underlying the claim when asked for such documents, it continues to argue this Court that it complies with Rule 3001(c) without providing that document. Specifically, Exhibit 10 to the Complaint is Midland's Reply brief in

*Midland v. Johnson*, and on pages 4, 6, and 17 of that brief Midland explained how a bankruptcy trustee meets the burden to investigate claims by viewing the underlying credit agreement. Although Midland explained to the United Supreme Court that Rule 3001(c)(3)(B) requires the credit card account agreement to be sent upon request, it now argues to this Court that this document is not required to be provided.  Midland's reliance on Judge Huennekens' earlier opinion is misplaced because that opinion predates the United States Supreme Court decision in *Midland v. Johnson,* and because Midland did not inform Judge Huennekens that it was presenting a directly contrary argument to the United States Supreme Court.

33.    The only way an interested party can determine if the interest or fees assessed on a credit card claim are in the contractually authorized amount is to view the credit card contract. The contract document will provide information about what state law to apply and what interest and fees can be assessed.  Especially when more than 50% of a claim is interest and fees, knowing whether or not those interest or fees are contractually due is important.  This Court has already explained how if pre-petition interest or fees are charged "using a rate greater than the contractual rate or exceeded an applicable statutory rate, . . .  it could trigger a challenge from the debtor or the trustee." (Doc. 13, pg. 8).  The only way to make that determination is to view the contract to see which state law applies and what interest has been agreed.

34.    Midland has no basis to claim that false information on a Proof of Claim is not a violation of law as long as the true information would not show wrongdoing, or that a trustee's failure to object to a claim insulates it from FDCPA liability.  The United States Supreme Court in *Midland v. Johnson* explained why Proofs of Claim are so important.  "The audience in Chapter 13 bankruptcy cases includes a trustee, 11 U. S. C. §1302(a), who must examine proofs of claim and, where appropriate, pose an objection, §§704(a)(5), 1302(b)(1) (including any

timeliness objection, §§502(b)(1), 558)." 581 U.S.  ----, 137 S. Ct. 1407, 1413 (2017).  Given

that a trustee "bears the burden of investigating claims" and determining when to object, *see id.*

at 1414, trustees necessarily rely on the information in the sworn Proof of Claim to determine

how to exercise those duties, and that information must necessarily be accurate.  For instance, a

very large fee or interest itemization might be cause to investigate the legal basis for such fees or

interest.  Similarly, for open-end credit, the contract documents underlying the claim need to be

available on request so that a trustee can determine whether fees or interest exceed the contract

amount and what state law to use when making that legal determination.  Midland cannot file

systemically false information under oath and then defend that process by stating that if it had

filed truthful information then no problem would have been shown because such an argument

misunderstands the obligation that sworn statements be truthful in the first instance.  The

problem is that Midland did not tell the truth when it filed false information under oath and asked

the system to treat that false information as true.

35. Midland's assertion that its employees can file false oaths without violating the

FDCPA is contradicted by cases such as *Vassalle v. Midland Funding LLC*, where "the district

court issued a self-described 'landmark ruling,' holding that "robo-signing" affidavits in debt-

collection actions violates the FDCPA. The court found the affidavit to be false and misleading

under the FDCPA due to the false attestation of personal knowledge. As it turns out, Midland

employees had been signing between 200 and 400 computer-generated affidavits per day for use

in debt-collection actions, without personal knowledge of the accounts." 708 F.3d 747, 752 (6th

Cir. 2013)(see also *Midland Funding LLC v. Brent*, 644 F. Supp.2d 961, 967-69 (N.D. Ohio

2009) explaining in detail the process by which Midland systematically created hundreds of false

attestations of personal knowledge per day to be submitted in debt collection actions).  The Sixth

Circuit described the false attestation of personal knowledge as a "predatory practice" and stated that the "unnamed class members' greatest interest is their ability to contest these allegedly fraudulent judgments." 708 F.3d at 756 and 759.

