**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **Case No. 16-50612** |
| | : | |
| **KAREN M. THOMAS** | : | **Chapter 13** |
| Debtor(s) | : | |
| | : | **Judge Rebecca B. Connelly** |
| | : | |

_____

| | | |
|---|---|---|
| **IN RE:** | : | **Case No. 16-50396** |
| | : | |
| **GARY L. BROOKS, JR.** | : | **Chapter 13** |
| **MARY M. GILESPIE-BROOKS** | : | |
| Debtor(s) | : | **Judge Rebecca B. Connelly** |
| | : | |

_____

| | | |
|---|---|---|
| **KAREN M. THOMAS,** | : | **ADV. PRO. NOS.** |
| and | : | |
| **GARY L. BROOKS, JR.  and** | : | **17-05010**[1] |
| **MARY M. GILESPIE-BROOKS,** | : | |
| *individually and on behalf of a class* | : | |
| *of similarly situated individuals,* | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MIDLAND FUNDING LLC, and** | : | |
| **MIDLAND CREDIT** | : | |
| **MANAGEMENT, INC.,** | : | |
| Defendants. | : | |
| | : | |

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION AND STRIKE CLASS ALLEGATIONS**

_____

---

[1] Pursuant to the Order for Consolidation of Adversary Proceedings, entered herein on September 28, 2017 [Doc #10], Adversary Case Nos. 17-50510 and 17-05009 have been consolidated to proceed in a single adversary proceeding 17-05010.

# I.

## PROCEDURAL HISTORY

1.      This is an action for actual damages, statutory damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Federal Rule of Bankruptcy Procedure (each a "Rule" collectively "Rules") 3001.   This action was filed on June 14, 2017 (the "Complaint") and Plaintiffs seek to have each claim certified as a class claim brought on behalf of similarly situated people.

2.      After obtaining an initial continuance, on August 7, 2017, Defendants filed Defendants' Motion to Dismiss and Memorandum in Support ("Defendants' Motion" or "Motion to Dismiss")[Doc. 4] seeking to dismiss Plaintiffs' claims. This Motion to Dismiss asked the Court to rule in Defendants' favor on the following six legal issues:

-that a false assertion regarding no interest and fees was not a material violation of the FDCPA because it would have no effect on the any decisionmaking;

-that a false sworn declaration by a Midland representative regarding a reasonable belief in the accuracy of the information is not actionable under the FDCPA;

-that Plaintiffs' § 1692f claim failed as a matter of law because the amended claims showed that a "charge off statement" from the original creditor would be provided by Midland when asked for the writing underlying the claim which complied with Rule 3001(c)(3)(B);

-that Plaintiffs' § 1692f claim failed as a matter of law because the original Proofs of Claim did include an itemization pursuant to Midland's normal process, which even if wrong, was not actionable as an unfair or unconscionable practice;

-that the claim for a violation of Rule 3001 failed because no claim is allowed to be stated for such a violation; and

-that the claim for a violation of Rule 3001 failed because an amended claim was filed that allegedly did comply.

3.      In response to Defendants' Motion to Dismiss, Plaintiffs filed a thirty-one page Memorandum in Opposition on September 1, 2017 that addressed each legal issue raised by Defendants.

4.      Defendants then prepared and filed a twenty-seven page Reply Brief on September 19, 2017.  Defendants provided further legal arguments in support of their six legal arguments.  Defendants also specifically asked that Plaintiffs not be allowed to amend their Complaint.

5.      On September 27, 2017, this matter proceeded to oral argument, and the issues were then presented to the Court for decision.

6.      On November 30, 2017, this Court decided the issues presented by Defendants and issued its Memorandum Opinion. (Doc. 13).

7.      Regarding the FDCPA claims, the Court specifically found that Plaintiffs had properly plead a material misrepresentation in violation of § 1692e.  The Court also specifically ruled that, accepting the allegations of the Complaint as true, the Complaint "does allege violations of Rule 3001, a practice knowingly violating the Rule, and practice of hindering a debtor's ability to readily obtain information regarding the claim." (Memorandum Opinion, Doc. 13, pg 12).  The Court then specifically found that the Complaint also properly plead a violation of § 1692f of the FDCPA.

8.      Regarding the Rule 3001 claim, the Court held that despite the Complaint pleading a violation of Rule 3001, additional facts were necessary to allege the relief requested and the basis for that relief.

9.      Finally, the Court overruled Midland's request that no leave to amend be granted and allowed Plaintiffs leave to amend the Complaint to set forth in more particular the relief requested and the basis for that relief.

