**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **Case No. 16-50612** |
| | : | |
| **KAREN M. THOMAS** | : | **Chapter 13** |
| Debtor(s) | : | |
| | : | **Judge Rebecca B. Connelly** |
| | : | |

| | | |
|---|---|---|
| **IN RE:** | : | **Case No.  16-50396** |
| | : | |
| **GARY L. BROOKS, JR.** | : | **Chapter 13** |
| **MARY M. GILLESPIE-BROOKS** | : | |
| Debtor(s) | : | **Judge Rebecca B. Connelly** |
| | : | |

| | | |
|---|---|---|
| **KAREN M. THOMAS,** | : | **ADV. PRO. NOS.** |
| and | : | |
| **GARY L. BROOKS, JR.  and** | : | **17-AP-05009 and 17-AP-05010** |
| **MARY M. GILLESPIE-BROOKS,** | : | |
| *individually and on behalf of a class* | : | |
| *of similarly situated individuals,* | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MIDLAND FUNDING LLC, and** | : | |
| **MIDLAND CREDIT** | : | |
| **MANAGEMENT, INC.,** | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**

1.      The Plaintiffs, Karen M. Thomas, Gary L. Brooks, Jr., and Mary M. Gillespie-Brooks, by counsel, submit this memorandum in opposition to the Motion for Partial Summary Judgment (Doc. 84) filed by the Defendants, Midland Funding LLC and Midland Credit Management, Inc. (collectively "Midland").   Midland's Motion for Partial Summary Judgment should be denied because material facts are in dispute and because Midland has prevented the Plaintiffs from obtaining discovery related to its Motion by filing the Motion after the deadline to propound discovery in the Court's scheduling Orders (Doc. 68 and Doc. 71).   Moreover, Midland's legal arguments – that it complied with the law and that no remedies remain available to the Plaintiffs if it did not comply – are incorrect.   Midland knowingly made false statements under oath to the Court in Plaintiffs' cases by stating that no interest or fees were included in its Proofs of Claim.   These knowingly false statements were neither "substantially justified" nor "harmless" as Midland argues.   Even after filing Amended Proofs of Claim, Midland continues to fail to comply with the Bankruptcy Rules by not providing the contracts upon which the claims are based and by not separately itemizing interest and fees.   Midland's violations are punishable under both the Fair Debt Collection Practices Act and Rule 3001.

## I.

## PROCEDURAL BACKGROUND

2.      This is an action for damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Federal Rules of Bankruptcy Procedure (each a "Rule" collectively "Rules") 3001.   This action was filed on June 14, 2017 (the "Complaint") and Plaintiffs asked to have each claim certified as a class claim brought on behalf of similarly situated people.

3.     Defendants filed their first Motion to Dismiss and Memorandum in Support ("First Motion to Dismiss") (Doc. 4) seeking to dismiss Plaintiffs' claims. This First Motion to Dismiss asked the Court to rule in Defendant's favor on the following six legal issues:

a.   That a false assertion that no interest and fees were included in a proof of claim is not a material violation of the FDCPA because it would have no effect on any decision making;

b.   That a false sworn declaration by a Midland representative that it had a reasonable belief in the accuracy of the information is not actionable under the FDCPA;

c.   That Plaintiffs' FDCPA § 1692f claim failed as a matter of law because the Amended Proofs of Claim showed that Midland would provide a "charge off statement" from the original creditor when asked for the writing underlying the claim and that this complied with Rule 3001(c)(3)(B);

d.   That Plaintiff's FDCPA § 1692f claim failed as a matter of law because the original Proofs of Claim included an itemization pursuant to Midland's normal process, which even though it was wrong, was not actionable as an unfair or unconscionable practice;

e.   That the claim for a violation of Rule 3001 failed because no claim is allowed to be stated for such a violation; and

f.   That the claim for a violation of Rule 3001 failed because an amended claim was filed that Midland alleges did comply.

4.     On November 30, 2017, this Court decided the issues presented by the first Motion to Dismiss and issued its Memorandum Opinion. (Doc. 13).  Regarding the FDCPA

claims, the Court specifically found that Plaintiffs had properly plead a material misrepresentation in violation of FDCPA's section 1692e.  The Court also specifically ruled that, accepting the allegations of the Complaint as true, the Complaint "does allege violations of Rule 3001, a practice knowingly violating the Rule, and practice of hindering a debtor's ability to readily obtain information regarding the claim." (Memorandum Opinion, Doc. 13, pg. 12).  The Court then specifically found that the Complaint also properly plead a violation of section 1692f of the FDCPA.  Regarding the Rule 3001 claim, the Court held that despite the Complaint pleading a violation of Rule 3001, additional facts were necessary regarding the relief requested and the basis for that relief.  Plaintiffs then filed an Amended Complaint pursuant to the Court's Order. (Doc. 16).

5.      On February 1, 2018, Defendants filed a Motion to Dismiss the Amended Complaint (Doc. 20) and raised many of the same arguments previously decided by this Court.

6.      After briefing and argument, this Court then ruled that Plaintiffs' Amended Complaint properly alleges Midland's violations of the FDCPA and Rule 3001 (Doc. 46).  The Court specifically found that Plaintiffs properly plead a material misrepresentation in violation of section 1692e regarding the original Proofs of Claim filed by Midland.  The Court then specifically found that the Complaint also properly plead a violation of section 1692f regarding both the original Proofs of Claim and the Amended Proofs of Claim.  The Court cited "its previous ruling 'that Rule 300 requires substantive information: the amount of interest and fees must be disclosed. The information may inform the debtor, trustee, or other creditors if a legal challenge is appropriate. . . . Because Rule 3001 requires a proof of claim to disclose details regarding interest and fees, and this information could inform the plaintiff along with other parties in interest whether a legal challenge is appropriate . . . .'" (Doc. 46, p. 11).  The Court

then explained that even if the Amended Claims did not make a misrepresentation, the alleged violation of Rule 3001 for failing to itemize the interest and itemize the fees combined with a practice of withholding the credit card agreement does plead a cause of action under section 1692f.  The Court carefully noted that it made this determination "[w]ithout ruling on the merits." (Doc. 45, p. 13).

7.      Regarding the Rule 3001 claim, the Court upheld the Amended Complaint and stated that Plaintiffs could seek the relief they requested.  The Court detailed how the allegations, assuming they were true, stated claims for relief.  The Court also expressly held that under Rule 3001 the Court had the authority, if the merits were proven, to grant the requested relief under Rule 3001. (Doc. 45, p. 15).

8.      After resolution of Midland's Appeal to the United States District Court regarding this Court's arbitration ruling, Midland filed its Answer to the Amended Complaint (Doc. 56) on September 26, 2019.  The Court entered a pretrial Order on October 2, 2019, (Doc. 57) that set a pretrial conference for November 5, 2019. Plaintiffs filed an Answer to Midland's Counterclaim on October 1, 2019. (Doc. 59).  At Midland's request, the pretrial conference was continued and the parties submitted a Joint Rule 26(f) Report (Doc. 63) on November 18, 2019.  The Court conducted a pretrial conference on November 19, 2019, which was continued to allow the parties time to determine what stipulations could be made about the disputed facts.

9.      On December 17, 2019, the pretrial conference was concluded and the Court provided the parties with a scheduling plan. (Doc. 65).  The scheduling plan was reduced to an Order on February 6, 2020 (Doc. 68), and was further clarified by the Stipulated Order Regarding Discovery entered on February 13, 2020 (Doc. 71). Plaintiffs' discovery had to be

completed by April 20, 2020, and was specifically limited to class certification issues and any issues raised by a Motion for Summary Judgment filed by Midland, if Midland chose to file one.

10.     As shown by the Joint Rule 26(f) Report (Doc. 63), and as discussed on November 19, 2019, and December 17, 2020, Midland repeatedly stated that it wanted to file a Motion for Summary Judgment prior to any class certification process. The Court allowed it permission to file its Motion for Summary Judgment at any time, and then specifically allowed Plaintiffs to pursue discovery regarding any factual issues necessary to respond to that Motion as long as Plaintiffs' discovery was completed by April 20, 2020.  The Court provided ample time from December 17, 2019 to April 20, 2020, for Midland to file its Motion for Summary Judgment and for Plaintiffs to conduct the necessary discovery so that any Motion for Summary Judgment could be heard and decided at the same hearing as Plaintiffs' Motion for Class Certification.

11.     Plaintiffs initiated discovery on the class certification issues in January 2020 (Doc. 66 and Doc. 67). Because Midland would not provide pertinent information, Plaintiffs pursued a Motion to Compel Discovery (Doc. 73) and a motion regarding the terms of a protective order (Doc. 72). Based on the information received, Plaintiffs filed further discovery on the class certification issues on March 17, 2020 (Doc. 76), and then filed their Motion for Class Certification (Doc. 83).  Plaintiffs were not able to file discovery related to any summary judgment issues because Midland had not yet filed any Motion for Summary Judgment prior to the April 20, 2020 deadline for the Plaintiffs to complete discovery.