36.    Back in 2009, Midland was cautioned that even if the information in an affidavit is accurate, the false attestation that the signer has knowledge that the information is correct is a serious legal violation. *See Midland Funding LLC v. Brent,* 644 F. Supp. at 969.  Similarly, in 2015 the Consumer Financial Protection Bureau took action against Midland because of its practices in violation of basic legal principles, including using false affidavits.  (See Consent Order in Consumer Financial Protection Bureau Administrative Proceeding, File No. 2015-CFPB-0022, specifically Paragraph 19 through 99 describing the entire context in which false affidavits had routinely been used by Midland in collection actions in state courts)(attached here as **Exhibit A**). Thus, Midland knows very well that not only must the underlying information in sworn declarations be true, but the statement of the declarant's personal knowledge must be true.  Its argument now that the demonstrably false information was not concealing other wrongdoing completely evades its truth-telling obligation.

37.    Just like the original Complaint, Plaintiffs' Amended Complaint asserts that Midland will not provide the credit contract document to an interested party when asked to provide the writings underlying a Synchrony-based claim.  Midland does not dispute this allegation and, as in its First Motion to Dismiss, argues that the term "a copy of the writing" in Rule 3001(c)(1) does not include the contract underlying the claim.  The terms of this part of Rule 3001 apply to all claims "based on a writing" and the meaning does not change whether based on a credit card account, a car loan account, or other type of contract.  Midland's arguments about what is or is not required to be attached to a Proof of Claim based on an open-end credit account have no relevance to what must be provided when a request is made.

38.     Midland also fundamentally misunderstands the allegation that it does not provide sufficient documentation to show that it purchased any particular account from Synchrony Bank. Although at a trial in Richmond its Director of Bankruptcy Operations, Rodrigo Bedoya, was able to connect the dots with his testimony, (see Doc. 20, Para. 40), the problem is that such testimony was necessary because the documents on their face do not link up. Crucially, no document prepared by Synchrony shows which accounts were included in a Purchase and Sale Agreement and the terms of the Purchase and Sale Agreement are not provided.

39.     Finally, Midland mischaracterizes the charge-off document (Exhibit A to each Amended Proof of Claim) in an effort to prove that it complies with Judge Huennekens' ruling that providing "applicable Account Statements" is all that Rule 3001(c)(1) requires. In Paragraph 43 of their Motion to Dismiss, Midland asserts that this "charge-off statement" was mailed by Synchrony to the debtors. Plaintiffs agree that if such a document had been sent by Synchrony to debtors, then it would be an "Account Statement" but, as Plaintiffs informed Midland in Paragraph 78 of the Amended Complaint, this document was intentionally prepared to appear like an account statement sent to a debtor when it was not actually sent to the debtor. At the end of this deceptive document under the heading "Cardholder News and Information" in small print is the assertion "Statement not provided to customer" and Plaintiffs stand by their allegation that it was not mailed to the debtors by Synchrony. Thus, for purposes of the Motion to Dismiss, these documents are not account statements sent to the debtor.

40.     Finally, Midland's assertion that the Amended Complaint does not allege intentional conduct fundamentally ignores the facts alleged against it. Assuming those facts to be true, the Amended Complaint details that Midland contracts with Synchrony for information about accounts in bankruptcy to determine whether to file a Proof of Claim. (Paragraphs 14, 38

and 39).  As part of that process it receives information that shows interest and fees are included

in the claim amount. (Para. 25 and 27).  Despite that knowledge, it directed its employees to file

sworn statements in the Proofs of Claim that no interest or fees are included in the claim amount.

These facts allege an intentional process of knowingly ignoring the bankruptcy rules.  As stated

in the December 1, 2016, ruling from *In re Maddux*, the Defendants' misrepresentations are

neither justified nor harmless.