10.      On November 30, 2017, the Court issued a scheduling order that Plaintiffs, if they chose, could file and serve any amended complaint no later than December 21, 2017. Defendants were given until January 4, 2018, to file and serve any motion or responsive pleading, or answer the FDCPA count if no amended complaint were filed. (Doc. 14).

11.      A conference call with the Court was held on December 12, 2017, to discuss scheduling matters regarding this case.  Plaintiffs confirmed they would be filing an Amended Complaint, and Defendants sought and received a two-week extension of time to file any responsive pleadings to that Amended Complaint by January 18, 2018.

12.      Plaintiffs filed their Amended Complaint on December 19, 2017 (Doc. 16).

13.      Shortly before the deadline for Defendants' Responsive Pleading, Defendants asked Plaintiffs to agree to another continuance for Defendants' Responsive Pleading.  Plaintiffs agreed to allow Defendants an additional two weeks to respond.

14.      On February 1, 2018, Defendants filed a Motion to Dismiss the Amended Complaint (Doc. 20) and a Motion to Compel Arbitration (Doc. 21).

## II.
## THE DEFENDANTS' MOTION TO COMPEL ARBITRATION SHOULD BE DENIED FOR FOUR DIFFERENT REASONS.

**A. Because Defendants' Motion does not include the contract terms by which Midland purchased "receivables" from Synchrony, Plaintiffs request a summary trial with pre-trial discovery on the issue of what rights Synchrony sold to Midland.**

      **1.**     **When disputed issues of fact are raised regarding the enforceability of an arbitration agreement, discovery and trial on the disputed issues should be held.**

      15.     Under the Federal Arbitration Act (F.A.A.), when the making of an agreement to arbitrate is disputed, the Court should proceed "summarily" to resolve the issue. Pursuant to 9 U.S.C. § 4, when a party asserts that a matter is covered by a binding arbitration agreement, the Court is to "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue" shall order arbitration. "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue." Consequently, under the federal substantive rules that Defendants assert apply to the arbitration agreements, this Court is to summarily decide whether Defendants possess the right to force Plaintiffs out of court.

      16.     No party can force another out of court through use of an arbitration clause unless the parties before the Court have agreed to arbitrate the claims between them. As Judge Wilkinson has explained, unless the parties have agreed to arbitration of their claims, no arbitration can be compelled because such "naked coercion" would undermine the very policy that favors enforcing arbitration agreements.

> To repeat, the investors here never purchased any service or commodity from RJFS during the course of its business activities. To compel RJFS to arbitrate when the firm has not agreed to do so would be to engage in naked coercion independent of any sound basis in law. This in turn would undermine the longstanding principle that arbitration is a consent-based process through which parties can decide for themselves where and how to resolve a specific set of

> potential disputes. *See Volt*, 489 U.S. at 479, 109 S.Ct. 1248. Moreover,
> compelling arbitration when parties have not agreed to do so would discourage
> entities from agreeing to arbitrate at all out of fear that such agreements would be
> stretched too far in the course of judicial construction. This in itself would
> undermine the federal policy favoring arbitration.

*Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 388 (4th Cir. 2013)

17.     To determine whether a party has the right to compel arbitration, the Court must

conduct a factual inquiry into any disputed facts.  The standard to be applied "is akin to the

burden on summary judgment." *Chorley Enters. v. Dickey's Barbecue Rests., Inc*., 807 F.3d 553,

564 (4th Cir. 2015).  When one party contests the making of an agreement to arbitrate, the Court

should hold a hearing into the facts.

> The FAA states that, in any suit brought in federal court on any issue referable to
> arbitration, "upon being satisfied that the issue involved in such a suit ... is
> referable to arbitration [the court] shall stay the trial." 9 U.S.C. § 3 (emphasis
> added). The Supreme Court has interpreted this as calling for a hearing with a
> restricted inquiry into factual issues. See Moses H. Cone Mem. Hosp. v. Mercury
> Constr. Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
>
> Where the parties contest the enforceability of an agreement and an evidentiary
> hearing is necessary to determine whether a contract is valid, as in the present
> case, the court would be remiss not to hold a hearing. This case has raised a
> myriad of complex problems that the court has labored to resolve. The Magistrate,
> recognizing that such a situation was present, was proper and responsible to hold
> the October 15, 1999 hearing in this case.