12.     Midland waited until May 11, 2020 to file its Motion for Partial Summary Judgment. It seeks summary judgment on three issues: that an FDCPA claim is precluded as a matter of law; that the Amended Proofs of Claims comply with Rule 3001; and that Midland is

not subject to any sanctions under Rule 3001 regarding the original Proofs of Claims, or in the alternative that such sanction be limited. Midland, as the plaintiff in the Counterclaim, is specifically asking for judgment on the part of its Counterclaim that would give it a complete victory over Plaintiffs' claims. Thus, Midland has put the entire case in issue.

13.     Plaintiffs oppose Midland's request for summary judgment on the grounds set forth below, including that any ruling about the violations of Rule 3001 should be deferred until the Court allows Plaintiffs permission to conduct discovery in the following areas:

a.      Why Midland continued filing proofs of claim with false statements in the Western District of Virginia after September 2016;

b.      What Midland relied upon prior to September 2016 for how it filed proofs of claim;

c.      Why Midland does not provide the credit contract underlying a proof of claim when the documents underlying a claim are requested;

d.      Whether or not it would be difficult for Midland to provide the credit contract underlying a proof of claim when the documents underlying a claim are requested;

e.      Any additional costs Midland would incur for providing the credit contract when requested, and how those costs compare to the money Midland expects to make on its bankruptcy portfolios;

f.      Why Midland told the United States Supreme Court that Rule 3001 required it to provide the credit contract on request but now claims otherwise;

g.   To what extent Synchrony Bank provides Midland with the separate itemization of the fees and interest embedded in any credit card account when it transfers data to Midland;

h.   Whether or not it would be difficult for Synchrony Bank to provide Midland with the separate itemization of the fees and interest embedded in any credit card account when it transfers data to Midland if Synchrony Bank does not already provide that information;

i.    Why Midland resists separately itemizing fees and interest on proofs of claim;

j.   Whether or not it would be difficult for Midland to adjust its computer system to file proofs of claim that provide the separate itemization of fees and interest rather than just their total;

k.   Any additional costs Midland would incur for the separate itemization, and how those costs compare to the money Midland expects to make on its bankruptcy portfolios; and

l.   The separate itemization of interest and fees for Claim 10 filed against Gary Brooks in his bankruptcy, and the basis for the interest and the basis for the fees.

m.   The extent to which Midland has amended any other proofs of claims in the Western District of Virginia to correct misrepresentations made under penalty of perjury.

14.   Plaintiffs' counsel has provided a declaration stating that the factual issues set forth for discovery above are materially relevant to Plaintiffs' opposition to Midland's claims in

its Motion for Partial Summary Judgment that it complied with the law, that any violations of the law were "substantially justified" or "harmless", and that the Plaintiffs are not entitled to a remedy.

## II.

### <u>STANDARD FOR SUMMARY JUDGMENT</u>

15.     Under Fed. R. Bankr.P. 9014(c), in any contested matter Fed. R. Bankr.P. 7056 shall apply.   Pursuant to Fed. R. Bankr.P. 7056, summary judgment may be sought under Rule 56 of the Federal Rules of Civil Procedure.   Under Rule 56, partial summary judgment shall be granted only when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).[1]

16.     Under Rule 56, the movant must support its factual position by citation to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).   In deciding a motion for summary

---

[1] Amendments to Fed. R. Civ. P. 56 were made effective December 1, 2010, but those amendments did not fundamentally change operation of this rule. Concerning former Rule 56(d), the comments of the Judicial Conference on the rules changes explain, among other things, that the amendments to Rule 56 are "to improve the procedures for presenting and deciding summary-judgment motions, to make the procedures more consistent across the districts, and to close the gap that has developed between the rule text and actual practice . . . [but] not intended to change the summary-judgment standard or burdens." One of these "salient changes" was to also "explicitly recognize that 'partial summary judgments' may be entered." Summary Of The Report Of The Judicial Conference Committee On Rules Of Practice And Procedure, recommended September 9, 2009, approved April 28, 2010; implemented December 2, 2010, pursuant to the Rules Enabling Act, 28 U.S.C. § 2072.

judgment, this Court is bound to construe all facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

17.     Under Rule 56(c)(1)(B), the movant may demonstrate the absence of a material dispute several ways, including by showing that a non-movant cannot produce admissible evidence to establish or controvert a fact.  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.  The court must inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411, 415 (E.D. Va. 1997)(quoting *Anderson*, 477 U.S. at 251-52).

18.     When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *U.S. v. National Financial Services, Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).  In this process, the court prevents factually unsupported issues, whether claims or defenses, from proceeding to trial. *See U.S. v. National Financial Services, Inc.*, 820 F.Supp. 228, 231 (D. Md. 1993), affirmed 98 F. 3d 131 (4th Cir. 1996) (citing *Felty v. Graves-Humphreys, Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

19.     In this case, Plaintiffs as the non-movants may not merely rest on conclusory denials or defenses but must present evidence demonstrating that there is a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004); *see also Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp. 2d 852, 868 (E.D. Va. 2009)(explaining that "a party who raises an affirmative defense but fails to make a sufficient

showing on an element of that defense may not defeat summary judgment for the plaintiff"). The court may not weigh the evidence or attempt to determine the truth of the matter, but only determine whether the evidence of record is such that no trier of fact could return a verdict for the non-moving party. *Id*.

20.     Rule 56(d)[2] states:

> (d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

"Generally speaking, summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition. At the same time, the party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)(quotations removed)(quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n. 5 (1986) and *Evans v. Technologies Applications & Service Co*., 80 F.3d 954, 961 (4th Cir.1996)).

21.     The non-moving party does not always need to file a supporting affidavit to satisfy the requirements of Rule 56(d). "When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a Rule 56(f) affidavit if the nonmoving

---

[2] Rule 56(d) was formerly Rule 56(f) prior to the 2010 amendments.  "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Committee Notes on Rules-2010 Amendments *Subdivision (d)*.

party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." *Id.* at 245 (citing prior version of Rule 56).

III.

### PLAINTIFFS' LIST OF MATERIAL FACTS INCLUDING THOSE THAT ARE DISPUTED, UNDISPUTED, AND ON WHICH PLAINTIFFS NEED DISCOVERY.

**A.      Material Undisputed Facts**

22.      Each of the Plaintiffs filed for relief under Chapter 13 of Title 11 U.S. Code in the Bankruptcy Court for the Western District of Virginia. (Answer to Paragraph 12 of the Amended Complaint).

23.      Each of the Plaintiffs listed one or more debts to Synchrony Bank in their schedules filed as part of their bankruptcy. (Answer to Paragraph 13 of the Amended Complaint).

24.      After Synchrony Bank received notice of each of the Plaintiffs' bankruptcy filings, it transferred data in a computerized form about those debts to Midland pursuant to the terms of a written agreement. (Burger Declaration, Doc 21-2, attached hereto as **Exhibit 1**, Para. 7, 11, 15; Redacted Receivables Purchase, Doc 40, attached hereto as **Exhibit 2,** pg. 35 of 44).

25.      Under that agreement, Midland receives electronic information from the seller and uploads that information into Midland's filing system. (Bedoya deposition, attached hereto as **Exhibit 3**, pg. 43:1-12).

26.      The people at Midland who sign proofs of claims are called bankruptcy specialists. (Bedoya deposition, pg.  60:16-22).

27.      Midland employs fifteen to twenty bankruptcy specialists who work in Michigan and file proofs of claims all over the country. (Bedoya deposition, pg.  60:23-61:19, 62:16-18).

28.     The bankruptcy specialists file between 400 to 600 proofs of claim per day, five days a week. Bedoya deposition, pg.  64:4-22).

29.     Under its system, Midland pre-populates the proof of claim form for the bankruptcy specialist whose electronic signature will be on the document as filed, including pre-populating the check box that indicates whether or not interest is included in the claim. (Bedoya deposition, pg. 104:2-108:21).

30.     The bankruptcy specialist does have to type in their own name for the signature. (Bedoya deposition, pg. 108:22-23).

31.     The bankruptcy specialist who electronically signs the claim form does not look at the data summary provided by Synchrony Bank. (Bedoya deposition, pg. 111:1-12).

32.     A Midland manager creates a physical printout for the bankruptcy specialist to use to verify the information. (Bedoya deposition, pg. 111:15-112:11).

33.      For Synchrony Bank accounts, that physical printout does not include the "accrued interest" data that Midland is given by Synchrony Bank. (Bedoya deposition, pg. 112:23-113:12-22).

34.     The bankruptcy specialist who electronically signs the claim form does not have access to the "accrued interest" amount from the data summary from Synchrony Bank. (Bedoya deposition, pg. 112:12-22, 114:2-13).

35.      Even the manager who prints out the physical document does not have access to the "accrued interest" amount from the data summary from Synchrony Bank. (Bedoya deposition, pg. 114:14-115:2).

36.    Midland claims it requires its bankruptcy specialists to verify the information in a a proof of claim before signing it. (Bedoya deposition, pg. 152:6-13, as amended on the errata sheet).