> The language of Bankruptcy Rule 3001(c)(2)(A) clearly requires holders of
> claims, including credit card claims, to provide an itemization of interest, fees,
> expenses, and other charges when the debtor is an individual. See Fed. R. Bankr.
> P. 3001(c)(2)(A). The supporting documents provided by Midland for each of the
> Midland Claims clearly indicated that there was an interest component in the
> claims. Representing on the proof of claim form that the claimed amount did not
> include interest was misleading

567 B.R. 489, 499-500 (E.D. Va. 2016).  Midland does not dispute that it intended to take the

actions it did, and Midland has no basis to assert the Amended Complaint does not allege

intentional conduct in doing so.

## V.

## PLAINTIFFS' AMENDED COMPLAINT PROPERLY SEEKS RELIEF FOR MIDLAND'S VIOLATION OF RULE 3001

41.     This Court has already determined the original Complaint "pleads that Midland

failed to comply with Rule 3001."  It asked for an Amended Complaint because the original

failed "to detail the relief requested and plead sufficient facts that would authorize injunctive

relief."  Specifically, the Court stated that insufficient facts were alleged about the expenses or

attorneys' fees resulting from the noncompliance, and the original allegations did not provide

sufficient detail about how an injunction was warranted.  In response, the Amended Complaint

states that attorneys' fees are requested under the lodestar method for the time incurred in the

identification, investigation, and prosecution of the Rule 3001 claim. (Para. 101).  The Amended

Complaint further requests that Midland be ordered to file amended Proofs of Claim that separately itemize interest from fees, and that Midland demonstrate it will provide the pertinent contracts when asked for the writing underlying the claim. (Para. 104).

42.     Although Midland argues that this Court never ruled on its assertion that no violation of Rule 3001 can ever be the subject of an adversary proceeding, the Court's prior ruling made clear that such a claim could go forward if Plaintiffs provided additional allegations about the requested remedy.  Plaintiffs have now done so, and the real issue is whether or not the new allegations are sufficient for that purpose.  Because Midland has briefed its prior argument in full again, Plaintiffs first address that argument.

43.     Midland asserts that Rule 3001(c) does not provide Plaintiffs with an independent claim that can be pursued in this Court.  In making this assertion, Midland confuses the potential validity of its claim with the violation of Rule 3001 that appears on the face of its claim.  This adversary proceeding is not an objection to claim under Rule 3007.  Instead, as a proceeding to recover money or property under Rule 7001(1) and to obtain declaratory judgment under Rule 7001(9), it contains a request for appropriate relief to be ordered against Midland under Rule 3001(c)(2)(D).  Whether or not violating Rule 3001 is independent grounds for disallowing Midland's claim is not a matter at issue on a motion to dismiss.  As a demand for relief of the kind specified in Rule 7001, a Rule 3001 request for appropriate relief must necessarily be included in an adversary proceeding and may not be included in a simple objection to claim. (Bank. Rule 3007(b)).

44.     When the alleged holder of a claim fails to provide any information required by Rule 3001(c), Rule 3001(c)(2)(D) allows this Court to order appropriate relief, after notice and hearing.  As explained in *Maddux v. Midland Credit Management, Inc.*, 567 B.R. 489 (Bankr.

E.D.Va. 2016), —where, as here, a creditor files its claim in non-compliance with Rule 3001 and

deprives a debtor of "sufficient information to evaluate the validity of [the claims] without undue

burden or expense"—a debtor is both harmed by the violations of Rule 3001 and may obtain

relief in this Court. *Maddux*, 567 B.R. at 500.

45.     Plaintiffs are asking the Court to impose an award of attorneys' fees under the

lodestar method, and require Midland to either file compliant Proofs of Claim or withdraw its

Proofs of Claim.   Additionally, Midland should be required to show that it will provide the

writing underlying the Synchrony claims on request.   Requesting such relief within an adversary

proceeding is one way to have this Court order such relief after notice and hearing, and does not

equate to asserting a general private right of action for money damages which could be pursued

in a federal district court.