*Pitchford v. Oakwood Mobile Homes, Inc*., 124 F.Supp.2d 958, 961 (W.D. Va. 2000).

18.     Prior to an evidentiary hearing, "one important purpose of discovery is to disclose

all relevant and material evidence before trial in order that the trial may be an effective method

for arriving at the truth and not 'a battle of wits between counsel.' *Hickman v. Taylor*, 329 U.S.

495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, J., concurring); *see* Frost, The

Ascertainment of Truth by Discovery, 28 F.R.D. 89 (1961)."   *Guilford National Bank of*

*Greensboro v. Southern Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962).  Rules of discovery promote

the "interest of discovering the truth and insuring a just result in civil litigation, this latter consideration is paramount." *Kline v. Martin*, 345 F.Supp. 31, 32 (E.D. Va. 1972).   As was allowed by Judge Urbanski in *Davis v. Lendmark Fin. Servs*., 2016 WL 1060340, case no. 7:15-cv-131, W.D. Va. March 11, 2016, discovery is properly conducted on the factual issues related to the enforceability of an arbitration clause.   As stated in that opinion, "Following a hearing held on September 24, 2015, the court granted Davis' request to undertake certain discovery, ECF No. 26, after which the parties submitted supplemental briefing. The court held a second hearing on February 19, 2016, and the issue is now ripe for adjudication." *Id.*

19.     When a genuine issue of material fact regarding the enforceability of an arbitration clause is shown, the Court is to hold a trial on that limited issue.   For this reason, in cases like *Davis,* a trial on the disputed issue is properly ordered.   *Id.* (stating that "there is a genuine issue of material fact as to the existence of the arbitration agreement requiring resolution of this discrete issue by a jury. 9 U.S.C. § 4 (2012); *see Brent v. Priority 1 Auto. Group*, 98 F. Supp. 3d 833, 837-38 (D. Md. 2015); *Whitten v. Apria Healthcare Group, Inc*., No. PWG-14-CV-3193, 2015 WL 2227928 (D. Md. May 11, 2015)").

**2.     Because Defendants have not provided the contract by which Defendants allegedly purchased the right to force Plaintiffs' claims out of court, a trial must be held on the issue of the extent of rights purchased by Defendants.**

20.     As alleged in the Amended Complaint, the Purchase Agreement by which Defendants purportedly received rights from Synchrony Bank is part of the chain of assignment of those rights. (Amended Complaint, Para. 71).   When asked for the writing underlying the claims, Defendants never provide this purchase agreement and never provide any documents setting forth what rights were actually transferred to Defendants. (Amended Complaint, Para. 72 and 73).   Thus, Defendants have been on notice that one fact in issue in this case regards the

terms of its contract with Synchrony Bank and what was actually transferred to Defendants. That document may only transfer a right to receive payment while Synchrony maintains the other rights of the credit card account agreement, including the right to charge Defendants for access to information and documents.  The Motion to Compel Arbitration must fail if Defendants only bought the right to receive payments rather than all the rights of the credit card agreement.

21.     When interpreting contracts, courts must look at the words of a contract to determine the agreement.  Under Utah law, which the credit card account agreements select, to determine what rights may have been sold Defendants under their agreement with Synchrony, the Court must necessarily view the contract terms.  *See Lebrecht v. Deep Blue Pools,* 374 P.3d 1064, 1069-70 2016 UT App 110, ¶14 (2016)(citing *WebBank v. Amer. Gen. Annuity Serv. Corp.,* 2002 UT 88 ¶ 19 for the common principle that "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law").  Then, if the language of the contract is ambiguous, extrinsic evidence may be used. *Id.*  As with basic contract interpretation, if one party is solely responsible for the ambiguous nature of the evidence presented on a contract question, then the interpretation should go against the party in the best position to avoid that ambiguity.  As stated by the Fourth Circuit Court of Appeals, the rule of *contra preferentem* shifts the cost of any confusion in a contract on the party who caused it.

> The basic contract law principle *contra proferentem* counsels that we construe any ambiguities in the contract against its draftsman. See, e.g., *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 389 (4th Cir.2006) (stating "[a]mbiguity imposes costs on the parties to a contract: one party may rely on an errant interpretation, or find its original intent flouted if a dispute arises. Contra proferentem shifts the cost of ambiguity to the party best positioned to avoid and bear it ...").

*Maersk Line, Ltd. v. U.S.*, 513 F.3d 418, 423 (4th Cir. 2008)(regarding contract interpretation but equally applicable to a party who seeks to enforce a contract but fails to provide the contract terms to the court).