37.    For each of the debts that Plaintiffs had listed as due to Synchrony, Midland filed or caused to be filed proofs of claim (collectively the "Proofs of Claim" each a "Proof of Claim") that are attached as Exhibits to the Amended Complaint. (Answer to Paragraph 13 of Amended Complaint).

38.    Ms. Thomas scheduled a debt of $637.82 as owed to Synchrony Bank, and Midland filed a Proof of Claim for $689.34. (Answer to Paragraph 16 of Amended Complaint).

39.    Mr. Brooks scheduled a debt of $3,646.44 as owed to Synchrony Bank, and Midland filed a Proof of Claim for $3,755.75. (Answer to Paragraph 17 of Amended Complaint).

40.    Ms. Gillespie-Brooks scheduled a debt of $616.26 as owed to Synchrony Bank, and Midland filed a Proof of Claim for $662.85. (Answer to Paragraph 17 of Amended Complaint).

41.    For each claim, Midland asserted under oath that the claim amount did not include interest or other charges.  (Exhibit 1, 2, 3 to Amended Complaint).

42.    As part of a normal procedure, Synchrony Bank provided Midland information about such claims and that information shows that the principal is less than the claim amount. (Burger Declaration, Doc. 21-2, with the attached documents received from Synchrony Bank that charge-off principal is less than amounts called "finance charges" at pg. 48 of 133, pg. 101 of 133, and pg. 131 of 133).

43.    As used between Midland and Synchrony Bank, the term "finance charges" and "accrued interest" refer to the same number. (Burger Declaration, Doc. 21-2, compare "accrued

interest" amounts at pg. 12 of 133, pg. 53 of 133, and pg. 108 of 133, with "finance charges" amounts at pg. 48 of 133, pg. 101 of 133, and pg. 131 of 133).

44.     In September 2016, Midland was notified that its practice of filing proofs of claim that misrepresenting that zero interest and zero fees are included in the claim amount when it knows otherwise is unlawful in the case of *In re Rachel R. Maddux*, Case No. 15-33574-KRH, in the U.S. Bankruptcy Court for the Eastern District of Virginia ("*In re Maddux*").   (Summary Judgment Order dated September 19, 2016, Ex. 4 to Complaint).

45.     Regarding the claim Midland filed against Ms. Gillespie Brooks, Midland knew that the $136.35 in "Finance Charges" equaled the sum of the Total Fees and Total Interest charged in 2016. (Burger Declaration, Doc. 21-2, pg. 131 and 132 of 133).

46.     In its contract with Synchrony Bank, Midland was purchasing only receivables associated with credit card contracts where the debtor had declared bankruptcy under Chapter 13. (Receivable Purchase Agreement).

47.     Midland bought receivables that had been included in bankruptcy because it had implemented a system for filing proofs of claims. (Bedoya deposition, pg. 33:12-34:8).

48.     Prior to filing its own proofs of claims, Midland had a contract with American InfoSource to file claims for it. (Bedoya deposition, pg. 25:20-26:8).

49.     To ensure that the forms were filled out correctly by their system, Midland consulted with only its in-house counsel instead of outside attorneys. (Bedoya deposition, pg. 36:25-37:24).

50.     The quality control officers responsible for how Midland fills out proofs of claims are based out of India. (Bedoya deposition, pg. 152:24-153:22).

51.    After receiving the summary judgment ruling in *Maddux* in September 2016, Midland quickly stopped filing claims in the Eastern District of Virginia without changing how it was filing claims elsewhere in the country. (Bedoya deposition, pg. 136:19-138:14).

52.    Midland filed its Proof of Claim in Ms. Thomas's bankruptcy on December 16, 2016. (Exhibit 1 to Amended Complaint).

53.    Midland's normal practice, when asked for the documentation underlying a claim based on an open-end account, is to send documents that do not include the credit card account agreement. (Email from Counsel at Doc. 83, Exhibit B, attached hereto as **Exhibit 4**, pg. 36-37 of 71, Bedoya deposition, 97:17-98:6).

54.    For the Plaintiffs, the credit card account agreement contains the choice of law clause that applies to the credit card account. (Defendant's Counterclaim, Para. 59 through 61).

55.    In the *Maddux* litigation, Midland took the position that it did not have the credit card account agreement for receivables it had purchased from Synchrony Bank, and the case was decided upon that assertion. (Midland's Discovery Responses in *Maddux* which did not include it, attached hereto as **Exhibit 5**, Bedoya deposition, pg. 60:3-11, 97:17-98:6, Plaintiff's Post-trial brief, attached hereto as **Exhibit 6**, pg. 17-18).

56.    In the *Maddux* litigation, Midland asked the Court to determine that less than full compliance may be substantially justified or harmless for debt buyers because "the sometimes imperfect account information they obtain from sellers is sufficient to allow them to participate in the claims process." (Midland's *Maddux* brief, filed November 3, 2016, attached hereto as **Exhibit 7**, pg. 23).

57.    As part of what it receives from Synchrony Bank, Midland does have access to the credit card account agreement. (Burger Declaration, Doc 21-2, Para. 7, 11, and 15).

58.     Midland has and will use the credit card agreement when it perceives an advantage in doing so. (Midland's Motion to Compel Arbitration, Doc. 21, relying on credit card account agreement).

59.     In the case *Midland v. Johnson,* Midland filed a Reply Brief in the United States Supreme Court on January 6, 2017, under the signature block of one of its current counsel in this matter. (Exhibit 10 to the Amended Complaint, of which the Court can take judicial notice).

60.     On page 4 of Exhibit 10, Midland explained that in bankruptcy actions, the trustee bears the burden of investigating claims. (*Id.*).

61.     On page 6 of that brief, Midland explained that the statute of limitation issue requires a threshold choice of law analysis, "including the consideration of any choice-of-law provision in the underlying credit agreement." (*Id.*).

62.      On page 6 of that brief, Midland provided the following legal citation "Cf. Fed. R. Bankr. 3001(c)(3)(B) (requiring that the credit agreement be sent on request to any party in interest." (*Id.*).

63.     On page 13 of that brief, Midland again explained that the Bankruptcy Code relies on the trustee to investigate claims. (*Id.*).

64.     Midland's Reply Brief to the United States Supreme Court then argued that, under the bankruptcy rules, creditors supply sufficient information to put parties in interest on notice as to the existence of possible defenses when it wrote "the procedures set out by the Code and the Rules, including the disclosures required by Rule 3001, make it much easier for the trustee, other creditors, or the debtor to identify and raise a timeliness objection." (*Id.*, pg. 17).

65.     When Midland told the United States Supreme Court that Rule 3001(c)(3)(B) "require[es] that the credit agreement be sent on request to any party in interest", its actual

practice did not include providing the card credit agreement when requested. (*Id.,* filed in January 2017, Bedoya deposition, pg. 97:17-98:6 taken in September 2016).

66.     When Midland explained to the United States Supreme Court that the credit card agreement was required to be provided by Rule 3001(c)(3)(B) and was relevant for a claim to be analyzed, in the same month it argued in *Maddux* that Rule 3001(c)(3)(B) provides no such requirement and that the agreement has no relevance to determining a claim's validity. (Midland brief filed January 24, 2017, attached hereto as **Exhibit 8**, pg. 2-4).

67.     As one of the largest purchasers of debt in the country, Midland is one of many competitors. (Bedoya deposition, pg. 185:10-20).

68.     Midland decides whether to take part in bidding on any bankruptcy portfolio. (Bedoya deposition, pg. 185:25-186:11).

69.     Midland has not amended its proof of claims in all the other cases in the Western District that are similarly situated to Plaintiffs. (Attached hereto as **Exhibit 9**, are claim 11 and 12 filed in Case No. 16-50374, and as **Exhibit 10**, claim 6 filed in Case No. 16-50105, and the Court can take judicial notice that no amended claims have been filed).

70.     Other claims filers can file claims for open-end accounts that separately itemize the interest and the fees embedded in the claim. (Case No. 16-50396 of this Court; Claims 8, 4, 5, and 7, attached hereto as **Exhibit 11, 12, 13 and 14**; Case No. 17-30142-KRH, in United States Bankruptcy Court for the Richmond Division of the Eastern District of Virginia, **Exhibit 15**).

71.     If the Court believes that any of the facts above are not supported enough by sufficient evidence for them to be treated as undisputed, Plaintiffs request that such facts be treated as material disputed facts.

## B. Material Disputed Facts

72.     When Midland purchases information from Synchrony Bank regarding a portfolio of accounts in bankruptcy, it knows it should to be ready to comply with a request from any interested party, whether a trustee, creditor, or debtor, for a copy of the writing underlying the claim.  (Amended Complaint alleges this in Paragraph 38 and 39 but Defendants deny. Plaintiff asserts that the Court can take judicial notice of this as a disputed fact without more evidence.)

73.     If Synchrony Bank were to file its own claims, Synchrony Bank would be able to determine the interest that is included in the claim amount. (All of the account statements attached to the Burger Declaration show Synchrony tracks the total interest assessed each year and the total interest paid each year, and thus at charge-off the interest in the total claim amount will be the difference between the total interest assessed on the account and the total interest paid on the account. Plaintiff asserts that the Court can take judicial notice of this as a disputed fact without more evidence.)