46.     Midland's central argument regarding this remedy improperly deprives this Court

of the very power granted by the Rules.   It asserts that Count II of the Amended Complaint

should be dismissed "because there is no such thing as private cause of action for alleged

'violation' of Rule 3001." Defendant's Motion, pg. 13.   In support of this argument, it cites *In re

Critten*, 528 B.R. 835 (Bankr. M.D.Ala. 2015), where the debtor sought "money damages" for

the creditor's alleged violation of Rule 3001. *Critten*, 528 B.R. at 839.   The court in *Critten*

noted that "Critten does not allege any facts which show that the Proof of Claim filed by

Quantum in this case fails to comply with Rule 3001" *Id*. at 838.   The court also pointed out that

"Critten does not discuss Rule 3001(c)(2)(D), and that Critten presented creditor misconduct

cases without alleging any such misconduct by the Defendant." *Id*. at 841.   Given such pleadings

and lack of attention by the plaintiff, the court then found no "private right of action for

damages" for violations of Rule 3001. *Id*. at 842.   To reach that decision, the *Critten* court added

into the text of Rule 3001 the restriction that its remedy was limited to "a proceeding involving the validity of a claim." *Id.* at 840.  The court did not say that a bankruptcy court has no power to order appropriate relief for such violations, and was not presented with a simple request for the appropriate remedy under Rule 3001(c)(2)(D).  Given that the plaintiff in *Critten* did not even ask the court to proceed under Rule 3001(c)(2)(D) nor ask for the appropriate remedy, that court's analysis of the issue before it ended with the decision that claim for actual damages could not be asserted.  The remainder of the opinion, on which Midland relies, is dicta without the benefit of briefing or argument.  Accordingly, Plaintiffs assert *Critten* and its progeny should not be followed here.

47.     The holdings in *Critten* and *In re Sims*, that no general private right of action exists to obtain damages for a violation of Rule 3001, do not mean that Plaintiffs have no right to petition this Court to impose sanctions pursuant to Rule 3001(c)(2)(D).  Rule 3001 does not specify the procedure by which the court may impose the sanctions mentioned in Rule 3001(c)(2)(D), nor does the text of the rule deny a debtor the right to request sanctions in an adversary proceeding.  The only condition the Rule specifies is that, before the court may impose sanctions for violations of Rule 3001, "notice and a hearing" must take place. See Fed.R.Bankr.P. 3001(c)(2)(D).  No basis exists to read into that Rule the limitation that such notice and hearing can only occur within a proceeding designated as an Objection to the Claim, and Bank. Rule 3007(b) would prohibit such additional relief in a mere claim objection.

48.     Based on the plain reading of Rule 3001, it follows that any party with standing to object to a claim also has standing to petition the court to impose sanctions under Rule 3001(c)(2)(D) by providing notice of the alleged violation and the request for sanctions, and scheduling a hearing.  Section 502(a) of the Bankruptcy Code specifies an objection to claim

may be brought by "a party in interest", and a debtor is plainly a party in interest with standing to object to a claim, a debtor must also have standing to seek the remedies provided under Rule 3001.

49.     Plaintiffs have not sued Midland for damages under Rule 3001, as the debtor in *Critten* did, and, unlike that debtor, Plaintiffs have specifically asked only for the remedy provided for in Rule 3001.  Also, they have stated facts which, when viewed in the light most favorable to Plaintiffs, conclusively prove Midland's serious misconduct.  Plaintiffs are simply requesting the Court impose appropriate sanctions under Rule 3001(c)(2)(D) to ensure that its procedures are followed, and Plaintiffs have provided notice and opportunity for a hearing on this matter.  Thus, Plaintiffs have properly requested that the Court apply its discretion and award "the appropriate remedy".