22.     Despite providing a 195 page Motion to Compel Arbitration, Midland has chosen not provide the contract setting forth the terms of its transaction with Synchrony Bank.  Thus, Defendants have chosen not to reveal to this Court what rights they allegedly purchased from Synchrony Bank.  The documents provided by Defendants are ambiguous about what was actually purchased from Synchrony Bank.  Plaintiffs dispute that Defendants purchased all the rights in the credit account contract, including the right in those arbitration clauses from Synchrony Bank.  If Defendants want to prove that they bought the right to force Plaintiffs out of court as they allege, they need to provide the contract by which they assert they bought such a right.   Otherwise, without the actual contract terms to view, the Court cannot determine Synchrony sold all the rights in the credit card account contract or only the right to receive any payment due.

23.     Rather than attach the contract document by which Defendants purportedly bought rights from Synchrony, Defendants have offered only conclusory statements about the terms of that contract document.  Pursuant to Rule 1002 of the Federal Rules of Evidence (FRE), the original writing "is required in order to prove its content unless these rules or a federal statute provides otherwise."   Under FRE 1004, evidence other than the original of a writing is admissible if certain requirements are met, like all the originals are lost or destroyed or cannot be obtained by judicial process, and under Rule 1006 a summary may be provided of a voluminous writing.  Although the Declaration of Michael Burger tells the Court that Defendants bought some rights to each of the accounts, (Doc. 21-2),  his Declaration fails to show any basis for the

content of the contract between Synchrony to be proven by any means other than the writing itself.  For each account, Mr. Burger authenticates a Bill of Sale where Defendants allegedly bought some rights. (Doc. 21-2, Para. 6, 10, and 14).   Each Bill of Sale makes clear two important facts:

Fact 1: Synchrony transferred "Receivables" pursuant to terms in a Purchase Agreement;

Fact 2: Synchrony only transferred those "Receivables" "to the extent of its ownership."

(See first page of Exhibit 1, 4, and 7 to Burger Declaration, Doc. 21-1).

For each account, Mr. Burger also provides an Affidavit of Sale that further identifies the pertinent document by the title "Purchase and Sale Agreement" and provides a date for each Agreement. (See Exhibit 1, 4, and 7 to Burger Declaration, Doc. 21-2).   He references no documents about the extent of Synchrony's ownership in the accounts, and provides no explanation for why the Purchase and Sale Agreement is not attached.

24.     FRE 1002 mandates that the answer to the question whether Defendants bought the right to force Plaintiffs out of court must be found in the Purchase and Sale Agreement document. Mr. Burger, however, fails to describe it further.  He also does not state whether he has seen those contracts, nor whether he knows what are in them.   Additionally, the Burger Declaration contains internally contradictory information, and accordingly lacks reliability.  For instance, he states that Exhibit 9 is "copies of documents received from Synchrony that were sent to Mary Gillespie-Brooks at her address of record" even though the last document in Exhibit 9 was never sent to her.  As more fully set forth in Paragraph 78 of the Amended Complaint, this document "was intentionally prepared to appear at first glance to be a copy of statement sent to a debtor" even though it never was.  The fine print near the end of the document asserts that it was

not sent to the debtor, and Mr. Burger provides no explanation for his sworn testimony contrary to the statement in the document itself.

25.    Instead of providing the contract documents by which they claim to have bought the right to force Plaintiffs out of Court, Defendants also provide an Affidavit of Ms. Joline White who works for Synchrony.  She testifies something was sold to Midland Funding LLC regarding the three accounts in issue, but like Mr. Burger does not explain further. (Doc. 21-1). Regarding those accounts, Ms. White says three times in her declaration that "[a]ccording to Synchrony's records, in or about . . . 2016, Synchrony sold the . . .  Account to Midland Funding LLC." (Doc. 21-1, Para. 11, 18, and 24).  She does not say what rights to the account were sold and whether those rights included the right to force Plaintiffs out of court.  Most importantly, she does not say she is familiar with the terms of the contracts between Synchrony and Defendants, nor does she mention the Purchase and Sale Agreement documents at all.  She says she reviewed records but she does not say what she reviewed.  Although she explains that the records she reviewed were more than the documents attached to her Affidavit, she does not identify what she reviewed that is not attached.  Nothing attached to her Affidavit shows any terms of the sale of rights between Synchrony and Defendants, and she provides no information regarding what rights Synchrony may have possessed at that time, nor why the Purchase and Sale Agreement is not attached.