74.     If the Court believes that any of the facts are not supported enough by the evidence presented to raise a disputed issue of fact, Plaintiffs request that these facts be treated as facts on which Plaintiffs are requesting discovery.

## C. Material Facts for which Plaintiffs need discovery

75.     Why Midland continued filing proofs of claim with false statements after September 2016;

76.     What Midland relied upon prior to September 2016 for how it filed proofs of claim;

77.     Why Midland does not provide the credit contract underlying a proof of claim when the documents underlying a claim are requested

78.     Whether or not it would be difficult for Midland to provide the credit contract underlying a proof of claim when the documents underlying a claim are requested;

79.     Any additional costs Midland would incur for providing the credit contract when requested, and how those costs compare to the money Midland expects to make on its bankruptcy portfolios;

80.     Why Midland told the United States Supreme Court that Rule 3001 required it to provide the credit contract on request but now claims otherwise;

81.     Whether or not Synchrony Bank provides Midland with the separate itemization of the fees and interest embedded in any credit card account when it transfers data to Midland;

82.     Whether or not it would be difficult for Synchrony Bank to provide Midland with the separate itemization of the fees and interest embedded in any credit card account when it transfers data to Midland if Synchrony Bank does not already provide that information;

83.     Why Midland resists separately itemizing fees and interest on proofs of claim and the extent to which Midland has amended any other proofs of claims in the Western District of Virginia to correct misrepresentations made under penalty of perjury;

84.     Whether or not it would be difficult for Midland could adjust its computer system to file proofs of claim that provide the separate itemization of fees and interest rather than just their total; and

85.     Any additional costs Midland would incur for the separate itemization, and how those costs compare to the money Midland expects to make on its bankruptcy portfolios.

86.     The separate itemization of interest and fees for Claim 10 filed against Gary Brooks in his bankruptcy, and the basis for the interest and the basis for the fees.

IV.

**THE BANKRUPTCY CODE DOES NOT PRECLUDE
PLAINTIFFS' FDCPA CLAIMS.**

87.     Plaintiffs' first claim in this case is for violations of the FDCPA.  The FDCPA is

a remedial statute, the purpose of which is to "eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses." 15 U.S.C. § 1692e.  The provisions of the FDCPA at

issue in this case, sections 1692e and 1692f, were passed to prohibit debt collectors from specific

improper conduct when seeking to collect alleged debts.

**A.     *Midland Funding LLC v. Johnson* decided only the narrow issue that filing a claim
in compliance with Rule 3001(c) is not a violation of the FDCPA when the claim is time-
barred.**

88.     Midland relies heavily in its Memorandum in Support of Motion for Partial

Summary Judgment on the United States Supreme Court's ruling in *Midland Funding, LLC v.

Johnson*.  Midland argues, incorrectly, that the holding in that case is a broad statement that a

violation of Rule 3001 is not actionable as a violation of the FDCPA.  The United States

Supreme Court's ruling is not so broad, and is limited to the more narrow issue of filing proofs

of claim for which the statute of limitations has expired.

89.     In *Midland Funding, LLC v. Johnson*, the United States Supreme Court held that

"Midland's filing of a proof of claim that on its face indicates that the [statute of] limitations

period has run" is not "false, deceptive, or misleading representation" under 15 U.S.C. 1692e,

and that by doing so Midland was not using "unfair or unconscionable means" to collect, or

attempt to collect, a debt under 15 U.S.C. 1692f.  581 U.S.  ----, 137 S.Ct. 1407, 1411 (2017).

The Court began its analysis by giving "claim" under 11 U.S.C. §101(5) "the broadest available

definition," based on *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150 (1991). This broad view of claim, the Court explained, encompasses even unenforceable claims such as those Midland filed. *Midland Funding, LLC*, 137 S.Ct. at 1412.

90.     Because of the Bankruptcy Code's system of inviting creditors to file a claim, "whether or not such right is ... fixed, contingent, ... [or] disputed," 11 U.S.C. 101(5), subject to the right of any party in interest to object and have unenforceable claims disallowed, the filing of a time-barred debt was not "false" under the FDCPA. *Id.*  Likewise, the Court saw nothing "misleading or deceptive" in a properly-filed proof of claim.  This was so because the "audience" for the proof of claim includes a sophisticated Chapter 13 trustee, whose duties include "examin[ing] proofs of claim and, where appropriate, pos[ing] an objection." *Id.* at 1413, citing 11 U.S.C. 1302(b)(1).  Essential to the Court's conclusion was that the trustee would have ready access, through the Bankruptcy Rules, to the information to determine when to pose an objection.  Also essential to the Court's conclusion that filing a time-barred claim did not violate the FDCPA was the Court's finding that the claim in issue had been properly and accurately filed.

91.     Although the Court understood that Midland's practice of purchasing stale debts for the purpose of filing claims in bankruptcy more closely appeared "unfair" or "unconscionable," it also found no violation of 15 U.S.C. § 1692f.  *Midland v. Johnson*, 137 S.Ct. at 1413.  Even though the Court noted numerous decisions holding that 15 U.S.C. § 1692f is violated by a civil suit to collect stale debts, the Court explained, "the context of a civil suit differs significantly from the present context, that of a Chapter 13 bankruptcy proceeding." *Id*. Specifically, the Court viewed compliance with the bankruptcy rules as providing more

structural protections for Chapter 13 debtors, reducing the risk that they will be duped into

paying a stale debt:

> These considerations have significantly diminished force in the context of a
> Chapter 13 bankruptcy. The consumer initiates such a proceeding and
> consequently the consumer is not likely to pay a stale claim just to avoid going to
> court. A knowledgeable trustee is available.  Procedural bankruptcy rules more
> directly guide the evaluation of claims.  And, as the Eighth Circuit Bankruptcy
> Appellate Panel put it, the claims resolution process is "generally a more
> streamlined and less unnerving prospect for a debtor than facing a collection
> lawsuit."  These features of a Chapter 13 bankruptcy proceeding make it
> considerably more likely that an effort to collect upon a stale claim in bankruptcy
> will be met with resistance, objection, and disallowance.

*Id.* at 1413-1414 (citations omitted).

92.     As part of its decision, the United States Supreme Court discussed the different

purposes of the FDCPA (one perhaps even helping consumers avoid bankruptcy) and the

Bankruptcy Code, with its "delicate balance of a debtor's protections and obligations." *Id*. at

1414-15.  In reversing the Eleventh Circuit Court of Appeals' decision, the Court's majority

opinion did not address the lower court's holding that "[t]he Bankruptcy Code does not preclude

an FDCPA claim in the context of a Chapter 13 bankruptcy when a debt collector files a proof of

claim it knows to be time-barred." *Johnson v. Midland Funding*, LLC, 823 F.3d 1334, 1338

(11th Cir. 2016).  Instead, the Court confined its ruling to one specific issue – whether "filing (in

a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred is . . . a false,

deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of

the Fair Debt Collection Practices Act."  *Midland v. Johnson*, at 1415-1416.  On this issue, the

dissenting opinion notes that "the Court does not hold that the Bankruptcy Code altogether

displaces the FDCPA, leaving it with no role to play in bankruptcy proceedings. Such a

conclusion would be wrong." *Id.* at 1419 (Justice Sotomayor, joined by Justice Ginsburg and

Justice Kagan).

93.     To properly apply *Midland v. Johnson* to non-statute-of-limitations issues, the narrow scope of its holding and its factual basis must be respected. In *Midland v. Johnson*, because of the purported compliance with the Bankruptcy Rules, the claim "on its face indicate[d] that the [statute of] limitations period ha[d] run." *See id*. at 1412.  Because Midland adhered to Federal Rules of Bankruptcy Procedure 3001(c)(3)(iv), which requires creditors to file a statement with claims based on open-end credit such as Midland's indicating "the date of the last payment on the account", anyone with knowledge of the applicable state law could then evaluate whether the applicable statute of limitations had expired.  Because the proofs of claim contained accurate information about the debt, the trustee, other creditors, or debtors, could use that information, along with the information obtained in a request for the writings underlying the claim, to decide whether to object to the claim.  By asserting that it complied with the procedural requirements, Midland argued that it properly provided the accurate information which the "streamlined" claims process in Chapter 13 requires to work properly.  Thus, the core reason the claims were not "false, deceptive, or misleading representation[s]" under 15 U.S.C. 1692e and not "unfair or unconscionable" under 15 U.S.C. 1692f is that they provided truthful information in compliance with the rules that create the "delicate balance" within bankruptcy procedure.  *Id.* at 1413.

94.     The United States Supreme Court did not want to upset that delicate balance by holding that accurate information on a proof of claim filed in compliance with the Bankruptcy Rules could subject a creditor to FDCPA liability.