50.     Of course to determine that remedy, this Court may want more facts about the reason these violations occurred.  As shown in *Maddux* and in *In re Goeller*, Ch. 13 Case No. 12-17123-RGM, 2013 WL 3064594 (Bankr.E.D.Va. 2013), that evidence of substantial justification, harmlessness, and willfulness are important in determining whether sanctions should be imposed and what sanctions are appropriate.  See *Maddux* at 499-500 and *Goeller* at *2.  Such evidence can only be obtained and provided to the Court if the Court denies Count II of Midland's Motion to Dismiss, and allows for a hearing on the merits of this issue.

51.     Accepting the allegations of the Amended Complaint as true, and as demonstrated by Midland's lack of compliance with Rule 3001 shown by the Exhibits to the Amended Complaint, pursuant to the plain meaning of the remedy in Rule 3001(c)(2)(D), Plaintiffs have standing to pursue the Rule 3001 violation after notice and hearing.  Therefore, Plaintiffs have properly alleged a claim that this Court should impose the relief it deems appropriate under Rule

3001(c)(2)(D).

52.     Most importantly, Plaintiffs are not proposing that the mere failure to comply with Rule 3001(c) necessarily justifies striking a claim.  The issue is not an isolated act of noncompliance, but a systematic business practice based on false sworn declarations, misinformation, and refusal to provide pertinent documents.  Despite the egregious nature of such misconduct, Plaintiffs are allowing the possibility that such claims be allowed on the condition that Midland finally comply with Rule 3001(c).  Midland's argument that a mere one time failure to provide all the information required by Rule 3001 does not by itself constitute grounds for striking a claim is neither disputed nor relevant.

53.     Plaintiffs' requested remedy is not made moot by the Amended Proofs of Claim. As set forth above, those Amended Proofs of Claim do not comply with Rule 3001(c) because the interest and fees are not separately itemized.  Consequently, unlike the FDCPA claims, the Rule 3001 requested remedy does directly put in issue whether the Amended Proofs of Claim comply with Rule 3001(c).  Plaintiffs allege that interest and fees are not separately itemized as required by the Rule, and Midland asserts they are allowed to put them under the heading "Finance Charges."  Because Rule 3001(c) requires these items to be itemized separately, although the Amended Proofs of Claim do not contain the false sworn statements of the original Proofs of Claim, they are still not in compliance.

54.     Plaintiffs' requested remedy is not a mere "obey the law" request.  Instead, it specifies the exact behavior, separate itemization and readiness to provide specific documents, that should be undertaken.  This request actually provides Midland an option of either taking this specific conduct or withdrawing its claims.  The harm by not doing so is ongoing because Plaintiffs still do not have the information presented in the claim that any creditor is required to

present.

55.     Midland's argument that Plaintiffs' contested matter should be dismissed so that they can bring their Rule 3001 claim as a contested matter is nonsensical.  Plaintiffs have been trying without success to obtain a proper Proof of Claim from Midland, and the Court's docket sheet shows the effort that has been expended.

56.     The Amended Complaint states that this Court has jurisdiction over the claims under section 105 of the Bankruptcy Code and asks for this Court to use its equitable power to sanction Midland for its violations of Rule 3001.  The allegations of knowingly false statements by Midland, considered in the light most favorable to Plaintiffs, implicates section 105, and ". . . §105 may be used to sanction the filing of a proof of claim violative of the Bankruptcy Code and abusive of the bankruptcy process, that is, as the federal criminal code aptly describes, a claim that is false or fraudulent."  *In re Varona*, 388 B.R. 705, 717 (Bankr.E.D.Va. 2008); *see also In re Tate*, 253 B.R. 653 (Bankr.W.D.N.C. 2000).  In *Tate*, debtors filed a complaint seeking to initiate a class action proceeding against mortgage servicer NationsBanc and, among other causes of action, alleged section 105 of the Bankruptcy Code gave the court the authority to order the creditor to pay restitution to the debtors –and similarly situated debtors –for attorney fees that NationsBanc had improperly charged in violation of section 506(b) and Rule 2016. *Tate*, 253 B.R. at 666-667.  NationsBanc argued the court was required to dismiss the Complaint because there was no private right of action under section 506(b). "This," the court said, "is patent nonsense." *Tate* at 668.