26.    Without providing the contract document setting forth what they allegedly bought from Synchrony, Defendants assert that document sold them all the rights in the credit card account agreement.  The Defendants' choice not to include that contract document is even more surprising given that Plaintiffs' Amended Complaint explained that the documents provided by Defendants previously are missing those terms.  Essentially, contrary to the requirements of FRE

1002, Defendants have provided extrinsic evidence that they have contracts with Synchrony that sold them the accounts, and then the unsupported allegation that this transfer included the right to force Plaintiffs out of court.  Defendants have provided no evidence that the Purchase and Sale Agreements included all the rights in the credit card account agreement, and on the contrary the extrinsic evidence is that merely the "receivables" were sold, and then only to the unknown interest that Synchrony had in those receivables.  To determine what rights Defendants actually purchased, whether just the right to payment or all the rights in the credit card account agreement, a trial on this issue must be held where the starting evidence are the written terms of the Purchase and Sale Agreement contracts between Synchrony and Defendants.

27.     Under Utah law and the rules of evidence, the way to know the terms of the contract between Synchrony and Defendants is to view the actual contract.  Only if that language is ambiguous, can extrinsic evidence then be used to determine what was sold.  Prior to that trial, discovery should be allowed on the issue of the rights that were transferred by the Purchase and Sale Agreements referenced in Defendants' documents.  This discovery should first include a complete, unredacted copy of those contracts, and to the extent those contracts are ambiguous, then depositions of the Defendants' affiants if those affiants will not agree to appear as witnesses at trial.  Even if the Purchase and Sale Agreements chose a law other than Utah, without the contract document in evidence the Court cannot determine what rights were actually sold to Defendants.

**B. Even if Defendants bought the right to compel arbitration, Midland waived arbitration by asking the Court to dismiss Plaintiffs' substantive claims.**

28.     A party initially entitled to enforce an arbitration agreement waives its right to have matters decided in arbitration when it asks a Court to decide substantive issues in its favor. The jurisprudence on this issue is well established and has been set forth in detail by Judge

Payne in a FDCPA class action where a debt collector, Wolpoff and Abramson (W&A) belatedly

tried to enforce the arbitration clause in a credit card contract.

Indeed one exception to policy favoring arbitration expressed in the FAA is waiver or default of the right to move to compel arbitration. As the Fourth Circuit has explained:

> To further facilitate arbitration, the FAA authorizes a party to an arbitration agreement to demand a stay of proceedings in order to pursue arbitration, "provid[ed] the applicant for the stay is not in default" of that right. 9 U.S.C. § 3. Such default or waiver arises when the party seeking arbitration "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds., Inc. v. Salus Corp*., 779 F.2d 974, 981 (4th Cir.1985). However, in concert with other circuits, we have consistently held that because of the strong federal policy favoring arbitration "we will not lightly infer the circumstances constituting waiver." *Am. Recovery Corp*., 96 F.3d at 95. The party opposing arbitration on the basis of waiver thus bears a "heavy burden." *MicroStrategy[Inc. v. Lauricia],* 268 F.3d [244] at 251 [(4th Cir.2001)] (internal quotations omitted); *Am. Recovery Corp*., 96 F.3d at 95.

*Patten*, 380 F.3d at 204 (internal citations truncated for use herein). Thus, it is necessary to determine whether W & A has "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice" the plaintiffs. See id.

The plaintiffs argue that W & A's delay in filing its Motion to Compel Arbitration requires denying the motion. However, the Fourth Circuit repeatedly has held that a delay of three months between the filing of a complaint and the filing of a motion to compel arbitration does not alone constitute waiver. *Maxum Founds*., 779 F.2d at 982 (no prejudice in a delay of three months); *In re Mercury Const. Corp*., 656 F.2d 933, 939 (4th Cir. 1981) (same); *Carolina Throwing Co. v. S & E Novelty Corp*., 442 F.2d 329, 330 (4th Cir.1971) (same); *see Patten*, 380 F.3d at 205 (delay of four months not alone prejudicial). Here, W & A only delayed six weeks between the filing of the Amended Complaint and the filing of the Motion to Compel Arbitration. Even if measured from the date the original Complaint was filed, the delay is four months. Such a delay—however measured—is not, standing alone, grounds to find a waiver.