**B.** *Midland v. Johnson* **supports Plaintiffs' FDCPA claim against Midland because Midland systematically violated Rule 3001(c) of the Federal Bankruptcy Rules, including by filing false information and refusing to provide requested documents.**

95.     Unlike the circumstances in *Midland v. Johnson*, which hinged on Midland's compliance with the rules, Plaintiffs' claims here allege repeated and systematic noncompliance with the rules: a complete inverse of the facts ruled upon by the United States Supreme Court. Where in *Midland v. Johnson* the United States Supreme Court believed that Midland would provide accurate information to determine when the statute of limitations began running, the claims in this case are that Midland violated Bankruptcy Rule 3001(c)(1) by falsely stating no interest and fees were embedded in claims, and by knowing it would not provide the writing upon which the claims were based. As alleged, Midland's intent was to profit from the claims filing process without ever complying with it. Such conduct is entirely different than the facts presented to the United States Supreme Court: that Midland was following its duties to provide accurate information from which the statute of limitations could be determined.

96.     The difference between compliance with Rule 3001 and systematic non-compliance with Rule 3001(c)(1) is why the rationale of *Midland v. Johnson* supports Plaintiffs in this case. For example, the Proofs of Claim at issue in this case all contain the knowing misrepresentation that each claim is entirely principal, not interest and/or fees. After being sued, Midland has now filed Amended Proofs of Claim that prove that principal was much less than in the original Proofs of Clam, and that Midland had been provided a separate itemization by Synchrony Bank. Regarding Ms. Gillespie-Brooks, the math makes clear that the itemized "finance charges" from Synchrony Bank are the sum of the interest and the fees embedded in the claim.

97.     Midland's systematic non-compliance with Rule 3001(c)(1) prevents the "audience" described by the United States Supreme Court in *Midland v. Johnson* – parties in interest who may wish to object to the claim – from being able to evaluate the enforceability of the debt.  Furthermore, Midland ensured that no party would be able to even determine what the credit card contract set as the allowable interest or fees because Midland would not provide that document on request.  No party in interest viewing a claim can properly evaluate whether the interest or fee amount looks suspicious or not if, under oath, the claimant asserts that no interest or fees are included in the claim.  The "streamlined" claims process in bankruptcy flows as a consequence of the reliance placed on the sworn testimony underlying each proof of claim.  That flow breaks down in the presence of false statements.  Unlike the accurate and truthful information on the proof of claim in *Midland v. Johnson*, the facts here are that Midland used a "false, deceptive, or misleading representation" of no interest or fees, and its process of collecting on that claim was an "unfair or unconscionable" means of collecting debt which violates the FDCPA.

98.     Because the United States Supreme Court's rationale in *Midland v. Johnson* was based on rule compliance, this Court should apply that rationale to deny Midland's Motion for Summary Judgment on the FDCPA claim.  The Court should look to the Fourth Circuit Court of Appeals' decision in *Dubois v. Atlas Acquisition, LLC*, which, though decided before the *Midland* decision, is closely in step with *Midland*; it holds the filing of a claim for a stale debt, where the date of last payment and date of charge-off is properly shown on the claim form, does not violate 15 U.S.C. §§1692e or 1692f.  *See* 834 F.3d 522, 525, 533 (4th Cir. 2016).  Even the Fourth Circuit's rationale for its holding mirrors the *Midland* decision:

> Various other considerations also differentiate filing a proof of claim on a time-barred debt from filing a lawsuit to collect such debt. First, the Bankruptcy Rules

require claims like the ones filed by Atlas to accurately state the last transaction and charge-off date on the account, making untimely claims easier to detect and relieving debtors from the burden of producing evidence to show that the claim is time-barred. Second, a bankruptcy debtor is protected by a trustee and often by counsel who are responsible for objecting to improper claims even if, as Appellants argue, they currently do not always do so. Third, unlike a debtor who is unwillingly sued, a Chapter 13 debtor voluntarily initiates the bankruptcy case, diminishing concerns about the embarrassment the debtor may feel in objecting to a stale claim. In sum, the reasons why it is "unfair" and "misleading" to sue on a time-barred debt are considerably diminished in the bankruptcy context, where the debtor has additional protections and potentially benefits from having the debt treated in the bankruptcy process.

834 F.3d at 533.  Such an analysis would not be necessary if the FDCPA was precluded from applying.

99.    As in *Midland*, the *Dubois* decision protected debt collectors from liability under the FDCPA for filing of a claim which "on its face indicates that the limitations period has run" in compliance with Bankruptcy Rule 3001(c)(3)(iv). *See Midland v. Johnson*, 139 S.Ct. at 1411. Importantly, the Fourth Circuit first made clear that the debt collector's act of filing its proof of claim is an act to collect a debt that initially is under the ambit the FDCPA.  *Dubois*, 834 F.3d at 528.  "Although a proof of claim is filed with the bankruptcy court, it is done with the purpose of obtaining payment from the debtor's estate. That the claim is paid by the debtor's estate rather than the debtor personally is irrelevant for purposes of the FDCPA." *Id.*  As part of deciding that Atlas did not violate the FDCPA, the Dubois court then noted the following: "There is no allegation that Atlas filed inaccurate proofs of claim. A debt collector who supplies false dates to obscure a claim's staleness may well violate the FDCPA. However, we have no occasion to consider that issue today." *Id.* at 532, FN10.  Thus, neither the United States Supreme Court nor the Fourth Circuit have held that a FDCPA claim cannot be based on false statements in a proof of claim or on systematic violations of the bankruptcy rules.

**C.    Midland can point to no provision of the Bankruptcy Code that precludes the FDCPA claims based on systematic violations of Rule 3001(c).**

100.    Although Midland argues that the Bankruptcy Code claims allowance process precludes FDCPA claims, they have pointed to no part of the Code or its Rules that actually state such a preclusion. Nowhere in the Code or the Rules can Midland point to the statement that such rules are "exclusive means" to address intentional violations.

101.    Because the facts presented by Plaintiffs' class action are willful and systemic misrepresentations to collect a debt, applying the FDCPA creates no conflict with the Rules. "When, as here, FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims." *Simon v. FIA Card Services,* 732 F.3d 259, 274 (3rd Cir. 2013)(following *Randolph v. IMBS, Inc,* 368 F.3d 726 (7th Cir. 2004). The *Simon* opinion provides a thorough analysis for why FDCPA claims can coexist with the Bankruptcy Rules when the conduct in issue violates both. Many federal courts have allowed FDCPA claims based on improper proofs of claim to go forward even after *Midland v. Johnson. See In re Bernadin*, 610 B.R. 787, 791 (E.D. Pa. 2019); *Moore v. Jefferson Capital Systems* 2017 WL 2813536 *2 (E.D. Mo. June 29, 2017); *Ellswick v. Quantum3 Group*, 2018 WL 1408536 (N.D. Al., March 21, 2018) (discussing the FDCPA standard in *Midland v. Johnson*, and not dismissing a FDCPA claim based on false statements in a proof of claim).

102.    The U.S. District Court for the Southern District of Florida recently ruled that the United States Supreme Court's ruling in *Midland v. Johnson* does not hold that liability under the FDCPA is foreclosed by the Bankruptcy Rules. *Hill v. Resurgent Capital Services, L.P.*, Case No. 1:20-cv-20372 (Order on Motion to Dismiss, May 20, 2020)(attached hereto as **Exhibit 16**).

*Hill* involved alleged facts materially the same as in this case. The debt collector filed a proof of claim alleging that the debtor owed only principal, when the debt actually included interest, fees and other charges. *Id*. at 2. The debt collector filed a Motion to Dismiss the debtor's FDCPA claim on the grounds that the debtor did not suffer any injury-in-fact, that the proof of claim accurately characterized the entire debt as principal, that the debtor's injury was not material, and that the Bankruptcy Code provides the sole remedy. Id. at 3-4. The court denied the Motion to Dismiss on all four grounds. *Id*. at 4-12. Regarding *Midland v. Johnson*, the court explained that "*Johnson* is distinguishable because the deficiency in the proof of claim in *Johnson* was that the debt was time-barred, where, as here, the POC is deficient for mischaracterizing the amount as principal." *Id*. at 11. The court held that the debtor's FDCPA claim did not "fall within the scope of the Supreme Court's narrowly tailored holding in *Johnson*." *Id*.

103.    Although Midland points to a few cases like *In re Derby,* this Court should decline to follow those cases. Instead, the analysis of *In re Bernadin* provides the better path. That opinion cited both prior Motion to Dismiss rulings from this Court in this case, and *In re Derby*, and then looked for an inherent conflict between the proof of claim requirements and the FDCPA. It concluded that "the Bankruptcy Code and Rules do not conflict with the FDCPA and the Debtor may pursue a claim based on Ocwen's participation in the filing of the POC in this bankruptcy case." 610 B.R. at 803-04.

104.    Allowing a FDCPA claim for false statements in violation of Rule 3001 supports the "delicate balance" created by the bankruptcy rules rather than creating a conflict. First, the filing of a proof of claim is an act to collect a debt regulated by the FDCPA. Second, the application of the FDCPA to Midland's claims would not offend *Midland v. Johnson*, because

the systematic non-compliance with Rule 3001(c)(1) operates to prevent the bankruptcy claims process from working in the "streamlined" manner required by the rules.