57.     As the *Tate* court explained, although section 506(b) of the Bankruptcy Code allowed NationsBanc to obtain payment of fees, Rule 2016 placed affirmative obligations on it to accurately identify the fees charged to the debtors as attorney fees subject to the court's

determination of reasonableness. *Id.*  Because NationsBanc did not abide by the requirements of

the Rule—and because the fees improperly charged were paid by the debtors' post-petition

income, an asset of the estate—the court could employ section 105 of the Bankruptcy Code to

craft the appropriate remedy. *Id.*  As the court said,

> The Court will not allow the Defendant to turn the Bankruptcy Code upon itself in
> this fashion. Without determining the existence of an express or implied cause of
> action, the Court recognizes that § 506(b) and Rule 2016 create rights *and* duties
> for creditors in bankruptcy cases. A creditor may be entitled to payment of
> professional fees under its contract with a debtor, but before those funds will be
> paid from the bankruptcy estate, the creditor must affirmatively demonstrate their
> reasonableness to the court after notice. If a creditor elects to ignore the law to
> obtain such fees, it is well within the Court's authority under § 105 to rectify that
> error.
>
> Furthermore, the relief sought by the Plaintiffs—restitution of fees actually paid
> to NationsBanc by the class members—is nothing more than an equitable remedy
> necessary to preserve the benefits and burdens established in § 506 and Rule
> 2016. Under § 105, this Court has the power to grant restitution to effectuate those
> sections when, as here, a creditor has collected money from the estate on
> improperly filed claims.
>
> [   ].
>
> In summary, § 105 authorizes the Court to take whatever action is necessary to
> enforce the Code's provisions. The bankruptcy court is entitled to exercise its
> powers under the Code to restrain a creditor from overreaching. To do otherwise
> would allow NationsBanc to perpetrate a fraud on the Court and other parties in
> interest. In the present case, the Attorney Fee claimed by NationsBanc has been
> found unreasonable under § 506 and violative of Bankruptcy Rule 2016.
> Therefore, the Court finds the equitable remedy of restitution appropriate and
> grants summary judgment for the Plaintiffs on this issue.

*Id*. at 668-669.

58.     Just as NationsBanc abused its right to charge fees under section 506(b) of the

Bankruptcy Code without complying with Rule 2016 in *Tate*, Midland has abused the rights

afforded it under section 502 to file claims without also meeting the obligations of Rule 3001.

Also like the *Tate* case, the debtor in this case filed their Amended Complaint to restrain

Midland from perpetrating a fraud on the court.  They assert that section 105 of the Bankruptcy

Code gives the court the power to fashion an appropriate remedy under the circumstances,

including using the remedies set forth in Rule 3001.  Whether those remedies should include

disallowance of Midland's claims is not relevant to whether the instant adversary proceeding can

proceed forward.

59.     Similar to the issue at bar, courts have used section 105 of the Bankruptcy Code

to fashion remedies for debtors injured by a creditor's willful violation of the discharge

injunction of section 524 of the Bankruptcy Code, even though section 524 does not provide

debtors a private right of action. *See, e.g.*, *Erhart v. Fina*, Case No. 1:12-cv-660, 2012 WL

12870343, E.D.Va. 2012, *aff'd*, *In re Fina*, 550 Fed.Appx. 150 (4th Cir. 2014) (unpublished).