"The movant's participation in litigation activity alone will not suffice [to constitute waiver], as the dispositive question is whether the plaintiffs have suffered any actual prejudice." *Patten*, 380 F.3d at 206. Neither the filing of an answer, counterclaim, *Carolina Throwing*, 442 F.2d at 330, or a declaratory judgment action, *Am. Recovery Corp*., 96 F.3d at 96, nor responding to motions filed by the non-movant, *Patten*, 380 F.3d at 206, nor pursuing discovery that does not prejudice the nonmovant, *Maxum Founds*., 779 F.2d at 982, nor decisions on non-dispositive motions such as unrelated state-law claims or

discovery challenges, *MicroStrategy*, 268 F.3d at 250, will, without a greater showing of prejudice, constitute a waiver.

However, "where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc*., 817 F.2d 250, 252 (4th Cir.1987) (quoting *Price v. Drexel Burnham Lambert, Inc*., 791 F.2d 1156, 1161 (5th Cir. 1986)). By filing its motion for summary judgment, W & A forced the plaintiffs to present their case in the responsive pleading mandated under the Federal Rules of Civil Procedure. In doing so, plaintiffs argue, W & A got a full view of the plaintiffs' case, which enabled W & A to reassess its chances of winning the case and to revise its litigation strategy. Having obtained this strategic advantage, plaintiffs' argue, W & A then shifted strategies and moved to compel arbitration. It did not even file a reply to the plaintiffs' response to the summary judgment motion.

In *Fraser*, the Fourth Circuit found that Fraser, the nonmovant, was prejudiced where Fraser "had to respond to a number of potentially damaging motions, including a motion for partial summary judgment and three motions to dismiss." *Id.* (emphasis added). The district court had granted in part Merrill Lynch's partial motion for summary judgment and, due to delays in pre-trial proceedings, had reset trial dates twice before Merrill Lynch filed the motion to compel arbitration. *Id.* On those grounds, the Court of Appeals held that Fraser had been prejudiced and, therefore, Merril Lynch had waived its right to move to compel arbitration. *Id.*

*Karnette v. Wolpoff & Abramson, L.L.P*., 444 F.Supp.2d 640, 647-49. (E.D. Va., 2006).  Judge

Payne then found waiver because of the Defendants' motions practice that had asked the Court to

rule substantively in its favor.

Here, W & A filed a motion to dismiss and a motion for summary judgment on the Amended Complaint. Both motions, if granted would be dispositive rulings on the merits of the Amended Complaint. Indeed, the Court ruled on the Motion to Dismiss, dismissing Count II of the Amended Complaint. Unquestionably, as a result of W & A's motion to dismiss, the plaintiffs have been prejudiced as to Count II. Although the Court denied the Motion to Dismiss the Amended Complaint as to Count I, the Court nevertheless made a ruling. *See* Order of May 23, 2006 (Docket No. 29). That is, through its dispositive motions, W & A has subjected the plaintiffs to a sort of 'civil jeopardy.' The fact that W & A's motion to dismiss partially failed does not mean that W & A's actions did not cause prejudice to the plaintiffs on those motions.

29.    The Fourth Circuit more recently reiterated and applied the legal standard for waiver when it upheld a denial of a motion to compel arbitration in *Degidio v. Crazy Horse Saloon and Restaurant, Inc.* 880, F.3d 135, 140 (4th Cir. 2018).   The defendant's "litigation activity aimed at obtaining a favorable ruling on the merits of the case" waived its right to later compel arbitration. *Id.* at 141; *see also Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009)(citing *Maxum Founds* for the principle that "a party will default its right to arbitration if it 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'").

30.    When a party's delay in pursuing an arbitration motion causes the other party to incur the costs incident to litigation, prejudice is found. "Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir.1977), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978)." *Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Circ. 1995).   As found by the United States District Court for the Southern District of Florida, "Global waited over eight months after being served with the Complaint to file its Motion to Compel Arbitration. In the meantime, Global participated in the litigation of this dispute in federal court, including attendance at hearings and participation in a mediation conference, without ever attempting to invoke a right to arbitration. Consequently, even if Global has a right to arbitration — which, as discussed below, the Court believes it does not — that right has been waived." *Mims v. Global*, 2011 U.S. Dist. Lexis 90220, August 12, 2011.

31.    A party who first seeks a substantive win in Court and then tries to compel arbitration only if unsuccessful engages in gamesmanship our legal system does not tolerate.

> This all turns the arbitral process on its head. Instead of giving the parties to an arbitration agreement one neutral arbiter, it grants defendant two bites at the apple. It is hard to escape the impression that defendants knew exactly what they were up to, and the district court was quite right to put a stop to it. By treating arbitration as a backstop and as a last resort rather than as a substitute for judicial proceedings, Crazy Horse pushed this case further and further from the FAA's mandate of helping parties resolve disputes expeditiously.