105.    Therefore, Midland's Motion for Partial Summary Judgment in its favor on the FDCPA claims should be denied.

**V.**

**MIDLAND IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS
COUNTERCLAIM REGARDING THE AMENDED PROOFS OF CLAIM**.

106.    Midland filed a Counterclaim and Plaintiffs answered. The Court has not yet allowed Plaintiffs to conduct discovery regarding that counterclaim. As set forth in the attached Declaration, Plaintiffs request time to conduct discovery before Midland's summary judgment on Count 1 of its counterclaim is heard. Specifically, Plaintiffs would like to conduct discovery in at least the following material areas:

a.    Whether or not it would be difficult for Synchrony Bank to provide Midland with the separate itemization of the fees and interest embedded in any credit card account when it transfers data to Midland if Synchrony Bank does not already provide that information;

b.    Why Midland resists separately itemizing fees and interest on proofs of claim;

c.    Whether or not it would be difficult for Midland to adjust its computer system to file proofs of claim that provide the separate itemization of fees and interest rather than just their total;

d.    Any additional costs Midland would incur for the separate itemization, and how those costs compare to the money Midland expects to make on its bankruptcy portfolios; and

e.    The separate itemization of interest and fees for Claim 10 filed against Gary

Brooks in his bankruptcy, and the basis for the interest and the basis for the fees.

107.    Discovery in the above areas would inform the Court whether or not the Amended Proofs of Claim "substantially comply" with Rule 3001 as Midland claims. Rulings on the issue of "substantial compliance" should be informed by the facts regarding Midland's refusal to provide the separate itemization of interest from the other amounts added to the principal. Plaintiffs expect that such discovery will show that Synchrony Bank can easily separate the amounts of interest and fees that it added to determine what has been collectively identified as "finance charges."  Further, that discovery would show that if Synchrony Bank provided those separate numbers to Midland, rather than just one total number, that Midland could easily adjust its filing system to provide those two numbers on its itemization. Finally, discovery would allow Plaintiffs to finally learn which part of the $553.44 in "finance charge" embedded in the claim against Mr. Brooks is fees and which is interest, and then be able to determine whether such fees and interest were authorized by the contract.

108.    This discovery is pertinent because Midland has argued before that substantial compliance with Rule 3001 looks in-part at what is practical for claims filers to provide. If Synchrony Bank were to file its own proofs of claim when a consumer files a Chapter 13 bankruptcy, it could easily comply with Rule 3001 by itemizing the interest amount included in any claim. The evidence already presented by the Amended Proof of Claim against Ms. Gillespie-Brooks is that for her account the "finance charges" appear to simply be the total of the embedded interest and embedded fees.  Other creditors in Ms. Gillespie-Brooks and Mr. Brooks' bankruptcy were able to file proofs of claim that separately itemized interest and fees (*See* **Exhibits 11, 12, 13, and 14).**

109.    Any real party in interest for any proof of claim has a need to be able to quickly

review the amount of interest in a claim to determine if it appears that too much interest is charged.  Additionally, any real party in interest for any proof of claim has a need to be able to quickly review the amount of fees in a claim to determine if it appears that too many fees have been charged. That initial quick review should allow an interested party to know whether it should request the writings underlying the claim to explore the basis for those amounts. Lumping these numbers together makes it more difficult to make that analysis. For example, for the Amended Proof of Claim filed against Mr. Brooks, even when looking at all the documents provided, it is impossible to determine the source of the $553.44 in "Finance Charges" because the total fees in 2016 and the total unpaid interest in 2016 is less than one-third of the claimed non-principal charges.

110.    The core legal disagreement between the parties about the Amended Proofs of Claim is whether the Rule 3001 requirement to itemize interest and fees embedded in a claim requires these numbers to be stated separately or merely their sum.  Midland's primary argument is that it is complying with a format that Judge Huenekkens accepted as part of resolving the *Maddux* case, and which Judge Phillips then accepted in *Derby*. Those resolutions were specific to the procedural posture of those cases, and were not the product of an evidentiary hearing about the ease of providing the information differently    Before those case-specific resolutions are adopted by this Court, this Court should be apprised of all the pertinent facts about the processes involved.  If Midland wants to assert that Synchrony Bank is unable to provide it the separate breakdown, and then use that claimed inability to argue how Rule 3001 in interpreted, Plaintiffs should be able to discover the truth about Midland's assertion.

111.    The importance of the itemization requirement in Rule 3001 is first that it applies to all claimants. The Rules do not carve out a special meaning of the word "principal" for open-

end creditors, or any creditor that has an agreement that allows it to charge interest upon interest. The same words apply to all creditors, and the standard presentation of the information allows for claims to be analyzed quickly for possible objections. For instance, these words apply to mortgage lenders and ask for all interest and fees embedded in the claim to be itemized. No mortgage lender or other creditor should be able to rely upon *Maddux* for the proposition that Rule 3001 only requires itemization of interest and fees accrued since the last statement, and therefore not have to include all the interest and fees that are included in the claim.

112.    Itemizing all the interest and fees serves an important purpose of allowing claims to be quickly analyzed. For instance, in Shirley Dean Taylor's bankruptcy proceeding in United States Bankruptcy Court for the Richmond Division of the Eastern District of Virginia, Allied Cash Advance provided an itemization as part of claim 8-1. (**Exhibit 15**). The itemization of a large amount of interest, which totaled almost half of the claim amount, was followed by an objection and request for documents, which was then followed by an adversary proceeding challenging the validity of the claim. (*See* filings in Case No. 17-30142-KRH, of which Plaintiff asks the Court to take judicial notice). If interest and fees are lumped together, a predatory lender who improperly added a "bankruptcy filing fee" or charged usurious interest could file a claim where no party in interest would have the information to separately evaluate such charges.

113.    Essentially, the Court is simply asked what does the word "itemized" mean. Rule 3001(c)(2)(A) is clear on its face. "If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim." Black's Law Dictionary defines itemize as "the term used to describe the recording of each item individually." Rule 3001(c)(2)(A) provides a list of things, which if present, must then be

disclosed on an "itemized statement." Midland proposes that this Rule be construed to mean that those things may be lumped together in one number, but combining multiple things together is not an "itemized statement." The very meaning of the word "itemize" means to set forth each item. If only one number is called for, no itemization would be required by the Rule.

114.    Consequently, Plaintiffs first request that Midland's Motion for Partial Summary Judgment on Count 1 of its Counterclaim be denied.  If the Court declines to deny the Motion, the Court should defer ruling on the Motion until after the Plaintiffs have had the opportunity to conduct discovery.

## VI.

## MIDLAND IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM REGARDING THE ORIGINAL PROOFS OF CLAIM.

**A.     Under the Counterclaim Count 2, Plaintiffs should be allowed to conduct discovery on the merits before this Court rules on the appropriate remedy.**

115.    As explained above, this Court has not yet allowed Plaintiffs to conduct discovery regarding Midland's Counterclaim. As set forth in the attached Declaration, Plaintiffs request time to conduct discovery before Midland's Motion for Partial Summary Judgment on Count 2 of its Counterclaim is heard. Specifically, Plaintiffs would like to conduct discovery in at least the following material areas:

   a.  Why Midland continued filing proofs of claim with false statements after September 2016;

   b.  What Midland relied upon prior to September 2016 for how it filed proofs of claim;

   c.  Why Midland does not provide the credit contract underlying a proof of claim when the documents underlying a claim are requested;

    d.   Whether or not it would be difficult for Midland to provide the credit contract underlying a proof of claim when the documents underlying a claim are requested;

    e.   Any additional costs Midland would incur for providing the credit contract when requested, and how those costs compare to the money Midland expects to make on its bankruptcy portfolios;

    f.   Why Midland told the United States Supreme Court that Rule 3001 required it to provide the credit contract on request but now claims otherwise; and

    g.   The extent to which Midland has amended any other proofs of claims in the Western District of Virginia to correct misrepresentations made under penalty of perjury.

116.    Discovery in the above areas would inform the Court whether and how Midland should be sanctioned for its misrepresentation on the original Proofs of Claim. Discovery in these areas will help the Court craft the fact specific remedy of "appropriate relief" under Rule 3001. Discovery will provide the Court the facts pertinent to the question of whether Midland was substantially justified in filing proofs of claim with false information. Discovery will also provide the Court information about whether Midland was substantially justified in withholding credit contracts from any interested party while at the same time explaining to the United States Supreme Court that Rule 3001 required it to provide such credit contract.  The answer to the questions of why Midland filed documents as it did and why it withheld the necessary document from any real party in interest will help determine the appropriate remedy for that noncompliance. Plaintiffs expect that such discovery will show that Midland did not want to incur the relatively low dollar cost of compliance.  Plaintiffs also think such discovery will show

that like the claims in **Exhibit 9 and 10**, Midland continues to seek to collect on claims that include false statements under penalty of perjury. On the withholding of the credit contract, discovery will also explain why Midland sought the benefit of representing to the United States Supreme Court that Rule 3001 required it to provide the credit card agreement on request while also in *Maddux* claiming it did not have it and did not need to provide it.