This Court has similarly recognized that section 105 of the Bankruptcy Code gives it the power

to enforce the discharge injunction of section 524 of the Bankruptcy Code by holding a creditor

violating § 524 in civil contempt. See *In re Minor*, Ch. 7 Case No. 10-30161-KLP, Adv. No. 13-

03152-KLP, 2015 WL 1540969 at FN 4 (Bankr.E.D.Va. 2015).   As the First Circuit Court of

Appeals explained in *Bessette v. Avco Fin. Servs.*, "§ 105 does not itself create a private right of

action, but a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably

necessary to preserve a right elsewhere provided in the Code,' so long as the court acts consistent

with the Code and does not alter the Code's distribution or other substantive rights." 230 F.3d

439, 444-445 (1st Cir. 2000), *quoting Noonan v. Secretary of Health & Human Servs. (In re*

*Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir.1997).

60.     Like *Minor*, courts routinely use their contempt powers under section 105 of the

Bankruptcy Code to fashion remedies for debtors harmed by a creditor's violation of the

discharge injunction, despite section 524 of the Bankruptcy Code having no self-executing

verbiage conferring a private right of action to debtors.  In the same way, this Court may use its contempt power under section 105 of the Bankruptcy Code, as Judge St. John stated in *Varona*, to sanction an abuse of process in filing false claims.  As another bankruptcy court stated in drawing a parallel between its authority to use section 105 of the Bankruptcy Code to hold a creditor in contempt for violating the discharge injunction and for filing false proof of claims, "[i]t would be illogical to, on one hand, recognize the right of a debtor to bring a contempt action for violation of the discharge injunction, and then, on the other, dismiss a contempt cause of action brought by the debtor to remedy a creditor's allegedly false or fraudulent proof of claim that abuses §§ 501 and 502 of the Bankruptcy Code and Rule 3001(f)." *In re Watson*, Ch. 7 Case No. 10-1292, Adv. No. 10-109, 2010 WL 4496837 at *4 (Bankr. N.D.W.V. 2010).

61.     Just as Plaintiffs are not seeking civil damages against Midland for its violations of Rule 3001, neither are Plaintiffs asserting that section 105 of the Bankruptcy Code gives them the right to seek actual damages, either for themselves or the class they seek to represent. Midland's "no private right of action" argument is a red herring because any absence of a private right of action for actual damages does not preclude the court from using its equitable powers under § 105 to craft an appropriate sanction.  Midland's pattern of filing false claims throughout the Western District of Virginia is "violative of the Bankruptcy Code and abusive of the bankruptcy process" and is precisely the kind of misconduct against which *Varona* says the court's section 105 of the Bankruptcy Code powers may properly be employed.

62.     In filing its Proofs of Claim, Midland knowingly made false statements regarding the interest, fees, and other costs in this case and in the cases of similarly-situated debtors, and it deliberately failed to comply with applicable requirements of Rule 3001.  This willful noncompliance, rising to the level of abuse of the claims process governed by section 502 of the

Bankruptcy Code and Rule 3001, makes appropriate the court's use of its inherent powers to sanction, in conjunction with section 105 of the Bankruptcy Code and Rule 3001(c)(2)(D), to impose sanctions on Midland, including disallowing its claims if the court so chooses.

63.    This Court has the power, in the appropriate circumstances, to disallow claims on the grounds of not being properly filed. See *In re Commonwealth Biotechnologies, Inc.*, Ch. 11 Case No. 11-30381-KRH, Adv. No. 12-03038-KRH, 2012 WL 5385632 at *6 (Bankr.E.D.Va. 2012). Just as in this case, the claim at issue in *Commonwealth Biotechnologies* was filed in non-compliance with Rule 3001. *Id.* Likewise in *Goeller*, the court recognized disallowance as a potential remedy—depending on evidence of "culpability, harm and materiality"—for Rule 3001 violations. *Goeller* at *2. Commenting on the potential range of remedies under Rule 3001(c)(2)(D), the *Goeller* court explained,

> While not expressly stated, the list should be taken as inclusive and not exclusive of the sanctions and remedies available. The remedies listed are permissive. The rule provides that "the court **may**" take certain actions. (emphasis added.) Disallowing the proof of claim is not the mandated sanction or remedy. Precluding the holder of claim from presenting the omitted evidence in a contested matter or an adversary proceeding may have that result but that is a permissive, not a mandatory sanction. Disallowance of the claim should not be the automatic result of failure to comply. Other factors such as culpability, harm and materiality should be considered.