*Degidio*, 880 F.3d at 142.   Nothing is a more substantial use of the Court's machinery than asking the Court to substantively declare the Defendant the winner, and such motions create the 'civil jeopardy' referenced by Judge Payne in *Karnette*.   A defendant cannot go for the win in Court and then later claim the Court never should have decided anything.

32.    Plaintiffs filed their case in June of 2017.   Since that time, Defendants have pursued and partially won a Motion to Dismiss.   Plaintiffs had to respond to that Motion to Dismiss, and then amend their Complaint pursuant to the Court's ruling.   More importantly, Defendants have learned that this Court rejected many of its legal arguments regarding the FDCPA.   Thus, like the Defendants in *Karnette* and in *Degidio*, Defendants have put the Plaintiffs at risk, won partially, but also had some of their substantive arguments rejected. Unhappy with that result, they now want a second bite by changing the forum that should decide this dispute.   Furthermore, seven months into this litigation they now raise the arbitration issue which should have been raised in July 2017 if they had actually wanted this case decided in arbitration.   Just like the defendant in *Degidio* "[b]y treating arbitration as a backstop and as a last resort rather than as a substitute for judicial proceedings, (they) pushed this case further and further from the FAA's mandate of helping parties resolve disputes expeditiously . "

33.     Therefore, Defendants have waived any right to compel arbitration even if they had purchased this right from Synchrony.

**C. Even if Defendants have the right to compel arbitration, the Rule 3001 claim is intrinsic to the bankruptcy process such that arbitration of the Rule 3001 claim should not be compelled.**

34.     The Complaint alleges that Defendants violated Federal Rule of Bankruptcy Procedure 3001(c) by filing false Proofs of Claim, and the Amended Complaint puts before the Court the proof that the original Proofs of Claim were knowingly false.   These violations regard false statements under oath prepared and filed in a systematic process.  When Defendants chose to establish a business model of filing Proofs of Claim, Defendants necessarily chose to subject themselves to the Bankruptcy Rules, procedures and remedies.  This Court has the inherent power to police compliance with Rule 3001 to ensure the orderly administration of the bankruptcy process.

35.     Because the fundamental question for the Rule 3001 claim is the appropriate remedy to apply to Defendants' Proofs of Claim process, an outside arbitration of that remedy necessarily conflicts with the purpose of the Bankruptcy Code.  As stated in *Moses v. Cashcall, Inc.,* 781 F.3d 63, 83-84 (4th Cir. 2015), the question is not just whether this is a core claim but maintaining the efficient process for reorganizing debts.

> The core/non-core distinction, however, is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration. *See Cont'l Ins. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 671 F.3d 1011, 1021 (9th Cir. 2012) ("We agree that the core/non-core distinction, though relevant, is not alone dispositive."); *In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006) ("The core/non-core distinction does not ... affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement."). Instead, what matters fundamentally is whether compelling arbitration for a claim would inherently undermine the Bankruptcy Code's animating purpose of facilitating the efficient reorganization of an estate through the "[c]entralization of disputes concerning a debtor's legal obligations...."

*Phillips v. Congelton, LLC* (*In re White Mountain Mining Co*.), 403 F.3d 164, 170 (4th Cir. 2005).

36.    Whether these Proofs of Claim are truthful and whether they comply with the bankruptcy rules should be decided once, in one forum.  Because the "allowance or disallowance of claims against the estate," 28 U.S.C. § 157(b)(2)(B), is both constitutionally and statutorily core, *see Moses*, 781 F.3d at 70, the extent to which Proofs of Claims materially violate Rule 3001 is central to the operation of this Court.  To effectively carry out these core duties, the Court must necessarily be able to decide the standards by which violations of Rule 3001 are determined.  The Court should not relinquish its control over these standards, and the application of these standards in light of the purposes underlying the Code, to an unfamiliar outside arbitrator.  The centralization of the dispute about compliance with Rule 3001 allows this Court to keep the Rule 3001 claim before this Court, and the determination of what constitutes compliance with this Court's rules justifies the exercise of discretion to void any arbitration agreement that would divest the Court of this power.