117.    When the alleged holder of a claim fails to provide any information required by Rule 3001(c), Rule 3001(c)(2)(D) allows this Court to order appropriate relief, after notice and hearing. Although Midland again argues that this Court cannot issue declaratory or injunctive relief, the Court's initial Motion to Dismiss ruling made clear that such a claim could go forward if Plaintiffs provided additional allegations about the requested remedy. Plaintiffs then did so, and this Court's second Motion to Dismiss ruling stated that such relief could be sought. Plaintiffs are asking the Court to impose an award of attorneys' fees under the lodestar method, and require Midland to either file compliant Proofs of Claim or withdraw its Proofs of Claim. Additionally, Midland should be required to show that it will provide the writing underlying the claims upon request.  No reason exists to short-circuit this process by summary judgment before Plaintiffs are even allowed discovery on the merits of these issues.

118.    Finally, as shown in *Maddux v. Midland Credit Management, Inc.,* 567 B.R. 489, 499-500 (Bankr. E.D.Va. 2016), and in *In re Goeller*, Ch. 13 Case No. 12-17123-RGM, 2013 WL 3064594 (Bankr. E.D.Va. 2013), evidence of substantial justification, harmlessness, and willfulness are important in determining whether sanctions should be imposed and what sanctions are appropriate. *See Maddux*, 567 B.R. at 499-500 and *Goeller* at *2.  Such evidence can be obtained and provided to the Court only if the Court delays deciding Midland's Motion, and allows for a hearing on the merits of this issue. "[W]hen fact-intensive issues, such as intent,

are involved" summary judgment should not be determined until the nonmoving party has been

allowed discovery. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d at 245.

**B.      If the Court is going to consider summary judgment on Count 2, at minimum material issues of fact are raised about Midland's violation and the appropriate remedy.**

119.      Although Midland tries to claim that it was substantially justified in filing the

original Proofs of Claims, it cannot avoid the truth that after the summary judgment ruling in

*Maddux v. Midland Credit Management, Inc.,* it decided to stop filing such misrepresentations in

the Eastern District of Virginia but continued to do so elsewhere, including here in the Western

District of Virginia.  Although it now claims that it relies on a 2007 opinion from this Court to

withhold the credit card agreement when asked to provide the documents underlying a claim, it

told the United States Supreme Court that Rule 3001 required it to provide that document on

request. Midland cannot be substantially justified in acting contrary to the legal position it took

and won on in the United States Supreme Court.  Additionally, it cannot be substantially justified

in continuing to file false statements in the first instance, but even more so after its violation has

been pointed out to it.

120.      Midland also reasserts its argument that any violation of Rule 3001 was harmless.

As explained in *Maddux v. Midland Credit Management, Inc.*, where, as here, a creditor files its

claim in non-compliance with Rule 3001 and deprives a debtor of "sufficient information to

evaluate the validity of [the claims] without undue burden or expense", a debtor is both harmed

by the violations of Rule 3001 and may obtain relief in this Court. *Maddux*, 567 B.R. at 500.

Although Midland argues that Plaintiffs have not explained how an itemization of interest and

fees in each account would matter to anyone, Midland ignores that it has not yet provided that

itemization. For instance, once Midland provides the separate itemization of the interest and fees

regarding the Proof of Claim filed against Mr. Brooks, any party will be able to evaluate how

much of that $553.44 in "finance charges" is alleged to be interest and how much alleged to be fees, and whether those amounts are proper.   More importantly, the core Rule 3001 violation stands on two legs: the false statement under penalty of perjury that no interest and fees were in the account, and the failure to provide the credit card contract when the documents underlying the claim are requested.   Comparing the original Proof of Claim filed against Ms. Thomas with the Amended Proof of Claim, the original states all $689.34 is principal but the Amended Proof of Claim states it is only $254.84 in principal. Midland's practice of filing false statements not only conceals that 63% of the claim is interest and fees, but its refusal to provide the contract agreement would make it impossible for a real party in interest to determine if that high percentage of fees and interest is justified or not by the contractual agreement between the parties.

121.   Based on the plain reading of Rule 3001, any party with standing to object to a claim also has standing to petition the court to impose sanctions under Rule 3001(c)(2)(D) by providing notice of the alleged violation and the request for sanctions, and scheduling a hearing. Section 502(a) of the Bankruptcy Code specifies that an objection to claim may be brought by "a party in interest", and because a debtor is plainly a party in interest with standing to object to a claim, a debtor must also have standing to seek the remedies provided under Rule 3001. Therefore, as a matter of law and as already determined by this Court, Plaintiffs are entitled to seek an appropriate remedy.

122.   As determined by this Court in its ruling on the Second Motion to Dismiss, "[t]he amended complaint pretty clearly alleges a violation of Rule 3001." (Doc. 45 at pg. 14). When this Court made that ruling, the Amended Complaint already presented the information about what occurred and what information and documentation had been included with the Amended

Proofs of Claim after the underlying documents were requested. The information now before the Court establishes that all the allegations were true: Midland falsely stated under penalty of perjury that no interest and fees were included in each claim when they were included, and Midland never provides the credit card agreement when the documents underlying a claim are requested.

123.    Although Midland implies otherwise, Plaintiffs are not proposing that the mere failure to comply with Rule 3001(c) necessarily justifies striking a claim.  The issue is not an isolated act of noncompliance, but a systematic business practice based on false sworn declarations, misinformation, and refusal to provide pertinent documents.  Midland set up that process without the benefit of outside counsel and has located its compliance officers in India. Although Midland claims its employees are to verify the information in the proofs of claims it files, it withholds from those employees the data that would prove interest and fees are included in the claim amount.  Despite the egregious nature of such misconduct, Plaintiffs claim for relief allows the possibility that such claims still be allowed on the condition that Midland comply with Rule 3001(c).

124.    Midland attempts to prematurely limit what remedy and fees this court might award. Plaintiffs' requested remedy, and the necessity for continuation of this litigation regarding the Rule 3001 claim is not made moot by the Amended Proofs of Claim.  First, as set forth above, Plaintiffs contend that those Amended Proofs of Claim do not comply with Rule 3001(c) because the interest and fees are not separately itemized.   Second, even if the Amended Claims are proper, the intentional violation of the Rules can still be sanctioned by this Court. Third, Midland has not corrected the hundreds of other proofs of claims filed against similarly situated people. Therefore, Plaintiffs continue to incur attorneys' fees caused by Midland's violations of

Rule 3001, and an appropriate remedy still needs to be determined.

125.     In determining that remedy, this Court also has power under section 105 of the Bankruptcy Code to impose sanctions for civil contempt, and further, bankruptcy courts may impose sanctions "pursuant to a court's inherent authority to punish and/or deter offending conduct." *In re Gravel*, 556 B.R. 561, 574 (Bankr.D.Vt. 2016).  "While these inherent powers must be exercised with restraint and discretion, a court may 'safely rely on its inherent power' to impose sanctions where, 'in the informed discretion of the court, neither the Statute nor the Rules are up to the task,' as long as that action is not prohibited by the Bankruptcy Code." *Gravel*, 556 B.R. at 575( *quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), and *citing Law v. Siegel*, 571 U.S. ----,  134 S.Ct. 1188, 1191 (2014)).

126.     In *Gravel*, the bankruptcy court found that section 105 of the Bankruptcy Code and the court's inherent power to impose sanctions allowed the court to impose a $375,000.00 sanction against a mortgage servicer that, after having been previously warned by the court, violated Rule 3002.1 and a court order by sending debtors notices of post-petition fees that had previously been disallowed. *Gravel* at 580 and FN10.  The *Gravel* court imposed sanctions using its inherent power and section 105 of the Bankruptcy Code, despite the availability of the specific sanctions listed in Rule 3002.1.   The court noted that bankruptcy courts are able to fashion a remedy depending on the circumstances of the case.

> Bankruptcy courts have extensive discretion under § 105 to determine what amount of sanctions is appropriate and reasonable. [ ]. Courts must give individualized consideration to the particular circumstances of the case, balance a myriad of factors, and very intentionally calculate the amount of the sanction to ensure it is no more than is reasonably necessary to deter the culpable conduct.

*Id*. at 576.

127.    Plaintiffs have proffered sufficient evidence that the circumstances of this case require a remedy here and for all the other cases where Midland is trying to collect payment on a proof of claim containing false statements under oath.