*Id*.

64.    In addition to their power under section 105 of the Bankruptcy Code to impose sanctions for civil contempt, bankruptcy courts may impose sanctions "pursuant to a court's inherent authority to punish and/or deter offending conduct." *In re Gravel*, 556 B.R. 561, 574 (Bankr.D.Vt. 2016). "While these inherent powers must be exercised with restraint and discretion, a court may 'safely rely on its inherent power' to impose sanctions where, 'in the informed discretion of the court, neither the Statute nor the Rules are up to the task,' as long as that action is not prohibited by the Bankruptcy Code." *Gravel*, 556 B.R. at 575, <u>*quoting*</u>

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), and *citing Law v. Siegel*, 571 U.S. ----,  134 S.Ct. 1188, 1191 (2014).

65.    In *Gravel*, the bankruptcy court found that section 105 of the Bankruptcy Code, and the court's inherent power to impose sanctions, allowed the court to impose a $375,000.00 sanction against a mortgage servicer that, after having been previous warned by the court, violated Rule 3002.1 and a court order by sending debtors notices of postpetition fees that had previously been disallowed. *Gravel* at 580 and FN10.  The *Gravel* court imposed sanctions using its inherent power and section 105 of the Bankruptcy Code, despite the availability of the specific sanctions listed in Rule 3002.1.   The court noted that bankruptcy courts are able to fashion a remedy depending on the circumstances of the case.

> Bankruptcy courts have extensive discretion under § 105 to determine what amount of sanctions is appropriate and reasonable. [  ]. Courts must give individualized consideration to the particular circumstances of the case, balance a myriad of factors, and very intentionally calculate the amount of the sanction to ensure it is no more than is reasonably necessary to deter the culpable conduct.

*Id*. at 576.


## CONCLUSION

Plaintiffs therefore request on behalf of themselves, and the proposed Rule 3001 Class, that the Court deny Midland's Motion to Dismiss and award such other and further relief as the Court deems appropriate.

Respectfully submitted,
**KAREN M. THOMAS**
**and**
**GARY L. BROOKS, JR.  and MARY M.**
**GILESPIE-BROOKS**
*individually and on behalf of a class of*
*similarly situated individuals*

/s/Hannah W. Hutman
**HOOVER PENROD, PLC**
Grant D. Penrod (VSB No. 65818)
gpenrod@hooverpenrod.com
Hannah W. Hutman  (VSB No. 79635)
hhutman@hooverpenrod.com
Beth C. Driver (VSB No. 83838)
bdriver@hooverpenrod.com
342 S. Main Street
Harrisonburg, VA  22801
540-433-2444
*Co-Counsel for the Plaintiffs*

and

Thomas D. Domonoske (VSB No. 35434)
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone (540) 442-7706
tom@clalegal.com
*Co-Counsel for the Plaintiffs*

and

Timothy E. Cupp (VSB No. 23017)
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Ave.
PO Box 589
Harrisonburg, Virginia 22803
(540) 432-9988 (telephone)
cupp@scs-work.com
*Co-Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the *Plaintiffs' Response In Opposition To Motion To Dismiss Class Action Amended Complaint And Memorandum In Support* was electronically served through the Court's ECF system on all those parties registered to received notices and by first class mail to the parties listed below:

Timothy G. Moore, Esq.  
James K. Donaldson, Esq.  
Spotts Fain PC  
411 East Franklin Street  
Suite 600  
Richmond, VA 23219

Jason B. Tompkins, Esq.  
Chase T. Espy, Esq.  
Balch & Bingham LLP  
1901 Sixth Avenue North, Suite 1500  
Birmingham, AL 35203-4642

this 7th day of March, 2018

/s/Hannah W. Hutman_____  
Hannah W. Hutman, Counsel