**D. Under Rule 3001(c), Defendants should be precluded from presenting the credit card agreements in any form because they failed to provide this contract when requested to provide the writings underlying the claim.**

37.    As more fully set forth in Plaintiffs' Opposition to Defendants' Motion to Dismiss, Defendants do not provide the underlying credit card contract agreement when asked to provide the writings underlying a Synchrony-based claim.  For the reasons set forth in Plaintiffs' Opposition, incorporated here by reference, under Rule 3001(c), Defendants were required to provide the credit card agreement applicable to each Debtor's account when asked.  For Ms. Thomas this request was made in December 2016, and for the other Plaintiffs it was made in the original Complaint.  Defendants' response to each request consists of production of the documents that are part of the Amended Proofs of Claim, which omit the credit contract.

38.     Pursuant to Rule 3001(c)(2)(D)(i) the Court may "preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless . . . ."    Here, Defendants intentionally withheld the credit card agreement when asked to provide the writing underlying each claim.  Then, after six months of active litigation, when it decided those contracts might help it avoid this Court's ruling on the FDCPA claim, it suddenly wants to use those contracts to force Plaintiffs out of Court.  Because its failure to provide those contracts when requested was neither justified nor harmless, this Court should now preclude Defendants from presenting the omitted contracts in any form.

39.     Therefore, because Defendants should be precluded from presenting the credit card contracts, Defendants may not use the terms in those contracts to force Plaintiffs out of court.

## III.

### THE DEFENDANTS' MOTION TO STRIKE THE CLASS ALLEGATIONS SHOULD BE DENIED FOR THE SAME REASONS AS THE ARBITRATION MOTION.

40.     Defendants have also asked the Court to strike the class allegations on the basis of the text of the arbitration clause.  This Motion must also be denied for the same reasons set forth above.

41.     Because Defendants have not shown that the rights in the arbitration clause were actually purchased by them, no portion of it is enforceable by Defendants against Plaintiffs.

42.     Furthermore, even if Defendants had purchased this right, it has waived the rights in the arbitration clause by not seeking to enforce those rights before asking the Court to rule in its favor.

43.     Finally, regarding the Rule 3001 claim, the Court maintains the power to determine appropriate relief for the Defendants' actions in this Court.  If the Court determines that appropriate relief should extend to all similarly situated filings, nothing in the terms of the credit card account agreement limits that power.

## CONCLUSION

Plaintiffs therefore request on behalf of themselves, and the proposed Rule 3001 Class, that the Court deny Midland's Motion to Compel Arbitration, or in the alternative set this matter for a trial on the issue of whether Defendants purchased all of Synchrony's rights in the credit card account contract.  Prior to that trial, Plaintiffs should be entitled to discovery of the pertinent Purchase and Sale Agreements, and to either depose Defendants' affiants or have them appear to be examined at the trial.

Respectfully submitted,
**KAREN M. THOMAS**
**and**
**GARY L. BROOKS, JR.  and MARY M.**
**GILESPIE-BROOKS**
*individually and on behalf of a class of*
*similarly situated individuals*

/s/Hannah W. Hutman_____
**HOOVER PENROD, PLC**
Grant D. Penrod (VSB No. 65818)
gpenrod@hooverpenrod.com
Hannah W. Hutman  (VSB No. 79635)
hhutman@hooverpenrod.com
Beth C. Driver (VSB No. 83838)
bdriver@hooverpenrod.com
342 S. Main Street
Harrisonburg, VA  22801

540-433-2444
*Co-Counsel for the Plaintiffs*

and

Thomas D. Domonoske (VSB No. 35434)
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone (540) 442-7706
tom@clalegal.com
*Co-Counsel for the Plaintiffs*

and

Timothy E. Cupp (VSB No. 23017)
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Ave.
PO Box 589
Harrisonburg, Virginia 22803
(540) 432-9988 (telephone)
cupp@scs-work.com
*Co-Counsel for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the *Plaintiffs' Response In Opposition To Motion To Compel Arbitration And Memorandum In Support* was electronically served through the Court's ECF system on all those parties registered to received notices and by first class mail to the parties listed below:

Timothy G. Moore, Esq.                          Jason B. Tompkins, Esq.
James K. Donaldson, Esq.                       Chase T. Espy, Esq.
Spotts Fain PC                                        Balch & Bingham LLP
411 East Franklin Street                          1901 Sixth Avenue North, Suite 1500
Suite 600                                               Birmingham, AL 35203-4642
Richmond, VA 23219


this 7th day of March, 2018

                                                         /s/Hannah W. Hutman_____
                                                         Hannah W. Hutman, Counsel