128.    Midland's assertion that its employees can file false oaths without any penalty is similar to what it tried to defend in *Vassalle v. Midland Funding LLC*, where "the district court issued a self-described 'landmark ruling,' holding that "robo-signing" affidavits in debt-collection actions violates the FDCPA. The court found the affidavit to be false and misleading under the FDCPA due to the false attestation of personal knowledge. As it turns out, Midland employees had been signing between 200 and 400 computer-generated affidavits per day for use in debt-collection actions, without personal knowledge of the accounts." 708 F.3d 747, 752 (6th Cir. 2013)(see also *Midland Funding LLC v. Brent*, 644 F. Supp.2d 961, 967-69 (N.D. Ohio 2009)(explaining in-detail the process by which Midland systematically created hundreds of false attestations of personal knowledge per day to be submitted in debt collection actions). The Sixth Circuit described the false attestation of personal knowledge as a "predatory practice" and stated that the "unnamed class members' greatest interest is their ability to contest these allegedly fraudulent judgments." 708 F.3d at 756 and 759.  Midland's bankruptcy filing practice is no different than its other predatory court debt collection process. As shown in the evidence presented, Midland would not even let its electronic signers have access to the documents in Midland's own systems that would have shown the declarations under penalty of perjury were false.

129.    Midland was cautioned in 2009 that even if the information in an affidavit is accurate, the false attestation that the signer has knowledge that the information is correct is a serious legal violation. *See Midland Funding LLC v. Brent,* 644 F. Supp. at 969.  Similarly, in

2015 the Consumer Financial Protection Bureau took action against Midland because of its

practices in violation of basic legal principles, including using false affidavits.  (See Consent

Order in Consumer Financial Protection Bureau Administrative Proceeding, File No. 2015-CFPB-

0022, specifically Paragraph 19 through 99 describing the entire context in which false affidavits had

routinely been used by Midland in collection actions in state courts)(found at Doc. 23, Exhibit A,

starting at pg. 33).  Thus, Midland knows very well that not only must the underlying information

in sworn declarations be true, but the statement of the declarant's personal knowledge must be

true.  Its argument now that the demonstrably false information was completely harmless and

substantially justified evades its truth-telling obligation.

      130.    Finally, the irony of Midland asking this Court to apply *Midland v. Johnson* and

*In re Maddux* should not be overlooked.  In January 2016, in the United States Supreme Court,

Midland argued that Rule 3001 requires it to provide the credit card agreement upon request, and

that by doing so it provides a trustee with the ability to conduct the statute of limitations analysis

necessary to evaluate claims.  At the very same time, in the Eastern District of Virginia, Midland

was taking the exact contrary legal position. It also claimed that it did not have access to the

credit card agreement, and therefore did not provide it upon request. The United States Supreme

Court then declared the law of the land about how Midland's proofs of claim on stale claims did

not violate the FDCPA; an opinion that could not have been written if the truth had been

presented to the Court. That truth, that Midland denied trustees access to the document necessary

for the trustee to conduct the statute of limitations analysis, cannot be reconciled with that

Court's opinion. Similarly, Judge Huennekens was not told the truth that Midland possessed the

credit card agreement, knew it was required by Rule 3001 to provide the credit card agreement

when requested by a real party in interest, and was seeking a win in the United States Supreme

Court based on its compliance with that known requirement. If he had been told the truth, he

would not have written that Midland was not required to provide the credit card agreement.
Although sometimes slow, the hallmark and true beauty of the American legal system's arc
toward justice is that an open transparent decision-making process of record will eventually
reveal the truth.

## CONCLUSION

Plaintiffs therefore request on behalf of themselves, and the proposed Rule 3001 Class,
that the Court deny Midland's Motion for Summary Judgment, or in the alternative regarding the
Defendants' Counts 1 and 2 in its Counterclaim, defer ruling on those matters until after
Plaintiffs are allowed to conduct discovery.

Respectfully submitted,
**KAREN M. THOMAS**
**and**
**GARY L. BROOKS, JR.  and MARY M.**
**GILLESPIE-BROOKS**
*individually and on behalf of a class of*
*similarly situated individuals*

/s/Hannah W. Hutman
**HOOVER PENROD, PLC**
Grant D. Penrod (VSB No. 65818)
gpenrod@hooverpenrod.com
Hannah W. Hutman (VSB No. 79635)
hhutman@hooverpenrod.com
342 S. Main Street
Harrisonburg, VA  22801
540-433-2444
*Co-Counsel for the Plaintiffs*

and

Thomas D. Domonoske (VSB No. 35434)
Consumer Litigation Associates, P.C.

763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone (540) 442-7706
tom@clalegal.com
*Co-Counsel for the Plaintiffs*

and

Timothy E. Cupp (VSB No. 23017)
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Ave.
PO Box 589
Harrisonburg, Virginia 22803
(540) 432-9988 (telephone)
cupp@scs-work.com
*Co-Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the *Plaintiffs' Response In Opposition To Motion for Partial Summary Judgment* was electronically served through the Court's ECF system on all those parties registered to received notices and by first class mail to the parties listed below:

Timothy G. Moore, Esq.              Jason B. Tompkins, Esq.
Spotts Fain PC                      Chase T. Espy, Esq.
411 East Franklin Street            Balch & Bingham LLP
Suite 600                           1901 Sixth Avenue North, Suite 1500
Richmond, VA 23219                  Birmingham, AL 35203-4642


this 26th day of May, 2020

/s/Hannah W. Hutman _____ _____
Hannah W. Hutman, Counsel

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 16-50612 |
| | : | |
| KAREN M. THOMAS | : | Chapter 13 |
| Debtor(s) | : | |
| | : | Judge Rebecca B. Connelly |
| | : | |

_____

| | | |
|---|---|---|
| IN RE: | : | Case No.  16-50396 |
| | : | |
| GARY L. BROOKS, JR. | : | Chapter 13 |
| MARY M. GILLESPIE-BROOKS | : | |
| Debtor(s) | : | Judge Rebecca B. Connelly |
| | : | |

_____

| | | |
|---|---|---|
| KAREN M. THOMAS, | : | ADV. PRO. NOS. |
| and | : | |
| GARY L. BROOKS, JR.  and | : | 17-AP-05009 and 17-AP-05010 |
| MARY M. GILLESPIE-BROOKS, | : | |
| *individually and on behalf of a class* | : | |
| *of similarly situated individuals,* | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MIDLAND FUNDING LLC, and | : | |
| MIDLAND CREDIT | : | |
| MANAGEMENT, INC., | : | |
| Defendants. | : | |

## DECLARATION OF THOMAS D. DOMONOSKE
## IN SUPPORT OF PLAINTIFFS' OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Thomas D. Domonoske, declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that the following is true and based on my personal knowledge.

1.      The only discovery Plaintiffs were allowed to do in this case was discovery for

class certification, and discovery for any issues raised by any motion for summary judgment

filed by Defendants.

2.      Such discovery had to be completed by April 20, 2020.

3.      On February 7, 2020, I communicated with Midland's counsel that it had not yet filed its summary judgment motion, and that the time period that would allow Plaintiffs to complete any necessary discovery prior to responding to such a motion was rapidly closing.

4.      Because Midland did not file its motion for summary judgment until April 20, 2020, Plaintiffs were not allowed any time to conduct discovery on matters related to that summary judgment motion.

5.      Plaintiffs would like to conduct discovery on the following areas:

    a.   Why Midland continued filing proofs of claim with false statements in the Western District of Virginia after September 2016;

    b.   What Midland relied upon prior to September 2016 for how it filed proofs of claim;

    c.   Why Midland does not provide the credit contract underlying a proof of claim when the documents underlying a claim are requested;

    d.   Whether or not it would be difficult for Midland to provide the credit contract underlying a proof of claim when the documents underlying a claim are requested;

    e.   Any additional costs Midland would incur for providing the credit contract when requested, and how those costs compare to the money Midland expects to make on its bankruptcy portfolios;

    f.   Why Midland told the United States Supreme Court that Rule 3001 required it to provide the credit contract on request but now claims otherwise;

    g.   To what extent Synchrony Bank provides Midland with the separate itemization of the fees and interest embedded in any credit card account when it transfers data to Midland;

    h.   Whether or not it would be difficult for Synchrony Bank to provide Midland with the separate itemization of the fees and interest embedded in any credit card

2

account when it transfers data to Midland if Synchrony Bank does not already
provide that information;

i.  Why Midland resists separately itemizing fees and interest on proofs of claim;

j.  Whether or not it would be difficult for Midland to adjust its computer system to
file proofs of claim that provide the separate itemization of fees and interest rather
than just their total;

k.  Any additional costs Midland would incur for the separate itemization, and how
those costs compare to the money Midland expects to make on its bankruptcy
portfolios; and

l.  The separate itemization of interest and fees for Claim 10 filed against Gary
Brooks in his bankruptcy, and the basis for the interest and the basis for the fees.

m.  The extent to which Midland has amended any other proofs of claims in the
Western District of Virginia to correct misrepresentations made under penalty of
perjury.

6.  Because Midland has asked the Court to determine that any noncompliance was
substantially justified and harmless, and that it should not suffer any penalty for filing
misrepresentations under penalty of perjury, the above areas of discovery are necessary for
Plaintiffs to submit facts necessary to Plaintiffs' opposition to Midland's summary judgment in its
favor on its counterclaims.

Executed on May 26, 2020 in Harrisonburg, Virginia.


By:  */s/ Thomas D. Domonoske*
Thomas D. Domonoske, (VSB No. 35434)
Consumer Litigation Associates, P.C.
*Counsel for Plaintiffs*